**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SEAN CHARLES DUNN,<br><br>*Defendant*. | Case No. 25-CR-252 (CJN) |

**DEFENDANT'S NOTICE OF REQUESTED MODIFICATIONS TO THE DRAFT JURY INSTRUCTION ON ASSAULT**

During today's proceedings, undersigned counsel noted its intent to object to the proposed jury instruction on assault during the charge conference.

On October 27, 2025, Mr. Dunn requested that the Court give substantially the same 18 U.S.C. § 111(a)(1) instruction that it gave in *United States v. Gietzen*, No. 22-cr-116 (CJN), Dkt. 50, at 24-25 (D.D.C. Aug. 31, 2023) and used as bench legal instructions in *United States v. DaSilva*, No. 21-cr-564 (CJN), Dkt. 76, at 6-7 (D.D.C. July 13, 2023). If those instructions accurately summarized 18 U.S.C. § 111(a)(1) in those cases, then they can accurately do so here. Dkt. 26-2 at 42-44. The government, in contrast, proposed an instruction never before given by any court—stitching together its favorite statements from varying cases into an unbalanced instruction that erroneously lowers the government's burden of proof. Dkt. 26-2 at 39-41.

On October 31, 2025, the Court circulated its draft jury instruction on 18 U.S.C. § 111(a)(1). The Court has since indicated that it was focused on the assault instruction and was attempting to adapt what it believed to be the parties' joint instruction, but

what was, in actuality, the government's proposed instruction.

On November 3, 2025, Mr. Dunn noted his intent to object to the draft jury instruction and offered to summarize those objections in writing to promote an efficient resolution of all issues.

Mr. Dunn proposes that the Court give an instruction based on its *Gietzen* instruction, as modified to reflect Mr. Dunn's Proposed Jury Instructions Based on Inclusion of Non-Assaultive Prohibitions (see Dkt. 38). That request is included below in section A. For the avoidance of any waiver or forfeiture, Mr. Dunn also lodges objections to the draft instruction in section B.

### A. Mr. Dunn's Requested Instruction on 18 U.S.C. § 111(a) Based on the Court's Ruling That Assault Is Not the Sole Means of Committing a Misdemeanor[1]

Mr. Dunn respectfully requests that the jury be instructed consistently with this Court's instruction in *Gietzen* with minimal revisions (reflected in red below or identified with footnotes) and the addition of instructions necessary to prevent a conviction based on protected speech:

Mr. Dunn is charged with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with an officer or an employee of the United States who was then engaged in the performance of, or on account of the performance of, his official duties, which is a violation of federal law.

---

[1] Mr. Dunn maintains his existing request that the jury be charged that simple assault is a necessary element of misdemeanor liability under 18 U.S.C. § 111(a). *See* Dkt. 35. Understanding that the Court has indicated its intent to deny that request, Mr. Dunn submits this pleading to request an instruction consistent with the Court's intent. By doing so, he does not intend to waive or contradict his previous requested instructions in Dkt. 26-2 and Dkt. 35, which he believes are an accurate summary of law.

1. **<u>Elements</u>**

To find Mr. Dunn guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt.

*First*, Mr. Dunn assaulted, resisted, opposed, impeded, intimidated, or interfered with Border Patrol Officer Greg Lairmore;

*Second,* the defendant did such acts forcibly;

*Third*, that the defendant did that act voluntarily and intentionally; and

*Fourth*, that the defendant so acted while Agent Lairmore was engaged in, or on account of, his performance of official duties.

2. **<u>Definitions</u>**

The term 'forcibly' means by use of force. Physical force is sufficient, but actual physical contact is not required. A person acts forcibly if she threatens or attempts to inflict bodily harm upon another, with the present ability to inflict bodily harm. Therefore, a threat to use force at some unspecified time in the future does not satisfy the forcibly element.[2]

The term "assault" means (a) an attempt to cause or purposely, knowingly, or recklessly cause bodily injury to another; or (b) negligently cause bodily injury to

---

[2] This definition is directly from *United States v. Reid*. *See* Jury Instr. at 24, *United States v. Reid*, No. 25-cr-244 (SLS), Dkt. 71 (D.D.C. Oct. 16, 2025), which Mr. Dunn requests for the reasons stated in Dkt. 42. In addition to those sources, see also 10 U.S.C. § 920, the only U.S. code statute Mr. Dunn has found interpreting "force." In the context of sexual assault and rape, the Uniform Code of Military Justice defines "Force" to "mean[] (a) the use of a weapon, (b) the use of such physical strength or violence as is sufficient to overcome, restrain, or injure a person; or (c) inflicting physical harm sufficient to coerce or compel submission by the victim." 10 U.S.C. § 920(g)(4). The UCMJ's definition is consistent with a definition requiring force capable of injuring a person or overcoming resistance.

another with a deadly weapon; or (c) attempt by physical menace to put another in fear of imminent serious bodily injury.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

"Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

~~The terms "resist," "oppose," "impede," "intimidate," and "interfere with" carry their everyday, ordinary meanings.~~

The terms "resist," "oppose," "impede," "intimidate," and "interfere with" are not as broad as their everyday, ordinary meanings. I instruct you that none of the terms can be satisfied by Mr. Dunn's speech and instead only conduct can constitute resisting, opposing, impeding, intimidating, or interfering with.[3]

To "resist" means to oppose by physical power, striving against, exerting one's self to counteract, defeat, or frustrate.[4] To "oppose" means to provide physical resistance or counterbalance to a person who is attempting to accomplish a task.[5] To

---

[3] For the reasons stated in Dkt. 38, the everyday, ordinary meanings of these terms are not applicable. Instead, Mr. Dunn proposes these definitions, which—with the exception of "to oppose"—are derived from model instructions.

[4] Sand Model Instr. 14-6 ("The word 'resist' means opposing by physical power, striving against, exerting one's self to counteract, defeat, or frustrate."); *see also* Redbook § 4.114 ("'Resisting' or 'interfering' requires active confrontation, obstruction, or action directed against the officer that precluded the officer from carrying out his/her official duties.").

[5] The model definition of "to oppose" is stated as "to resist by physical means." *See* Sand Model Instr. 14-7. However, the instruction does not clarify that physical opposition—not ideological opposition articulated by physical means—is the relevant test. Physical means that merely express ideological opposition are not prohibited by the statute; indeed, they would be protected speech. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989) (conduct is speech where it carries an intent to convey a particularized message and there is a great

<span style="color:red">"impede" means to stop progress, obstruct, or hinder by physical means.[6] To "intimidate" means to engage in conduct that would have caused any police officer in the situation of the agent reasonably to be in fear and that could prevent any agent in that situation from performing his/her duties.[7] To "interfere with" means to come into collision with or to intermeddle with by physical means.[8]</span>

It is not necessary to show that the defendant knew the person being forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with was, at that time, carrying out an official duty assisting federal officers in carrying out an official duty so long as it is established beyond a reasonable doubt that the officer was, in fact, carrying out an official duty assisting a federal officer acting in the course of his duty and that the defendant intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with that officer.

---

likelihood that the message would be understood by viewers); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995) (noting that the message need not be a "narrow, succinctly articulable" or "particularized" message).  In order to facilitate juror understanding of the type of physical opposition involved in a violation of § 111(a), Mr. Dunn proposes the revised definition above based on the first definition in Merriam-Webster.  *See* Merriam-Webster.com/dictionary/oppose ("to place over against something so as to provide resistance, counterbalance, or contrast").  This represents the only change in these definitions from Dkt. 38.

[6] *See* Sand Model Instr. 14-7 ("'[I]mpede' means stopping progress, obstructing, or hindering."); *In re EDP*, 573 A.2d 1307, 1309 (D.C. 1990) (in response to First Amendment objection, the Court held that a statute prohibiting "impeding" or "interfering" with a police officer would be narrowly construed to physical conduct rather than speech).

[7] Redbook § 4.114 ("[[Name of defendant] intimidated a police officer if s/he engaged in conduct that would have caused any police officer in the situation of [name of complainant] reasonably to be in fear and that could prevent any police officer in that situation from performing his/her duties.]").

[8] *See* Sand Instr. 14-7 ("'[I]nterfere with' means to come into collision with, to intermeddle, to hinder, to interpose, to intervene."); *see also City of Houston v. Hill*, 482 U.S. 451, 465-67 (1987) (statute criminalizing mere words that interfere with an officer held unconstitutional); Redbook § 4.114 (noting that speech cannot constitute interfering and there must be active confrontation, obstruction, or action).

### 3.    First Amendment Instruction[9]

The First Amendment to the United States Constitution guarantees the right to free speech, including the right to complain about public policy.[10] This protection is at the core of our democratic system and reflects a profound national commitment to uninhibited, robust, and wide-open debate on public issues.[11] To the extent that Mr. Dunn's speech is protected by the First Amendment, you cannot convict Mr. Dunn on the basis of his speech.[12]

I instruct you that the First Amendment protects speech even if it constitutes vehement, scathing, and offensive criticism of public officials, including law enforcement officers.[13] The First Amendment also protects political exaggeration or

---

[9] This section and supporting authority are identical to Dkt. 38 and have been pasted here for ease of reference.

[10] *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-759 (1985)); *see also* Jury Instr., *United States v. Dukes*, No. 4:17-CR-00010-JHM, 2018 WL 4381090 (W.D. Ky. June 15, 2018) ("The First Amendment of the Constitution protects the rights of individuals to complain about public officials, which includes the right to complain to the government about the conduct of public officials without being retaliated against for those complaints.").

[11] *Snyder*, 562 U.S. at 452 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

[12] U.S. Const. amend. I; *see* Jury Instr. at 13, *United States v. Rhodes*, No. 1:22-CR-00015, 2022 WL 17340460 (D.D.C. Nov. 18, 2022) ("You may not find that a defendant committed a crime . . . simply because you find that a defendant, or other individuals, engaged in speech you find to be offensive."); Jury Instr. at 26, *United States v. Facteau*, No. 15-cr-10076, Dkt. 436 (D. Mass. July 15, 2016) ("You may not convict a Defendant of a crime based solely on [protected speech] promoting [a medical] device, even if the use being promoted is not a cleared or approved use.") see also Jury Instr., *United States v. Francis*, No. 3:05-cr-00027-RV-ALL, 2005 WL 5653477 (N.D. Fla. June 7, 2005) ("Verbal conduct is protected by the First Amendment. Mere words alone cannot amount to disorderly conduct unless they are fighting words, words known to be false, or reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others, such as shouting 'Fire' in a crowded theater.").

[13] Jury Instr. at 17, *United States v. Hunt*, No. 21-cr-86, 2021 WL 1718706 (E.D.N.Y. Apr. 28, 2021) ("As this is a case involving speech, I advise you that the First Amendment protects vehement, scathing, and offensive criticism of public officials, including Members

expressions of opinion.[14] The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. Such speech is protected even if that speech is insulting, offensive, disagreeable, opprobrious, obscene, upsetting, arouses contempt, or even if it is outrageous.[15]

Mr. Dunn's use of protected speech cannot constitute assault, resistance, intimidation, opposition, impediment, intimidation, or inference for purposes of applying my other instructions.[16]

---

of Congress."); Jury Instr., *United States v. Rachell*, No.14-cr-25 (DLC), 2014 WL 4070997 (D. Mont. July 1, 2014) ("The First Amendment protects vehement, scathing, and offensive criticism of public officials, including United States Presidents.").

[14] *Hunt* Jury Instr. ("The First Amendment therefore protects political exaggeration or expressions of opinion.").

[15] *Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("[Westboro Church protestors'] speech cannot be restricted simply because it is upsetting or arouses contempt. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable. … [I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment. What Westboro said, in the whole context of how and where it chose to say it, is entitled to "special protection" under the First Amendment, and that protection cannot be overcome by a jury finding that the picketing was outrageous."); *Lewis v. City of New Orleans*, 415 U.S. 130, 132 (1974) (striking down statute making it "unlawful to curse or revile or to use obscene or opprobrious language toward or with reference to a police officer while in performance of his duties"); *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1020 (9th Cir. 2015) ("While police ... may resent having obscene words and gestures directed at them ... they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment. Indeed, an expression of disapproval toward a police officer ... falls squarely within the protective umbrella of the First Amendment and any action to punish or deter such speech--such as stopping or hassling the speaker--is categorically prohibited by the Constitution."); *State v. Suhn*, 759 N.W. 2d 546 (S.D. 2008) (vacating conviction for disorderly conduct for shouting obscenities at police officers).

[16] *See City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987) (holding that statute prohibiting verbally opposing, molesting, abusing, or interrupting policemen was unconstitutional because "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state").

<span style="color:red">The only circumstance in which you can convict Mr. Dunn based on his speech is if you find that the government has proven beyond a reasonable doubt that Mr. Dunn's speech constituted "fighting words" as I will define that term. "Fighting words" are words that by their very utterance inflict injury or tend to incite an immediate breach of the peace.[17] This test is particularly difficult to meet in cases involving words addressed a law enforcement officer, because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen and thus be less likely to respond belligerently to fighting words.[18] You can only consider Mr. Dunn's words as potential violations of the statute at issue if you find beyond a reasonable doubt that they in fact inflicted injury or tended to incite an immediate breach of the peace by the officers to whom they were addressed.</span>

**B.     Mr. Dunn's Additional Objections to the Draft Instruction**

For the avoidance of any waiver or forfeiture, Mr. Dunn submits notice of his objections to the draft instruction in the event that the Court rejects his requested instruction above.

> 1. In Element 2 (beginning "Second"), Mr. Dunn requests that the Court follow its previous practice to include as one element that the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered, and as a second element that such an act was forcible.  In a case where the jurors may get confused

---

[17] *Id.* at 461-62.

[18] *Id.* at 462; *accord Enlow v. Tishomingo Cnty.*, 962 F.2d 501, 509 (5th Cir. 1992) (holding that the fighting words doctrine was particularly difficult to meet when the audience is a law enforcement officer); *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003) ("[T]he First Amendment protects even profanity-laden speech directed at police officers. Police officer reasonably may be expected to exercise a higher degree of restraint than the average citizenand should be less likely to be provoked into misbehavior by such speech."); *United States v. Hazlewood*, 2007 WL 1888883, at *11 (W.D. Tex. June 20, 2007) (vacating disorderly conduct conviction because defendant's profane outbursts at police were not fighting words and therefore could not constitutionally be the basis of a conviction).

  and conflate actions with words, it is particularly important to force the jurors to identify a single act and apply the elements. It is not enough to find that Mr. Dunn's speech was intimidating but his sandwich throw was forcible.

2. The definition of forcibly should be revised as stated in Dkt. 42.

3. Assault should be defined using the Model Penal Code definition as stated in *United States v. Duran*, 96 F.3d 1495 (D.C. Cir. 1996).

4. The terms "resist," "oppose," "impede," "intimidate," and "interfere with should be defined as explained above in § A.

5. "the general scope of what the employee or officer is employed to do or was expected to do as opposed to engaging in a personal frolic of his own" should be replaced with "the scope of what he was employed to do." *See* Sand Instr. 14-8.

6. The Court should delete the instruction that "The term "on account of" carries its everyday, ordinary meaning." This is unnecessary as the ordinary meaning is the default. The draft instruction unnecessarily calls attention to this clause.

7. The Court should delete the instruction that " It is not necessary to show that the defendant knew the person being forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with was an employee or officer of the United States." Mr. Dunn does not intend to argue that such a showing is necessary.

8. The Court should add Mr. Dunn's First Amendment section. *See* § A.

        Respectfully submitted,

        */s/*
        Sabrina P. Shroff (D.D.C. Bar No. NY0481)
        80 Broad Street, 19th Floor
        New York, NY 10004
        Tel: (646) 763-1490
        sabrinashroff@gmail.com

        Julia Gatto (*Pro Hac Vice*)
        STEPTOE LLP
        1114 Avenue of the Americas

                                      New York, New York 10036
                                      Tel: (212) 506-3900
                                      jgatto@steptoe.com

                                      Nicholas Silverman (D.D.C. Bar No. 1014377)
                                      STEPTOE LLP
                                      1330 Connecticut Avenue, N.W.
                                      Washington, DC 20036-1795
                                      Tel: (202) 429-3000
                                      nsilverman@steptoe.com

                                      *Counsel for Defendant*
                                      *Sean Charles Dunn*

Dated: November 3, 2025