**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


UNITED STATES OF AMERICA                     Criminal Action
                                             No. 1:25-252
            Plaintiff,

        vs.                                  Washington, DC
                                             November 5, 2025

SEAN CHARLES DUNN,

            Defendant.                       11:25 a.m.
_____/


                TRANSCRIPT OF JURY TRIAL PROCEEDINGS
            **BEFORE THE HONORABLE CARL J. NICHOLS**
                 UNITED STATES DISTRICT JUDGE



APPEARANCES:

**For the Plaintiff:**      **Michael C. DiLorenzo**
                         John Parron
                           USAO - D.C.
                           601 D Street NW
                           Washington, DC 20053
                           Email: michael.dilorenzo@usdoj.gov
                           Email: john.parron@usdoj.gov

APPEARANCES CONTINUED:

**For the Defendant:**          **Sabrina P. Shroff**
                                SABRINA P. SHROFF, ESQ.
                                80 Broad Street, 19th Floor
                                NYC, NY 10004
                                email: sabrinashroff@gmail.com

                                **Julia Gatto**
                                STEPTOE LLP
                                1114 Avenue of the Americas
                                New York, NY 10036
                                Email: jgatto@steptoe.com

                                **Nicholas P. Silverman**
                                STEPTOE & JOHNSON LLP
                                1330 Connecticut Avenue, NW
                                Washington, DC 20036-1795
                                Email: nsilverman@steptoe.com

**Reported By:**                **LORRAINE T. HERMAN, RPR, CRC**
                                Official Court Reporter
                                U.S. District & Bankruptcy Courts
                                333 Constitution Avenue NW
                                Washington, DC 20001
                                lorraine_herman@dcd.uscourts.gov

**\*\*\*** Proceedings recorded by stenotype shorthand.
**\*\*\*** Transcript produced by computer-aided transcription.

### **I N D E X**

**HAPPENINGS**                                                    **PAGE**

    Jury Instructions by the Court                  19
    Closing Argument by Mr. DiLorenzo               35
    Closing Argument by Ms. Shroff                  56
    Rebuttal Closing Argument by Mr. DiLorenzo      77

1              **P R O C E E D I N G S**

2         (Charging conference and motions were previously had in

3    this case and reported by Stacy Johns.)

4         (Jury not present.)

5              **DEPUTY CLERK:**  Your Honor, we are now back on the

6    record.

7              **THE COURT:**  Thank you, Ms. Moore.

8              Ms. Schoff, Ms. Gatto, Mr. Silverman, Rule 29

9    motion.

10             **MS. SHROFF:**  Your Honor, Mr. Silverman is going to

11   do that.

12             **THE COURT:**  Very well.

13             **MR. SILVERMAN:**  Yes, Your Honor.

14             The defense moves for judgment of acquittal under

15   Rule 29.  We do not feel the government has proven its case

16   beyond a reasonable doubt or to the extent that any

17   reasonable juror could find all of the essential elements

18   beyond a reasonable doubt.

19             For the record and for avoidance of doubt, we are

20   arguing the government's proof has been insufficient on all

21   four elements.  I will only talk about a few of the

22   elements, in order to be efficient this morning.

23             **THE COURT:**  Okay.

24             **MR. SILVERMAN:**  First, I'd like to talk

25   about -- we will certainly have argument on "forcibly" but

1    we do not believe they have proven "forcibly" beyond a

2    reasonable doubt.  However, I would like to focus in on the

3    verbs we think that the Court can take a simple case and

4    make it simpler.  There are six verbs in the jury

5    instructions and we don't think that the government has

6    proven several meanings of those or even alleged them during

7    this trial.

8           The government opened only on assault, impede and

9    interfere.  I haven't heard any testimony about intimidate,

10   oppose or resist and, certainly, I believe both witnesses

11   have been pretty emphatic that there was no intimidating.  I

12   don't believe there is any way a reasonable juror could find

13   for intimidation.  So we would move for judgment for

14   acquittal, at least to the extent that the crime alleges

15   resisting, opposing or intimidation.

16          Assaulting.  I'm not going to address that in

17   great depth, because I think it will be at the heart of the

18   dispute.  We do think the government has failed to prove it

19   beyond a reasonable doubt.  The government has put forward,

20   starting with their opening, two theories of impeding or

21   interference that Mr. Dunn, first the theory they had before

22   trial or have not brought out through witnesses that

23   Mr. Dunn suspected a raid he thought would be at the Bunker

24   nightclub.

25          There is an important legal reason that this

1    theory fails, which is that Section 111 does not criminalize

2    attempts.  So attempt to interfere and attempt to impede is

3    not sufficient.  And to the extent the government argues

4    otherwise, we would object; during closing arguments as

5    well.  But I would put in, for the record, that 111 has been

6    cited by the Seventh Circuit as an example of the statute

7    that doesn't criminalize, to the extent it is

8    quintessential.

9         To the extent the government's theory is what I

10   call the circular theory that Mr. Dunn threw a sandwich and

11   ran off in order to distract the police from their official

12   duties, it simply can't be the case that a non-criminal act

13   becomes a criminal act, because the time it takes the police

14   to arrest you is an impediment to their other duties.

15        Logic is utterly circular and would ultimately

16   result in a massive expansion of the statute.  Tapping a

17   police officer on the shoulder would welcome a criminal act.

18   And the government, I believe them to be arguing that they

19   don't need to prove that he intended to impede or interfere.

20   I believe that is incorrect.  It would be contrary to the

21   statute's text, to these instructions and to the

22   *United States v. Brown* case we discussed this morning.

23        Finally, I think that the testimony in this case,

24   has shown that there was no actual impediment or

25   interference with the agents to the extent they were trying

1    to maintain high visibility.  Agent Lairmore conceded on the

2    stand that there was more presence and higher visibility.

3    There were 20 to 25 officers who were present, maybe not for

4    all 32 minutes but, I believe, for 27 minutes.  And they

5    were at 15th and U Street, right down the street from 14th

6    and U.  When asked what they were doing, Detective Henry

7    said, being on the scene and provided no additional tasks

8    other than the few that were involved in searching or

9    putting Mr. Dunn on the ground or raising him back up.

10         But to the extent, that the task that evening was

11   to have six officers on the corner of 14th and U, then 19

12   officers could have put Mr. Dunn in custody and arranged for

13   his transport.  There was no reason for them to be on 14th

14   and U at all.  Mr. Dunn allowed them to do their jobs to the

15   extent they were maintaining high visibility and arresting

16   people who allegedly violated local law.

17         **THE COURT:**  Let's imagine I agree with you on some

18   or all of the six verbs contained in 111.  The *Brown* case,

19   that you, I think very appropriately and I appreciate it,

20   pointed me to earlier when we were talking about other

21   issues, says that the jury held that the District Court

22   there was right not to give a unanimity instruction because

23   these are just different means by which someone can violate

24   the statute.

25         Even if I disagreed, hypothetically, that

1    everything other than assault -- just imagine,

2    hypothetically, everything other than assault is that the

3    government can't prove, that wouldn't mean that you would

4    get a judgment, notwithstanding the verdict, because assault

5    would still go to the jury.

6            And other than a shorter jury instruction, it

7    doesn't seem to me that *Brown* requires that the jury be

8    unanimous about one versus the other verb.  So why shouldn't

9    they all go to the jury under *Brown*?

10           **MR. SILVERMAN:**  Because, Your Honor, courts are

11   consistent that while different means of committing the same

12   offense can be charged together, charges can be dismissed.

13   The means of committing a different offense, you will see a

14   conspiracy, to the extent that it alleges -- excuse me.  Let

15   me step back.

16           If there is a conspiracy to commit multiple acts,

17   you will sometimes see a conspiracy dismissed to the extent

18   that it alleged one act or one indirectly defined act;

19   that's not abnormal.  To the extent you have seen

20   pharmaceutical misbranded drugs, and you will see cases that

21   dismiss misbranding under one theory but leave the count

22   intact.

23           Here I am looking for a judgment of acquittal only

24   to the extent that Count 1 charges --

25           **THE COURT:**  Certain of the verbs.

1      MR. SILVERMAN:  Yes.

2      THE COURT:  Now, hypothetically, imagine that

3  three of the verbs, we don't have to pick the three, what I

4  would do is grant the Rule 29 motion as to those three means

5  of committing the violation here.  And then I would amend

6  the jury instruction to include the three remaining verbs

7  and to define those, but only those three verbs.

8      MR. SILVERMAN:  Correct.  And enter a judgment

9  granting in part and denying in part, is what I would be

10  requesting.

11      THE COURT:  Right.  Right.  Okay.

12      MR. SILVERMAN:  The Court asked one other question

13  that I meant to answer and I apologize.  You asked about

14  *Brown*, and the fact that it said you can charge all six

15  verbs and, certainly, that is what it said.  It didn't deal

16  with this question whether there is sufficient evidence.

17      THE COURT:  I agree.

18      MR. SILVERMAN:  We've seen the practice in this

19  district is not to charge all six verbs.  In this district

20  there are plenty of cases that do not have all six verbs.

21  It reflects realism.  We can help these jurors understand

22  the real questions in front of them, without forcing them to

23  navigate through verbs that, frankly, are very confusing.

24      THE COURT:  Thank you, Counsel.

25      Who's going to respond?  Mr. Parron

1      **MR. PARRON:**  Thank you, Your Honor.

2      **THE COURT:**  Start at the top, which is whether the

3   government intends, at all, to argue to the jury that it has

4   established each of the six verbs or if there is a verb that

5   the government intends not to argue to the jury or, to put

6   it differently, that the government concedes it hasn't

7   attempted to and hasn't proven.

8      **MR. PARRON:**  I don't want to say we are in a place

9   to concede we haven't proven any of these.  I was going to

10   say that while the government may focus on certain of these

11   verbs in its closing, I don't think that the defense has met

12   the high burden of, or high standard of showing that no

13   reasonable jury, in viewing the facts in a light most

14   favorable to the government, could find that none of the

15   verbs have been committed by the defendant.

16      We are focusing on certain ones because there are

17   ones stronger than the other.  But all of these, I think, in

18   light of that standard, the evidence has met them.

19      I am happy to go through each one.

20      **THE COURT:**  Sure.

21      **MR. PARRON:**  I will go through the ones the

22   defense focused on, if that's okay.

23      **THE COURT:**  Yeah.

24      **MR. PARRON:**  Opposing through action.  I think

25   throwing of the sandwich was "opposing through action," and

1    forcibly so.  In a way that not only did resist

2    Agent Lairmore but was intended to resist what

3    Agent Lairmore more was doing that night.

4         Oppose.  Taking action against someone.  I think

5    based on the evidence that we seen about how the defendant

6    behaved that night leading up to throwing that sandwich, and

7    then throwing that sandwich, shows that he was taking action

8    against what Agent Lairmore was doing that night and because

9    of what Agent Lairmore was doing that night.

10        Intimidate.  You know, I think this one is the

11   closest one, but I think even with that, the "deter" there

12   at the end, I think that is where the government has enough

13   evidence, at this stage, to get to the jury.  Because the

14   defendant throwing the sandwich was meant to deter and did

15   deter them from doing -- from performing -- or

16   Agent Lairmore from performing their official duties that

17   night and with the purpose of preventing him, deterring him,

18   from performing his official duties that night.

19        So each one of these verbs, based on the evidence

20   that we have heard at trial so far, the government's case

21   has established, at least at this stage, that a reasonable

22   jury could find that each of these verbs were committed by

23   the defendant that night.

24        **THE COURT:**  Thank you, Mr. Parron.

25        Obviously, under Rule 29, I can decide the motion

1    now or defer it until after the verdict.  It seems to me,

2    given the relative simplicity of this case, and the fact

3    that we only have one count, that this is an appropriate

4    case for me to just resolve the Rule 29 motion.

5              I'm going to deny it.

6              Obviously, the focus of the defense argument here

7    has been on particular ways in which the government could

8    prove a violation of 111(a).  Again, just for people

9    listening, 111(a) makes criminal six different kinds of

10   acts, those are assaulting, resisting, opposing, impeding,

11   intimidating and interfering.

12             I think at its core, the defense argument is as to

13   seven verbs the government meant satisfied its burden to

14   prove beyond a reasonable doubt enough that some reasonable

15   juror could conclude that one or more of those verbs is met.

16   So in any event, even if I agreed as to certain of the

17   verbs, the rest of the alleged verbs would go to the jury.

18   But, in any event, I believe that the government has proven

19   that a reasonable juror could conclude, beyond a reasonable

20   doubt, that each of the verbs is met.

21             I'm not going to walk through specifically why,

22   but I am reaching that determination based on the evidence

23   presented to date which I, of course, have seen.  In

24   particular, it seems to me that a reasonable juror could

25   conclude that Mr. Dunn acted forcibly, as defined by me in

1    the final instructions that I will give the jury, when he

2    threw the sandwich at the officers; and that in so doing,

3    that both a jury could conclude that that constituted

4    assaulting, as I will define it; resisting, as I will define

5    it; opposing, impeding, intimidating and interfering as I

6    will define those terms for the jury.

7              So, the Rule 29 motion is denied, and we will

8    therefore move on to the defense case.

9              So with that, if we are ready to proceed, I will

10   have the jury come back, unless you want to discuss what the

11   defense plan is.

12             **MS. SHROFF:**  [Inaudible question]

13             **THE COURT:**  You may.

14             **MS. SHROFF:**  [Inaudible question]

15             **THE COURT:**  We are fine.  We can go ahead for now,

16   Ms. Schoff.

17             **MS. SHROFF:**  Thank you, Your Honor.

18             Just logistically.  I know I'm not in the Second

19   Circuit, but generally the defense does move for a second

20   time, pursuant to Rule 29, after the defense rests, for a

21   judgment of acquittal.  I can do that now, if the Court

22   wants, so that we can bring the jury out.

23             **THE COURT:**  Well, let me ask this question.  I

24   think embedded in there is a step that I didn't know was

25   necessarily the case, which is that the defendant is not

1     intending to put on a case.

2              **MS. SHROFF:**  That's correct, Your Honor.

3              **THE COURT:**  So, yes, I understand you want to put

4     on the Rule 29, post-defense-case motion, but I would like

5     to have a colloquy with Mr. Dunn first, because that means

6     he is declining to testify.

7              **MS. SHROFF:**  Yes, Your Honor.  He's discussed his

8     right to testify with his counsel.  I'm happy if the Court

9     wants to conduct the inquiry.

10             **THE COURT:**  Mr. Dunn, you understand it's your

11    decision whether or not you testify in your own defense in

12    this case.  Yes?

13             **THE DEFENDANT:**  Yes, Your Honor.

14             **THE COURT:**  And have you thoroughly discussed that

15    right with your counsel?

16             **THE DEFENDANT:**  Yes, Your Honor.

17             **THE COURT:**  Have you taken your counsel's advice

18    on the various strategic and other implications of not

19    testifying?  Have you taken that advice and discussed those

20    issues in making this decision not to testify?

21             **THE DEFENDANT:**  Yes, Your Honor.

22             **THE COURT:**  And are you sure you don't wish to

23    testify on your own behalf in this matter?

24             **THE DEFENDANT:**  Yes, Your Honor.

25             **THE COURT:**  And for you, Ms. Schoff, are you

1    satisfied that Mr. Dunn's choice to waive his right to

2    testify is knowing and voluntary and with the advice of

3    counsel?

4          **MS. SHROFF:**  I am, Your Honor.

5          And just so the record is clear, we talked to him

6    as a team, Mr. Silverman, Ms. Gatto and I.

7          **THE COURT:**  Thank you very much.  Thank you,

8    Mr. Dunn.  You may sit back down.

9          Okay.  So, Ms. Schoff, you will renew the Rule 29

10   motion now.

11         **MS. SHROFF:**  If I may, yes.

12         **THE COURT:**  You will make the Rule 29 motion as it

13   now exists at the end of the defense case, which we will

14   tell the jury there isn't going to be one.

15         **MS. SHROFF:**  That's correct, Your Honor.

16         It would save time and be less cumbersome if the

17   Court could consider it having been made after the defense

18   rest.

19         **THE COURT:**  Yes.

20         **MS. SHROFF:**  The defense moves for Rule 29 after

21   the defense case.

22         **THE COURT:**  I consider that motion having been

23   made after the defense rests.  The record is clear that the

24   defense has made express its intent not to put on a case.

25   We will tell the jury that when they come back.  Just to be

1    able to do this outside of the presence of the jury, I am

2    assuming that will happen in a minute.

3              I am denying the Rule 29 motion as made or as I am

4    interpreting it having been made, after the defense rests.

5    And I am denying it for the same reason I already gave as to

6    the Rule 29 motion when it was made at the end of the

7    government's case.

8              **MS. SHROFF:**  I anticipated nothing less.  Thank

9    you.

10             **THE COURT:**  Thank you.

11             Okay.  So, it seems to me we can bring the jury

12   in.

13             And let me ask the parties this question.

14   Typically my intent is to give the final jury instructions,

15   as the parties have them from me, before closings.  And then

16   the lawyers can, of course among other things, argue about

17   the elements and the like.

18             It's 11:42.  That's enough time for me, certainly

19   before lunch, to do that.  But then depending on the length

20   of the closings, it probably makes sense to take a lunch

21   recess before some or all of the closings.  Do the parties

22   have a problem with me doing the closing instructions then

23   taking a lunch recess and then doing closings?  Is the

24   government okay with that?

25             **MR. DiLORENZO:**  That's fine with the government,

1    Your Honor.

2              **THE COURT:**  Is the defense okay with that?

3         **MS. SHROFF:**  Well, Your Honor, we would prefer

4    that the government close before lunch, and there would be a

5    lunch break, and then the defense close.

6         **THE COURT:**  That wasn't my question.  My question

7    was whether you had a problem with me doing the instructions

8    before lunch and the government doing its closing, just like

9    the defense, after lunch?

10        **MS. SHROFF:**  No, I don't have a problem, but I

11   have a preference and my preference would be --

12        **THE COURT:**  Sure.  Of course you do but, again,

13   that's why I didn't ask that question.

14             Okay.  I will give the jury, to be respectful of

15   their time, I will give them the final instructions and then

16   we will take a lunch break.  It isn't going to be as long as

17   a typical lunch break would be when we are hearing evidence

18   and the like, because everybody should be ready to go.  I

19   want to give the jury the closings and have them start

20   deliberating.  I will tell them how long I intend to do it.

21             We will do final jury instructions, then closings

22   after lunch.  Okay?

23        **MS. SHROFF:**  Yes, Your Honor.

24             I'm happy to disclose to the Court that perhaps

25   our summation would be 20 to 25 minutes long.  Is there a

1    ruling -- is there, like, some sense from the Court that it

2    will be the government's main, the defense's summation and

3    the rebuttal or is there going to be a break in the middle?

4         **THE COURT:**  I would like to do them altogether.

5    So long as they are -- I mean, we are in our second day of

6    trial and we have heard no evidence today.  I just can't

7    imagine that the parties are going to do more than 20 to 25

8    minutes each of their closings.  So if we do 20 to 25

9    rebuttal, straight up, we are under an hour or we are close

10   to an hour.  That will all happen before we take our next

11   break.

12        **MS. SHROFF:**  Okay.  Thank you.

13        **THE COURT:**  Great.  Thank you.

14        **MR. SILVERMAN:**  [Spoke off mic]

15        **THE COURT:**  I am certainly not going to give any

16   instructions that are now incorrect.  We included them

17   because until seven minutes ago I didn't know that the

18   defendant was not going to testify so, yes.  But thank you.

19        (Jury enters the courtroom.)

20        **THE COURT:**  Welcome back, everyone.  As I

21   anticipated, we have been able to make progress and we have

22   been efficient with our time.

23        So, Ms. Schoff.

24        **MS. SHROFF:**  Thank you, Your Honor.

25        The defense rests its case.

1              **THE COURT:**  Thank you, Ms. Schoff.

2          Ladies and gentlemen, the time has now come when,

3     as you just heard, all of the evidence is now in.  It's now

4     up to me to instruct you on the law, which I am going to do

5     in one second.  I just wanted to let you know what the plan

6     is here.

7          I'm going to provide you with my final

8     instructions on the law.  You are going to get bored of

9     hearing my voice for sure.  It's going to take a little

10    time.  We will then take a recess for lunch.  After the

11    recess will be when you hear the parties' closing arguments.

12    Okay?  Just so you know, that's when it is going to happen.

13          As it relates to these instructions, I will

14    provide you with a copy of my instructions.  During your

15    deliberations, you may, if you want, refer to these

16    instructions.  While you may refer to any particular

17    portions of the instructions, you are to consider the

18    instructions as a whole.  You may not follow some and ignore

19    others.  If you have questions about the instructions, you

20    should feel free to send me a note.  Please return your

21    instructions to me when your verdict is rendered.

22          My function is and has been to conduct this trial

23    in an orderly, fair and efficient manner; to rule on

24    questions of law; and to instruct you on the law that

25    applies in this case.  It is your duty to accept the law as

1    I instruct you.  You should consider all of the instructions

2    as a whole.  You may not ignore or refuse to following any

3    of them.

4           Your function as the jury is to determine what the

5    facts are in this case.  You are the sole judges of the

6    facts.  While it is my responsibility to decide what is

7    admitted as evidence during the trial, you alone decide what

8    weight, if any, to give to that evidence.  You alone decide

9    the credibility or the believability of the witnesses.

10          As I explained earlier, as human beings we all

11    have personal likes and dislikes, opinions, prejudices and

12    biases.  Generally, we are aware of these things.  But you

13    should also consider the possibility that you have implicit

14    biases, that is the biases of which you may not be

15    consciously aware.  Personal prejudices, preferences or

16    biases have no place in the courtroom, where the goal is to

17    arrive at a just and impartial verdict.

18          All people, as I said earlier in the trial,

19    deserve fair treatment in the legal system, regardless of

20    any personal characteristic such as race, national or ethnic

21    origin, religion, age, disability, sex, gender identity or

22    expression, sexual orientation, education or income level or

23    any other personal characteristic.

24          You should determine the facts solely from a fair

25    consideration of the evidence.  You may not take anything I

1  may have said or done as indicating how I think you should

2  decide this case.  If you believe that I have expressed or

3  indicated any such opinion, you should ignore it.  The

4  verdict in this case is your sole and exclusive

5  responsibility.  If any reference by me or the attorneys to

6  the evidence is different from your own memory of the

7  evidence, it is your memory that should control during your

8  deliberations.

9           During the trial, I permitted those jurors who

10  wanted to do so to take notes.  You can take your notebooks

11  with you and use them during your deliberations, if you

12  wish.  As I told you at the beginning of the trial, those

13  notes are only to be an aid to your memory.  They are not

14  evidence in the case and they should not replace your own

15  memory of the evidence.  Those jurors who have not taken

16  notes should rely on their own memory of the evidence.  The

17  notes are for the notetakers' own personal use.

18           During your deliberations, you may consider only

19  the evidence admitted in this case.  It consists of the

20  sworn testimony and the exhibits admitted into evidence.

21  When you consider the evidence, you are permitted to draw

22  from the facts that you find have been proven, such

23  reasonable inferences as you feel are justified in the light

24  of your experience.  You should give any evidence such

25  weight as in your judgment it is fairly entitled to receive.

1           The statements and arguments of the lawyers are

2    not evidence.  They are only intended to assist you in

3    understanding the evidence.  Similarly, the questions of the

4    lawyers are not evidence.

5           The Information is merely the formal way of

6    accusing a person of a crime.  You must not consider the

7    Information -- here I am using "Information" not as a

8    generic term, but as a term of legal art.  You should not

9    consider the Information as evidence of any kind.  You may

10   not consider it as any evidence of Mr. Dunn's guilt or draw

11   any inference of guilt from it.

12          Turning to the burden of proof.  Every defendant

13   in a criminal case is presumed to be innocent.  This

14   presumption of innocence remains with the defendant

15   throughout the trial, unless and until the government has

16   proven he is guilty beyond a reasonable doubt.  This burden

17   never shifts throughout the trial.

18          The law does not require Mr. Dunn to prove his

19   innocence or to produce any evidence at all.  If you find

20   that the government has proven beyond a reasonable doubt

21   every element of the offense with which Mr. Dunn is charged,

22   it is your duty to find him guilty.  If you find the

23   government has failed to prove the evidence beyond a

24   reasonable doubt, it is your duty to find Mr. Dunn not

25   guilty.

1          The government, as I just said, has the burden of

2    proving Mr. Dunn guilty beyond a reasonable doubt.  In civil

3    cases, it is only necessary to prove that a fact is more

4    likely true than not or in some cases that its truth is

5    highly probable.

6          In criminal cases such as this one, the

7    government's proof must be more powerful than that.  It must

8    be beyond a reasonable doubt.  "Beyond a reasonable doubt,"

9    as the name implies, is a doubt based on reason.  A doubt

10   for which you have a reason based upon the evidence or lack

11   of evidence in the case.  If after careful, honest and

12   impartial consideration of all of the evidence, you cannot

13   say that you are firmly convinced of Mr. Dunn's guilt, then

14   you have a reasonable doubt.

15         Reasonable doubt is the kind of doubt that would

16   give a reasonable person, after careful and thoughtful

17   reflection, to hesitate to act in the graver or more

18   important matters in life.  However, it is not an imaginary

19   doubt nor a doubt based on speculation or guesswork.  It is

20   a doubt based on reason.  The government is not required to

21   prove guilt beyond all doubt or to a mathematical or

22   scientific certainty.  Its burden is to prove guilt beyond a

23   reasonable doubt.

24         There are two types of evidence to determine the

25   facts:  Direct evidence and circumstantial evidence.  When a

1    witness, such as an eyewitness, asserts actual knowledge of

2    a fact, that witness's testimony is direct evidence.  On the

3    other hand, evidence of facts and circumstances from which

4    reasonable inferences may be drawn is circumstantial

5    evidence.

6         Let me give you an example.  Assume a person

7    looked out a window and saw that snow was falling.  If he

8    later testified in court about what he had seen, his

9    testimony would be direct evidence that snow was falling at

10   the time he saw it happen.

11        Assume, however, that he looked out the window and

12   saw no snow on the ground and went to sleep and saw snow on

13   the ground after he woke up.  His testimony about what he

14   had seen would be circumstantial evidence that it had snowed

15   while he was asleep.

16        The law says that both direct and circumstantial

17   evidence are acceptable as a means of proving a fact.  The

18   law does not favor one form of evidence over another.  It is

19   for you to decide how much weight to give any particular

20   evidence, whether it is direct or circumstantial.  You are

21   permitted to give equal weight to both.  Circumstantial

22   evidence does not require a greater degree of certainty than

23   direct evidence.  In reaching a verdict in this case, you

24   should consider all of the evidence presented, both direct

25   and circumstantial.

1    One of the questions you were asked when we were

2    selecting this jury was whether the nature of the charge

3    itself would affect your ability to reach a fair and

4    impartial verdict.

5    We asked you that question because you must not

6    allow the nature of the charge to affect your verdict.  You

7    must consider only the evidence that has been presented in

8    this case in reaching a fair and impartial verdict.

9    You have heard about witnesses meeting with

10   attorneys or investigators before they testify.  You are

11   instructed that it is proper for a lawyer or an investigator

12   to interview a witness in preparation for trial.

13   The weight of evidence is not necessarily

14   determined by the number of witnesses testifying for each

15   side.  Rather, you should consider all of the facts and

16   circumstances in evidence to determine which of the

17   witnesses you believe.  You might find that the testimony of

18   a smaller number of witnesses on one side is more believable

19   than the testimony of a greater number of witnesses on the

20   other side or you might find the opposite.

21   The lawyers in this case sometimes objected when

22   the other side asked a question, made an argument or offered

23   evidence that the objecting lawyer believed was not proper.

24   You must not hold such objections against the lawyer who

25   made them or the party she or he represents.  It is the

1    lawyers' responsibility to object to evidence that they

2    believe is not admissible.

3          If, during the course of the trial, I sustained an

4    objection to a lawyer's questions, you must ignore the

5    question and not speculate as to what the evidence may be.

6    If, after a witness answered a question, I ruled that the

7    answer should be stricken, you should ignore both the

8    question and answer, and they should play no part in your

9    deliberations.

10          Likewise, exhibits as to which I sustained an

11    objection or that I ordered stricken, are not evidence and

12    you must not consider them in your deliberations.

13          In determining whether the government has proved

14    the charges against the defendant beyond a reasonable doubt,

15    you must consider the testimony of all of the witnesses who

16    have testified.  You are the sole judges of the credibility

17    of the witnesses.  You alone determine whether to believe

18    any witness and the extent to which a witness should be

19    believed.  Judging a witness's credibility means evaluating

20    whether the witness has testified truthfully and also

21    whether the witness accurately observed, recalled and

22    described the matters about which the witness testified.

23          As I instructed you at the beginning of trial, and

24    again just a minute ago, you should evaluate the credibility

25    of witnesses free from prejudices and biases.  You may

1    consider anything else that, in your judgment, affects the

2    credibility of any witness.

3          For example, you may consider the demeanor and the

4    behavior of the witness on the witness stand, the witness's

5    manner of testifying; whether the witness impresses you as

6    having an accurate memory; whether the witness has any

7    reason for not telling the truth; whether the witness had a

8    meaningful opportunity to observe the matters about which he

9    or she has testified; and whether the witness has any

10   interest in the outcome of this case, stands to gain

11   anything by testifying or has friendship or hostility toward

12   other people concerned with this case.

13         In evaluating the accuracy of a witness's memory,

14   you my consider the circumstances surrounding the event,

15   including the time that elapsed between the event and any

16   later recollections of the event and the circumstances under

17   which the witness was asked to recall details of the

18   offense.  You may consider whether there are any

19   consistencies or inconsistencies in a witness's testimony or

20   between the witness's testimony and any previous statements

21   made by the witness.

22         You may also consider any consistencies or

23   inconsistencies between the witness's testimony and any

24   other evidence that you credit.  You may consider whether

25   any inconsistencies are the result of lapses in memory,

1    mistake, misunderstanding, intentional falsehood or

2    differences in perception.

3          You may consider the reasonableness or

4    unreasonableness, the probability or improbability of the

5    testimony of a witness, in determining whether to accepting

6    it true and accurate.  You may consider whether the witness

7    has been contradicted or supported by other evidence that

8    you credit.

9          If you believe that any witness has shown him or

10   herself to be biased or prejudiced for or against either

11   side in this trial or motivated by self-interest, you may

12   consider whether such bias or prejudice has colored the

13   testimony of the witness so as to effect the desire and

14   capability of that witness to tell the truth.

15         You should give the testimony of each witness such

16   weight as in your judgment it is fairly entitled to receive.

17   A law enforcement officer's testimony should be evaluated by

18   you, just as any other evidence in the case.  In evaluating

19   the officer's credibility, you should use the same

20   guidelines that you applied to the testimony of any witness.

21   In no event should you give either greater or lesser weight

22   to the testimony of any witness, merely because he or she is

23   a law enforcement officer.

24         Every defendant in a criminal case has an absolute

25   right not to testify.  Mr. Dunn has chosen to exercise this

1    right.  You must not hold this decision against him and it

2    would be improper for you to speculate as to the reason or

3    reasons for his decision.  You must not assume Mr. Dunn is

4    guilty just because he chose not to testify.

5            Motive is not an element of the offenses charged,

6    and the government is not required to prove motive in this

7    case.  But you may consider evidence of motive or lack of

8    evidence of motive in deciding whether or not the government

9    has proved the charges beyond a reasonable doubt.  You have

10   heard evidence that Mr. Dunn made statements to the law

11   enforcement agents.

12           You should consider all of the circumstances,

13   including whether recorded the police recorded the

14   statement, in deciding whether he made the statement.  If

15   you find he did make the statement, you must decide how much

16   weight to give the statement.

17           For example, you may consider whether he made the

18   statement voluntarily and understood what he was saying.

19   You may consider whether he was forced, threatened or

20   pressured, either physically or psychologically.  And

21   whether he was promised any reward or benefit from making

22   the statement.  You may consider all of the conversations

23   between him and law enforcement agents.

24           You may consider whether the agents warned him of

25   his rights.  You may consider where and when the statement

1    was given, the duration of any questioning.  Who was present

2    during some or all of the questioning of Mr. Dunn.  And

3    whether law enforcement recorded some or all of the

4    conversation.  You may consider the age, education,

5    experience, intelligence and the physical and mental

6    condition of the defendant.

7         Someone's intent or knowledge ordinarily cannot be

8    proved directly because there's no way of knowing what a

9    person is actually thinking.  But you may infer someone's

10   intent or knowledge from the surrounding circumstances.  You

11   may consider any statement made or acts done by Mr. Dunn and

12   all other facts and circumstances received in evidence,

13   which indicate his intent or knowledge.

14        You may infer but are not required to infer that a

15   person intends the natural and probable consequences of acts

16   he intentionally did or intentionally did not do.  It is

17   entirely up to you, however, what facts to find from the

18   evidence received during this trial.

19        You should consider all of the circumstances and

20   evidence that you think are relevant in determining whether

21   the government has proved beyond a reasonable doubt that

22   Mr. Dunn acted with a necessary state of mind.

23        Turning to the elements of the offense.  The

24   defendant is charged with forcibly assaulting, resisting,

25   opposing, impeding, intimidating or interfering with an

1    officer or an employee of the United States, who was then

2    engaged in the performance of or on account of the

3    performance of his official duties, which is a violation of

4    federal law.

5          To find the defendant guilty of this offense, you

6    must find that the government proved each of the following

7    elements beyond a reasonable doubt.  First, Customs and

8    Border Protection Officer Greg Lairmore was an officer or

9    employee of the United States.

10          Second, the defendant forcibly assaulted,

11    resisted, opposed, impeded, intimidated or interfered with

12    Agent Lairmore.  Third, that the defendant did that act

13    voluntarily and intentionally; and fourth, that the

14    defendant so acted while Agent Lairmore was engaged in or on

15    account of his performance of official duties.

16          I'm now going to give you some definitions.

17          The defendant acted forcibly if he used force,

18    attempted to use force or threatened to use force against

19    the law enforcement officer.  The term forcibly means by use

20    of force.  Physical force is sufficient but actual physical

21    contact is not required.

22          A person can act forcibly by threatening or

23    attempting to inflict bodily harm upon another, with the

24    present ability to inflict bodily harm.  All of the acts,

25    assaulting, resisting, opposing, impeding and interfering

1    with, are modified with the word forcibly.  Thus, to find

2    the defendant guilty, you must find beyond a reasonable

3    doubt, that he acted forcibly.

4         The term assault means any intentional attempt or

5    threat to inflict injury upon someone else.  When coupled

6    with an apparent ability to do so, it places another in

7    reasonable apprehension of immediate bodily harm.

8         Injury means any physical injury, however small,

9    including a touching offensive to a person of a reasonable

10   sensibility.

11        The term resist means to oppose through action or

12   exert oneself to counteract.

13        The term oppose means to take action against

14   someone.

15        The term impede means stopping progress,

16   obstructing or hindering.

17        The term intimidate means to make timid or

18   fearful, to frighten or deter.

19        The term interfere means to hinder or intervene.

20        Mr. Dunn's speech cannot constitute assault,

21   resistance, opposition, impediment, intimidation or

22   interference.  You may consider Mr. Dunn's speech to provide

23   context or in determining whether the government has proven

24   the third and fourth elements of the offense.

25        "Engaged in the performance of official duties"

1    means acting within the general scope of what the employee

2    or officer is employed to do or expected to do, as opposed

3    to engaging in a personal frolic of his own.

4            The term "on account of" carries its every day

5    ordinary meaning.

6            Finally, it is not necessary to show that the

7    defendant knew the person was -- let me just start again.

8    It is not necessary to show that the defendant knew the

9    person being forcibly assaulted, resisted, opposed, impeded,

10   intimidated or interfered with, was an employee or officer

11   of the United States.

12           The question of possible punishment of the

13   defendant in the event of a conviction, is not a concern of

14   yours, and should not enter or interfere with your

15   deliberations in any way.  The duty of imposing a sentence,

16   in the event of a conviction, rests exclusively with me.

17   Your verdict should be based solely on the evidence in this

18   case, and you should not consider the matter of punishment

19   at all.

20           I'll have a few additional instructions after the

21   parties have done closing arguments but, as I said before,

22   what we are going to do now is we are going to take, in the

23   scheme of things, a relatively short lunch break.  After

24   which, the government will do its closing and you will then

25   hear from the defense side and the government.

1          Just to be respectful of everyone's time, let's go

2    back on the record at 1 p.m.  So at 1 p.m. everyone will be

3    back here.  We will go on the record.  The government will

4    close.  Defense will close.  The government will rebut, as

5    warranted?  Okay?

6          Thank you, all.

7       (Jury exits the courtroom at 12:09 p.m.)

8       **THE COURT:**  Okay.  So we will see everybody back

9    here at 1, unless there is something we should discuss

10   before then.

11         Mr. Silverman?

12      **MR. SILVERMAN:**  Your Honor, the defense reasserts

13   its pre-instruction objections, just for presentation

14   purposes.

15      **THE COURT:**  Absolutely.  Thank you for stating

16   that.

17         And to be even, perhaps, more clear, in giving the

18   jury the instructions I just gave, I've considered all

19   arguments made by both parties as to the instructions they

20   believe were appropriate and to the extent that I have

21   picked instructions that were not as suggested or argued by

22   either party.  It seems to me that those objections are well

23   stated and preserved.  Okay?

24      **MR. SILVERMAN:**  Thank you, Your Honor.  Nothing

25   further.

1          **THE COURT:**  Thank you, all.  See everyone at 1:00.

2      (Recess from 12:10 p.m. to 1:11 p.m.)

3          **DEPUTY CLERK:**  Your Honor, we are on the record.

4          **THE COURT:**  Thank you, Ms. Moore.

5      The government may proceed.

6          **MR. DiLORENZO:**  Good afternoon.  We will try it

7   this time.

8          This case is not about someone with strong

9   opinions.  It's not about immigration.  It's not about the

10  First Amendment.  It's about an individual who crossed the

11  line.

12         Each and everyone of you, the defendant included,

13  has the right to their personal beliefs they have the right

14  to voice those beliefs and they have the right to voice

15  those in public; however, it does not give them the right to

16  touch another person, to strike another person, even with a

17  sandwich, if they disagree with those beliefs; and that's

18  where the defendant crossed the lien.

19         As you heard my co-counsel say in opening, the

20  facts in this case are pretty straightforward.  And what we

21  know is that on August 10th of 2025, members of Custom and

22  Border Protection and the local police got together and they

23  were serving a mission.  And the mission was to, you know,

24  come into the community and serve -- sorry.  Their mission

25  was pretty straightforward.  Their mission was to come and

1    serve in the community as part of the D.C. safety effort.

2           I apologize.

3           The facts here are straightforward.  On the

4    evening of August 10th, 2025 ...

5           I apologize, Your Honor.

6           **THE COURT:**  Take your time.

7           **MR. DiLORENZO:**  -- Agent Lairmore and Trejo, in an

8    effort to keep D.C. safe, whether we agree with it or not,

9    is not important.  In fact, you can disagree with that

10   effort, as the defendant is.

11          The reality is, Agent Lairmore was walking the

12   D.C. streets with local police in support of this effort,

13   and you heard that he and other officers made their way to

14   the area of 14th and U Street.  The primary role was high

15   visibility mission.  They were all wearing police markings.

16   They were not wearing masks.  They were not engaged in

17   enforcement action and they were certainly not engaged in

18   immigration enforcement action.

19          As they were standing on the corner of 14th and U,

20   the defendant, as we saw, exited the Subway restaurant and

21   started speaking with law enforcement officers.  He was

22   focusing mostly on Agent Lairmore.  The defendant came out,

23   spoke to him and the event quickly escalated.  He began

24   yelling at Agent Lairmore, cussing at him.  The officer at

25   the time showed restraint.  The defendant began escalating

1    and as it began to escalate, the agent continued to show

2    respect, respecting the right to voice his opinion.  You

3    heard the exchange and heard Officer Lairmore when he was

4    facing the defendant.  And he was in his face.

5           Thank you, sir.  And he explains, I am here as

6    part of the effort to make D.C. safe and beautiful.  The

7    defendant's reaction immediately escalated and he started to

8    yell.  You saw the CCTV, if you recall, you can see the

9    defendant come out.  When he came out, you saw him wave his

10   hand aggressively and this was the initial part of the

11   exchange.  The defendant then makes his way around, he's

12   yelling at the other officers.

13          We heard from Detective Henry.  She said what she

14   saw was she had noticed the defendant speaking to Lairmore

15   and then he started to get boisterous, started to get loud

16   and started to make a disturbance.  She noticed people in

17   the community took notice and she warned him.  She said, You

18   are causing a disturbance, actually breaking the law.  He is

19   publicly disorderly.

20          She warned them because they were there for

21   another mission, not to arrest people who were acting

22   disorderly, but on a high-visibility mission to keep that

23   neighborhood safe.  She warned him and told him to move on.

24   He did move on but only for a moment.  You saw on the CCTV

25   what he did.  He began to walk across the street.  As he

1    walked across the street, he turned and continued the

2    cussing and the yelling.  And he made it across the street.

3    When he made it across the street -- if I could -- he came

4    across another group of officers.  These officers included

5    FBI agents.  You can tell they are FBI agents because of

6    some of the marks on the back of their clothes.  The

7    defendant is throwing cuss words, F-u facists.  How did they

8    react?  The same as the first group.  They show restraint.

9    They respect his First Amendment rights, continue across

10   14th Street.  We saw that.  That was captured on video.

11          (Video played.)

12          He's causing a disturbance.  He could have been

13   arrested there, but that's not what the officers' mission

14   is.  They are hoping it was over.  That is what

15   Detective Henry said.  She warned him and thought that he

16   was on his way but he wasn't.  And mind you, when you look

17   at the CCTV, you can see how long this is, it is over a

18   minute at this point, close to two minutes has elapsed.

19   This just isn't the defendant walked out of the restaurant

20   and exchanged some words, this is lasting some time.

21          Now, it should have ended here but it didn't.  The

22   defendant then seemed focus.  He was still focused on the

23   officers, but he became focused on his cars.  Most of the

24   officers had metro-ed over, so those officers wouldn't have

25   had cars.  There may have been other officers.  The

1    defendant reaches out to a couple of guys, to the people

2    hanging out and watching the events unfold, and watch the

3    officers car.  We see all of that exchange on video as well.

4         (Video played.)

5              And we see what the defendant does.  He crosses

6    the street.  And I invite you to watch the CCTV when you go

7    back to the jury room.  I will not play it for you in my

8    closing but you seen it.  And he stands out because of his

9    shirt.  His shirt is bright.  You can see him.  What he does

10   is he crosses 14th Street, heads over to some white cars.

11   He is over there for a little bit.  And then what he does is

12   he starts walking.  You watch him.  If you track him, he is

13   walking down the street, in the street.  He is walking in

14   the street.

15             Again, these officers are on high-visibility

16   patrol, not looking for somebody mouthing off.  He walks

17   down the street, and you will see him walk to the sidewalk.

18   What does he do there?  If you look at the CCTV, and

19   Agent Lairmore described it but you can see it, you see him

20   sprint towards the officers.  These are the officers he

21   berated for about a minute and sprints directly at them.

22             What is their reaction?  They show the utmost

23   restraint.  They have an eye on him.  See him sprinting

24   toward him.  He goes around the corner and makes contact

25   with some people that are established at a bar around the

1    corner.  And then what he does there is he continues to

2    yell.  And they can hear him yelling, interacting with some

3    of the patrons there, trying to get people riled up.  It

4    doesn't work.  He is trying to get people riled up.

5            **MS. SHROFF:**  Objection.

6            **THE COURT:**  What's the objection?  Just state it

7    generally.

8            **MS. SHROFF:**  Misstatements of testimony.

9            **MR. DiLORENZO:**  You see the video.  Your memory

10   will control.  You will see the video.  You will see him on

11   the CCTV.

12           **THE COURT:**  Overruled, for present purposes.

13           Obviously, the jury -- you've seen the testimony

14   to the extent that any closing argument is inconsistent with

15   the evidence, you are to base your verdict solely on the

16   evidence as you find it.

17           **MR. DiLORENZO:**  Thank you.

18           But you can see, and I invite you again to look at

19   the CCTV, after he's sprinted past the officers, he is then

20   by an establishment there and he is pointing at the officers

21   and you see him.  It's in evidence.  Draw your own

22   inference.  What it appears he is doing, and subsequent to

23   the video, when he is yelling, he is trying to get people to

24   notice and get people worked up.  It's not working.  He is

25   making a scene and the officers continue to show restrain.

1    So what does he do when it doesn't work, when he's not able

2    to get the officers worked up, not able to incite other

3    people?  He refocuses attention on the agents.  And we see

4    that.

5           The first agent that he focuses on is Agent Trejo.

6    You heard Agent Trejo was an assistant chief.  You heard

7    Agent Lairmore explain who he was.  He was identified in the

8    photograph.  He is standing there and this is what we see.

9        (Video played.)

10          And you see that.  We've listened to this a number

11   of times.  I ask you to listen to that.  What you see is

12   Trejo, Agent Trejo.  And when the defendant is in his face,

13   what is he doing?  He is waving his hand violently.  He is

14   waving his hand and says, F you.  Get the F back, in a

15   threatening way.  The defendant's conduct is escalating.

16          What do you see Trejo do?  He is standing there

17   showing restraint, takes a small step back; that's what the

18   defendant is doing.  Trejo and the other agents they don't

19   take the bait.  So what the defendant does, he then focuses

20   his attention back.  He re-engages with Agent Lairmore.

21       I will finish this.

22       (Video played.)

23          Ask yourself; is that threatening?

24       (Video played.)

25          He is not able to get Agent Trejo to take the

1    bait.  So he steps back and looks around to other people

2    around.  He says, Look at these.  Look at these agents.  He

3    is trying to get other people to engage and no one is.

4    People are taking notice because of the disturbance he is

5    causing, but nobody is joining him.

6          Then what happens is we see the defendant then

7    re- engage with Officer Trejo.  You will physically see

8    him -- verbally -- I mean, he's loud but he's very

9    aggressive.  He's pointing.  He's within, at some point, 18

10   inches of the agent, waving his hand aggressively.  He is

11   bouncing up and down.  And, again, all of the agents -- and

12   Agent Lairmore is showing restraint.

13         There is one thing you heard Agent Lairmore

14   testify to is that it's your natural inclination and your

15   training teaches you, when someone is in your face and comes

16   to like that is to create space, put your hands up and

17   create space.  He says, I intentionally didn't do that,

18   because I wanted to de-escalate.

19         You will see the agent's hands were at his side.

20   Again, he is keeping a calm voice to try to keep things

21   down.  His attempts to de-escalate doesn't work, and we will

22   see what happens.

23         What he does is get to the point to do what he

24   does and takes what happens to be in his hand, a sandwich

25   and he spikes it.  Throws it like a baseball.  Strikes

1    Agent Lairmore in the chest.  You heard Agent Lairmore.  He

2    could feel it.  We are not alleging he needed medical

3    treatment.  He was struck.  He crossed the line.  He was

4    chased.  He knew what he was doing.  He sprinted down the

5    corner and went a block away.  He actually zigzagged.  The

6    agent pursued, the officers pursued, Detective Henry

7    pursued.  He actually ran into traffic putting himself and

8    certainly officers in harm, because there was some traffic

9    that night.  In a nutshell, that's what happened.  The fact

10   are pretty uncontroverted.

11         What I would like to do is go through the elements

12   of the offense.  The judge instructed you on them.  You have

13   a written copy of them, that's what you are going to be

14   considering.  I want to go through and explain them briefly.

15   There are four elements to the offense.  The first is that

16   Agent Lairmore was an officer, employee of the

17   United States.  We know that he was a federal agent.  We

18   know that he's been employed by Custom and Border Protection

19   for 11 years.  He was working that night in that capacity;

20   so that's the first element.

21         I am going to jump down to intent.  So the

22   evidence here is pretty clear with respect to the intent.

23   Especially if you look at the defendant's words and if you

24   look at his actions.  This isn't something that just kind of

25   happened.  It was negligent.  He fell into it.  The

1    defendant was focused on these officers for about seven

2    minutes.

3              You look at the CCTV.  It's seven minutes.  He was

4    focused on Lairmore the second time when he assaulted him.

5    You look at exactly what he is doing right before the

6    assault.  He is pointing at him.  He is yelling at him.  No

7    question that it is intentional.  Then you look at his

8    statements that he made after he was arrested.  When he was

9    sitting on the bench, he said, I did it.  I succeeded.

10   There was no question about intent.

11             The third element is that the defendant did these

12   acts while the agent or the officer was engaged in or on

13   account of the performance of his duties.  And here the

14   Court provides a definition of "engaged in."

15             There was some question by defense about what CBT,

16   what their authority is.  It's not your job to figure that

17   out.  What your job is to do is to follow the Court's

18   instructions.  The instructions are quite clear.  For

19   somebody to be "engaged in" they merely need to be acting

20   within the general scope of what they are employed to do or

21   what they are expected to do.

22             You heard from the two witnesses that they were

23   expected to be in D.C., to be walking the streets, no

24   support of Make D.C. Safe and Beautiful; that's what they

25   were doing.  They were engaged in their duties when being

1    assaulted.

2            They were working in their official duty, as

3    opposed to, if they were on their own personal frolic,

4    whatever it means, as opposed to whether this assault

5    occurred while Agent Lairmore was at a party, in his

6    personal capacity.  This only applies because it occurred

7    while he was in the performance and engaged in his official

8    duties.

9            Now, there's a second piece to that.  The

10   government could prove either one that's clearly

11   established, but if we can show that the act here, the

12   assault -- and I'll discuss the act in a second -- occurred

13   on account of his official duties.

14           Here there is evidence that the defendant targeted

15   Agent Lairmore.  Why do I say that?  We heard when the

16   defendant came out of the Subway, he made contact with

17   Agent Lairmore.  He is wearing the insignia CBP, Custom and

18   Border Protection.  And the defendant asks, What are you

19   doing here?  He explained politely that, I am here in

20   support of this effort, he said, to keep D.C. safe and

21   beautiful.

22           So the defendant knew who he was a Custom and

23   Border Protection agent and also knew why he was there.

24   What did the defendant do?  That's when his conduct

25   escalated and ultimately ended in an assault.  So he was

1    also -- the government can also establish that it was

2    because "on account of."

3         Now, let's talk about the acts.  You've heard the

4    Court provide instructions.  The offense can be committed in

5    one of several ways.  The government believes there is

6    evidence of all.  You only have to find one.  But if you

7    look at the statute, The defendant forcibly assaulted,

8    resisted, opposed, impeded, intimidated or interfered.

9         The keyword there is "or".  Right?  There are six

10   categories.  We only have to prove one.  The government's

11   position is all have been established, but three are

12   stronger than the others.  That is the assault, interference

13   and the impeding.

14        Let's start with "assault."  Actually, let's start

15   with "forcibly."  As the Court instructed you, the act has

16   to occur forcibly.  The definition is that the defendant

17   acted forcibly if he used force, attempted to use force or

18   threatened to use force against law enforcement officers.

19        The term "forcibly" means by use of force.

20   Physical force is sufficient.  Actual physical contact is

21   not required.  So you don't need the physical contact.  Here

22   we have it.  We have the defendant throwing.  It's a

23   sandwich, but throwing it hard.  And it strikes the agent.

24   The agent can feel it.  That is sufficient for force.  And

25   that meets the definition of force.

1          Now, let's talk about the acts.  As I said, six

2    ways to prove the offense, three are stronger than the

3    others and that's what I'll discuss is the first, the

4    assault.  And the Court provides a definition of assault.

5          An assault means any intentional attempt or threat

6    to inflict injury upon someone else, when coupled with an

7    apparent present ability to do so, that places another in

8    reasonable apprehension of immediate bodily harm.

9          Injury is defined as "the means of any physical

10   injury, however small, including touching, offensive to a

11   person of reasonable sensibility."

12         Injury is the key term here.  When we think of

13   injury, you think of needing medical treatment.  That's not

14   what is required.  We are talking about the legal

15   definition.  The definition the Court instructed you.  An

16   injury is sufficient for an assault, if we have an offensive

17   touching.  Hit with a sandwich.  Having a sandwich spiked on

18   your chest; is that offensive to a person of reasonable

19   sensibilities?  Certainly.  So we have an assault.

20         As I said, you know, there are six categories, but

21   there's also impeding and interfering.  The evidence here is

22   strong.  The defendant was impeding and interfering.  The

23   Court provides helpful definitions for those as well.

24         So impede means to stop progress by obstructing or

25   hindering.  Interfere is similar and means to hinder or

1    intervene.

2              What happened here?  The officers were posted up

3    at 14th and U.  They were doing this on a high-visibility

4    mission; and that's what they were doing.

5              What does the defendant do?  He spent seven

6    minutes trying to get them off that corner.  And what we

7    see, as I said, there was an escalation.  And why he was

8    trying to get them off that corner doesn't matter but that's

9    what he was doing.

10             It started by yelling, as I said.  Started by

11   yelling and cursing and that doesn't work.  Targeting

12   different officers; that didn't work.  Tries to get others

13   involved across the street or at a nearby establishment;

14   that doesn't work.  He gets in the faces of several

15   officers, gestures, waving his hand or bouncing up and down

16   and that doesn't work.  He even gets to the point where he

17   does essentially a threat with Agent Trejo when he is

18   wagging his hand in his face and says, Get the F back.

19             **MS. SHROFF:**  Objection.  It's the same objection.

20             **THE COURT:**  Overruled.

21             **MR. DiLORENZO:**  That doesn't work as well.  You

22   have to hand it to the officers, they are exercising the

23   outmost restraint.

24             We have, clearly, disorderly.  And, you know, it's

25   not -- it's disorderly over a period of minutes.  We have a

1    threat.  So he re-engages Agent Lairmore.  He engages him.

2    If you look at the CCTV, his body gestures at this point, I

3    mean, he is really going.  In the beginning he was wagging

4    his hand.  At some point he was moving up and down.  Here he

5    is going up and down.  He is yelling.  The agent showing the

6    outmost control.  There is a lot to be said about that.

7           The defendant sees nothing is working.  Nothing is

8    working.  He is getting worked up.  And he just throws what

9    is in his hand.  We are not saying he goes into Subway and

10   is planning to hit somebody with a sandwich.  When he saw

11   those officers and saw what they were doing, he wanted to

12   get them off the corner.  He kept going and escalated.  When

13   it got to the point where he touched the officer, it went

14   too far.

15          To their credit, even though they chased him a

16   block, even though they had to zigzag in traffic, when they

17   arrested him, it was a soft arrest.  They didn't tackle or

18   take him to the ground.  Again, they were showing restraint;

19   and that's what they did.

20          Now, the government said the reason they wanted to

21   pull the officers off that corner is, first, you look at

22   what he did after he struck the officer.  He turned and ran

23   immediately.  He bolted.  And bolted away from the corner,

24   causing the officers to follow and they pursued.

25          Why did he do this?  Well, I think his words say

1    it best, and I will play that for you.

2          (Video played.)

3             The volume isn't great.  When you are back in the

4    jury room, listen to it.  What did he say?  I did it.  There

5    is no question he did.  He goes, I did it.  This is not in

6    response to a question.  It is almost with a little bit of

7    pride.  I did it to draw them away from where they were.  I

8    succeeded.  He is taking pride in the fact that he

9    interfered with their mission.  It is fine he disagrees with

10   their mission.  Many of you may disagree with the mission.

11   There is no problem with that.  But throwing any object,

12   sandwich, and even threatening someone, that's not the way

13   to do it.  There's other ways to do it.  There's other

14   lawful ways to do it.  The officers, again, showed

15   unbelievable restraint.

16            Ladies and gentlemen, Agent Lairmore and the other

17   officers were doing their job that night, as I said.  It is

18   a high-visibility mission, until they encountered the

19   defendant.  Until a seven-minute verbal borage.

20            Look at the CCTV.  Look at where it started.  From

21   the point the defendant exited the Subway to the point where

22   he begins sprinting down the block.  There was a

23   seven-minute borage and disturbance.  It had it's desired

24   effect; and that was to distract the officers and to move

25   them away from their post.  And that's what it did.

1          Throughout, the officer showed restraint.  They

2     showed respect that night.  They were doing their job.  They

3     were carrying out their mission, until this man crossed the

4     line.

5          We ask, as co-counsel asked in your opening, that

6     you do the same thing.  That you take your oath seriously,

7     that you apply the law to the facts.  If you do that,

8     there's one result; and that is a verdict of guilty.

9          Thank you.

10          **THE COURT:**  Thank you, Counsel.

11          Defense closing.

12          **MS. SHROFF:**  We have a motion.

13     (Bench conference.)

14          **THE COURT:**  Okay.  Can everyone hear me?

15          **MR. PARRON:**  One moment, Your Honor.

16          **MS. SHROFF:**  May I, Your Honor.

17          **THE COURT:**  You may.

18          **MS. SHROFF:**  We have a motion for a mistrial based

19     on the fact that the government said in its summation that

20     Mr. Dunn incited.  And that was the word they used,

21     "incited".

22          There's no such evidence in this case.  In fact,

23     in cross-examination of Officer Lairmore, he made perfectly

24     clear that -- and I think I have pretty good notes, Did you

25     ever see the defendant ask others to join him?  No.  Did you

1    ever see him recruit anyone?  No.

2             It's very clear that is a misstatement of facts to

3    the jury.  The word "incite" is deeply troubling, and I'm

4    happy to elaborate later, because I don't want to hold up

5    the jury.  But I am required to make a motion for a mistrial

6    in the most timely manner and I make it now.

7             In addition, the way they played the statement, we

8    renew our statement to admit the remainder of the statement,

9    which the Court previously denied relief on.

10            **THE COURT:**  What was the response, Mr. DiLorenzo?

11            **MR. DiLORENZO:**  The government based that on the

12   video.  And you see him.  The government didn't say "he

13   incited."  He attempted to.  He is talking.  He is pointing

14   at the agents.  He is cursing at them.  And he is, kind of,

15   getting people to -- he is drawing the attention to them.

16   You see when he crossed 14th Street.

17            **THE COURT:**  Okay.  I got it.

18            I'm going to deny the motion at this time.  Thank

19   you for timely raising it.

20            It seems to me that the government is making

21   argument and inferences, from what is viewable on the video,

22   that may or may not be consistent with the witness's

23   testimony.  That doesn't mean it's not true or at least fair

24   game.

25            The use of the word "incite" or "attempted to

1    incite," I haven't defined it here.  It seems to me that the

2    jury very likely took that as a colloquial term.  If you

3    want to file a motion that "inciting" has prejudicial

4    meaning here, in the very limited context of which it

5    happened, you can do so.

6           The motion for mistrial is denied.  I am also

7    going to deny the relief related to playing additional

8    video.

9           **MS. SHROFF:**  Your Honor, I ask at least that you

10   instruct the jury now, that what the prosecution says in its

11   summation is not evidence.

12          **THE COURT:**  I've already said that.

13          **MS. SHROFF:**  I know but I am asking it as a

14   curative instruction now because --

15          **THE COURT:**  I've said it twice.

16          **MS. SHROFF:**  Okay.

17          **THE COURT:**  I said it in the instructions, before

18   we started, and then I actually instructed them while the

19   closing was going on.

20          If you want me, after the closings are over, to

21   say it yet again, I will consider that.

22          **MS. SHROFF:**  Okay.  Thank you.

23          **MR. DiLORENZO:**  Actually, Your Honor.  The Court

24   has -- the government is concerned, and we object to the

25   defense use of the word when they are describing the offense

1    as a federal offense, because you know the Court correctly

2    stated the government shouldn't refer to defense as a

3    misdemeanor, because that suggests that it is not serious,

4    but referring to it as a federal offense.  And repeatedly,

5    we are talking about colloquially when someone says "you are

6    making a federal offense over it."  It has that meaning.  It

7    makes it seem more serious.  That goes to the punishment.

8    And as the Court instructed the jury, that is not an

9    appropriate thing for them --

10             **THE COURT:**  Yes it is a federal offense.

11             **THE COURT:**  What is the problem.

12             **MS. SHROFF:**  A federal offense.

13             **THE COURT:**  That wasn't a question to you.

14             **MS. SHROFF:**  Oh, I apologize, Your Honor.

15             **THE COURT:**  The question to the government is, Why

16    is it inappropriate to refer to this as what it is, as a

17    federal offense?

18             **MR. DiLORENZO:**  But it's also a misdemeanor.  By

19    calling it a misdemeanor, it suggests that it has a minimal

20    sentence.  And then by referring it to a federal offense --

21             **THE COURT:**  So that is true.  If we can't suggest

22    that it's a relatively minor federal offense, why do you get

23    to imply that it is a relatively major offense?  Should we

24    call it a misdemeanor federal offense --

25             **MS. SHROFF:**  We do not agree --

1           THE COURT:  -- relatively?

2           MS. SHROFF:  Most respectfully, Your Honor, we do

3      not -- Your Honor, we do not agree that it is a minor

4      offense.

5           THE COURT:  I didn't say it is a minor offense.  I

6      said relatively a misdemeanor is less -- it's more minor

7      than a federal offense, excuse me, than a felony offense.

8           MS. SHROFF:  Whether it's minor or not, it's a

9      federal offense.

10          THE COURT:  It's also a misdemeanor offense.  And

11     I haven't allowed the government to say it's a misdemeanor

12     offense.  Why, if you can say it's a federal offense, can't

13     the government say it is?  Both are true.

14          MS. SHROFF:  One intimates a certain sentence.

15     And you are inviting the jury to consider sentence.  I'm not

16     inviting --

17          THE COURT:  You are implying, by saying it is a

18     federal offense, that it is serious.

19          MS. SHROFF:  No, I am implying it is in federal

20     court.  It is a federal offense.

21          THE COURT:  Okay.  I am going to allow it, because

22     it is, in fact, a federal offense.  But I would very much

23     suggest that you not imply beyond stating that it is a

24     federal offense, that that makes it a very serious offense.

25          MS. SHROFF:  I did not intend to do that.

1          **THE COURT:**  Okay.  Very well.  Okay.  Let's go.

2          (Bench conference concluded.)

3          **MS. SHROFF:**  May I, Your Honor?

4          **THE COURT:**  You may.

5          **MS. SHROFF:**  This case, ladies and gentlemen of

6    the jury, is about a sandwich.  A sandwich that according to

7    Agent Lairmore somehow both exploded on his chest in a spray

8    of mustard and onion, but also landed intact on the ground,

9    still in its Subway wrapping.

10         A sandwich that Lairmore testified he somehow felt

11   through his ballistic armor, on his chest armor, that is

12   specifically made strong enough so it stops a bullet from

13   piercing a soldier's heart.

14         Putting aside Lairmore's very questionable

15   testimony, you all know, and we all know, that this was not

16   a weapon hurled with force, anywhere near justifying federal

17   charges brought in this courtroom.

18         And if there is any doubt at all about what I am

19   saying, just ask yourself -- ask yourself, would a man,

20   genuinely injured, generally offended about having a

21   sandwich thrown at him, joyfully, happily, display not one

22   but two gag gifts, a plush toy sandwich, that he keeps on

23   his office shelf and a second gift, the felony footlong

24   badge, that he has on his lunch box?

25         If someone assaulted you, if someone offended you,

1    would you keep a momento of that assault?  Would you stick

2    it on your daily lunch box and carry it around with you day

3    in and day out?  Of course not.

4            Before I move off from this topic, let me just

5    point out, who gave him these gag gifts?  Who gave

6    Agent Lairmore these gifts?  His colleagues.  His colleagues

7    who work with him, side by side at Custom and Border

8    Protection, that's what the evidence shows.

9            **THE COURT:**  Hold on a second.  We have an

10   objection.  I guess we are going to keep doing this but,

11   okay, let's get on the phone.

12       (Bench conference.)

13           **MR. DiLORENZO:**  Your Honor, this is not in evid --

14           **THE COURT:**  No.  I can't believe you didn't stand

15   up first.  It's been on the screen.  What is your excuse for

16   putting this in front of the jury?  This is not in evidence.

17           **MS. SHROFF:**  It's a demonstrative.

18           **THE COURT:**  What?

19           This is not a demonstrative.  How do we know this

20   is what he had?  This is outrageous.  I can't believe the

21   government didn't stand up and object before we have --

22           **MS. SHROFF:**  He described it.

23           **THE COURT:**  How do I know that this is what he

24   has?  It could be so different.  He described it in general

25   terms.  It's outrageous that you did this.  This is not in

1    evidence.  You agree with that?  We don't know.  We have no

2    idea what the actual thing looks like.  We don't know if

3    it's this.  Do you agree with that?

4            **MS. SHROFF:**  Well ...

5            **THE COURT:**  Do you agree with that?

6            **MS. SHROFF:**  I agree.

7            **THE COURT:**  And you agree this particular thing,

8    an actual thing or picture of it, is not in evidence?

9            **MS. SHROFF:**  That's correct, Your Honor.

10           **THE COURT:**  So why do you get to put this

11   demonstrative in?  You are demonstrating demonstratively

12   what he had actually in his office?  This is ridiculous.  I

13   will instruct the jury that they are to disregard it.  I

14   can't believe the government let this go on for a minute.

15   Enough.

16       (Bench conference concluded.)

17           **THE COURT:**  Ladies and gentlemen of the jury, you

18   are to disregard this thing that is on the screen, which is

19   not in evidence.

20           **MS. SHROFF:**  Not one but two gifts.  He received

21   two gifts, both of which he saved.  He received two gifts,

22   both of which came from his colleagues and both of which he

23   kept.  Both of which he used and both of which he displayed.

24   Just think about anything offensive, upsetting that has been

25   done to you or happened to you in your lifetime.  Have you

1    kept a momento?  The answer is, no.

2          I ask you to think about this:  While the

3    government prosecuted this case in some purported effort to

4    keep law enforcement safe and free from food fights, the CBP

5    employees are joking about it.  They are joking about it.

6          **MR. DiLORENZO:**  Objection.

7          **THE COURT:**  What now?

8          **MR. DiLORENZO:**  There's no evidence of this.

9          **THE COURT:**  It's a fair inference from the

10   evidence that's in the record.

11         **MR. DiLORENZO:**  [Nodded]

12         **THE COURT:**  You may proceed.

13         **MS. SHROFF:**  They are joking about it with each

14   other and, more importantly, they are joking about it with

15   Agent Lairmore.  Why?  Because they all think it is funny,

16   including Agent Lairmore.

17         It is the real-world reaction from Agent Lairmore

18   and his colleagues, to that sandwich throw, that are

19   revealing, proportionate and genuine.  Do you know how you

20   know that?  You know that because Agent Lairmore sat in that

21   chair and testified.  And you could watch his demeanor.  He

22   laughed.  What happened to him on August 10th is for him an

23   event of very little significance, without injury, without

24   harm, from a man who was expressing his opposition to what

25   was happening in his city and yours.

1          And yet, for some reason unknown to all of us, the

2    United States Attorneys Office persists, it persists even

3    now in turning a gag-gift-worthy moment into a federal,

4    criminal offense.  We ask you not to allow them to do that.

5          While the government may be right that in a polite

6    and respectful society, we should not throw sandwiches at

7    each other.  Where the government is sorely and completely

8    wrong, is that acts of impoliteness, rudeness and incivility

9    are punishable as federal offenses.

10          The law tells you quite clearly, and I am going to

11    go through that in a minute, that the sandwich that was

12    thrown in this case was not forcible.  It caused no injury,

13    and it never could have caused injury, and Agent Lairmore

14    never believed otherwise.  It wasn't a forcible assault and

15    it certainly was not forcibly, impeding or interfering with

16    Lairmore's duties.

17          As for the other ways that you can violate the

18    statute that is at issue and for your consideration, is

19    including resisting and opposing.  Both of those are

20    entirely inapplicable to this case.  If the government tries

21    to, on rebuttal -- and you know they do get a rebuttal to

22    contort these words -- please remember, to the extent that

23    Mr. Dunn did, in fact, resist or oppose anything that night,

24    that was well within his and our First Amendment rights.

25          I want to take a moment here and point out that in

1    the government's main submission, while they tell you on the

2    one hand it is part and parcel of their First Amendment

3    right, they are also saying somehow or the other it was

4    improper, it was wrong and should be considered.  It really

5    should not.

6            In this country, the last time I checked, dissent

7    and opposition are not crimes.  They are part of our

8    fundamental rights.  And even when expressed in a

9    distasteful manner, they are still rights that are

10   protected.

11           This has been a short trial, but I just want to

12   take a minute and introduce ourselves.  My name is Sabrina

13   Shroff.  And along with me are Julia Gatto and Nick

14   Silverman.  We represent Mr. Dunn.  We too have heard the

15   evidence of this case.  And I submit to you that that

16   evidence is nowhere close to proof beyond a reasonable doubt

17   of guilt on the charged count.

18           With that, what I am going to do now is I am going

19   to go through the elements of the charged crime.  And I am

20   going to start with what it means to assault someone.  Judge

21   Nichols has instructed you what assault means.  Assault is

22   an attempt to inflict injury, even one that is offensive is

23   not assault, unless the target of that injury is placed in

24   reasonable fear of immediate bodily harm.

25           So, again, an attempt to inflict injury, even if

1    it is offensive, is not assault unless the target of that

2    injury is placed in reasonable fear of immediate bodily

3    harm.

4            Judge Nichols also has instructed you on

5    reasonable doubt.  And the government must prove each of

6    those elements beyond a reasonable doubt.  And I submit to

7    you they have not and they will not be able to do so.

8            So let me start first again with Lairmore, that

9    Lairmore was in any fear of bodily harm.  One point to

10   consider when you are deciding this is think about where the

11   sandwich landed.  Lairmore tells you, and you can see from

12   the videos, and you can see from his clothing, that he's

13   wearing a long-sleeved shirt.  He's wearing a long-pant

14   uniform.  He has boots.  He has gloves.  And he has a

15   bullet-proof vest on the outside of his clothes on his

16   chest.  If that vest is safe enough, is created to keep that

17   body safe from a military rifle fire, it is definitely going

18   to keep you safe from a sandwich thrown at you.

19           Even if you think Lairmore was in threat of bodily

20   harm, which is an outrageous proposition the government is

21   asking you to accept, think about what Agent Lairmore told

22   all of you.  Agent Lairmore told you that he himself was not

23   offended.  Again, it's their burden to prove offensiveness

24   beyond a reasonable doubt.  And the one witness, which was

25   their witness, not mine -- it was their witness and they

1    could have asked him, because they did the direct, they
2    prepared him, they put him on -- never once told you he was
3    offended.  If anything at all, what Agent Lairmore's
4    testimony proves for you is exactly the opposite.

5            Again, I ask you to just use your common sense,
6    because the judge has instructed you that is one of the
7    things you should do.  And think about it, when you are
8    offended by something someone has done to you, you don't
9    want to be reminded of it every day.  You don't put a
10   souvenir of that offensive thing done to you on your office
11   shelf and you do not put a patch of that offensive conduct
12   on your lunch box.

13           Just think about this, in daily life, if a friend
14   gives you a gift about something that is painful to you,
15   offensive to you or hurtful to you, what do you do?  You
16   throw it away.  It's a gag gift.  Right?  It's not a gift
17   that cost $50.  It's a gag gift.  You throw it away.  Does
18   Lairmore throw it away?  No, he actually keeps it.

19           Look, what happened here on August 10th, ask
20   yourself, is it really that different than when your
21   eight-year-old is in the middle of a bedtime temper tantrum,
22   after trying to shout their way out of it -- and I don't
23   know if you have a girl or boy.  Mine is a boy.

24           He has a temper tantrum and doesn't want to go to
25   sleep.  Your goal is to go to bed in a fit of anger for not

1    getting what he wants.  And in a fit of emotion, takes the

2    stuffed animal with which he sleeps, takes that stuffed toy

3    and throws it at you.  Are you offended?  Are you physically

4    injured?  Are you scared you would suffer bodily injury?

5    No.  You close the door and you move on.  You go on with

6    your night.

7            So with that, let me turn to "impede" and

8    "interfere."  What about the government's nearly

9    incomprehensible argument that the sandwich toss impeded or

10   interfered with law enforcement?  Both the facts of this

11   case and common sense tells you that is not true.  As

12   Detective Henry and Agent Lairmore told you, and as you

13   know, because you are the people who live in this District

14   and you are the ones impacted by the executive orders, there

15   was, on August 10th, and there remains a huge federal law

16   enforcement presence on every corner in our district.  Not

17   just on 14th and U but it's everywhere.

18           **MR. DiLORENZO:**  Objection.

19           **THE COURT:**  Sustained.

20           **MR. DiLORENZO:**  Move to strike.

21           **THE COURT:**  Move to strike granted.  A, misstates

22   the testimony; B, irrelevant.  You can move on.

23           **MS. SHROFF:**  On August 10th, there is no doubt

24   there is an actual presence of law enforcement at 14th and U

25   and at 15th and U.  Both Agent Lairmore testified that they

1    got together in groups and broke up in smaller groups of

2    four, and so does Detective Henry.  Both of them tell you

3    that they are all situated in their smaller groups at

4    different parts, around 14th and 15th Streets, that was the

5    testimony in this case, and that is where law enforcement is

6    standing.

7         The street arrest of this one sandwich-thrower

8    attracted, just in that area, around two dozen federal

9    officers to the scene.  You remember that video of Mr. Dunn,

10   while Mr. Dunn sat in cuffs waiting for a transport on the

11   corner of 15 and U, a squadron of law enforcement joined.

12   They showed up after the arrest is over.  They show up at

13   the arrest scene, not at the conduct scene.

14        Those officers -- you should make no mistake about

15   that.  These officers were still very much performing the

16   purported mission of "Keep D.C. Beautiful and Safe".  How do

17   you know that?  You know it because they were visible.  The

18   government spent almost the entirety of their summation

19   saying the goal was high visibility.  They were visible.

20   There was no interference whatsoever impeding with any

21   federal official duty.

22        I'm not sure if they are actually arguing that the

23   sandwich that was thrown impeded Lairmore's personal law

24   enforcement duties that night; that by chasing Mr. Dunn for

25   a sandwich thrown at his chest, for no longer than 30

1    seconds -- you don't need to take my word for it.  You can

2    go count that on Detective Henry's body cam that was

3    introduced into evidence again by the government -- that he

4    somehow failed in his mission to remain visible.  It can't

5    be and it is not.

6           Mr. Dunn's statement in that police precinct, that

7    was not as the government invites you to believe, some sort

8    of confession.  And I ask you again, when you review the

9    evidence, I ask you not to review evidence in snippets or in

10   parts but the evidence as a whole.  And to get the evidence

11   of the statement as a whole, I ask you to look at the best

12   evidence here of what happened on that day, the evidence

13   created and shown on that Instagram post.

14          August 10th is about Mr. Dunn's strongly held

15   feelings in opposition to immigration and enforcement and

16   his worry that day that a large group of federal immigration

17   officers, who were gathered at 14th and U, were there to

18   conduct a raid at the Bunker nightclub.

19          Mr. Dunn says that on August --

20          **THE COURT:**  Let's get on the phone.

21          **MR. DiLORENZO:**  Objection.

22       (Bench conference.)

23          **MS. SHROFF:**  Yes, Your Honor.

24          **THE COURT:**  I want to hear the objection, first.

25          **MS. SHROFF:**  Oh, sorry.

1          **MR. DiLORENZO:**  There's absolutely no evidence of

2     what she started to say, talking about a raid on a club.

3     There is no evidence at all about that.

4          **THE COURT:**  What is the evidence in the record, as

5     it exists now, that would allow a fair inference to be

6     drawn, if any, about that fact that you just said?

7          **MS. SHROFF:**  "Ladies and gentlemen, these fascists

8     are gathered here because it's Latin night at the Bunker.

9     These people are racially profiling.  These facists are

10    racists."

11         **THE COURT:**  Why can't they allow the jury, to

12    allow the reasonable inference from the statement that is in

13    the record about Latin night, Bunker?

14         I don't think there is any testimony in the record

15    about what Bunker is, facists gathered here, racial

16    profiling, that he is talking about immigration?

17         **MR. DiLORENZO:**  I mean, listening to the video, I

18    didn't get all of those words.

19         **THE COURT:**  Do you think -- is this being shown to

20    the jury right now?

21         **MR. DiLORENZO:**  I ask that it be removed.

22         **THE COURT:**  Wait a second.  Do you think that

23    these statements, what is on the screen, are not accurate

24    representations of what is said?

25         **MR. DiLORENZO:**  Some of them --

1          **THE COURT:**  Wait?  Do you not know?

2          **MR. DiLORENZO:**  I've listened to the video.  I

3    haven't heard all of those words.  So in my opinion not --

4          **THE COURT:**  How about this, here's a question for

5    you, could the jury fairly infer from the video that these

6    were the words that were said?

7          **MR. SILVERMAN:**  Your Honor, if I could make an

8    offer of proof.  We had myself and two others listen to this

9    and all three of us came back with the opinion that these

10   were the words.

11         **MS. SHROFF:**  It was on the video, the video we

12   were about to play.

13         **THE COURT:**  I get that but you can't make up words

14   that aren't on there.  There has to be a reason to think a

15   word is on a video.  It is one thing to put in front of the

16   jury a direct quote to make it certain that that is what is

17   said.

18         The government isn't telling me it is wrong.  The

19   government is saying they don't know.  Defense is proffering

20   that this is an accurate representation.  All I have is the

21   defense view that this is accurate.

22         What is the government's response?  Just focusing

23   on the question.

24         Just hold on a second.

25         **MR. DiLORENZO:**  I would ask --

1          **THE COURT:**  Hey.  Whoa.  Wait for me to speak.

2          My first question is, Does the government have any

3    reason to believe what is on the screen right now is an

4    inaccurate representation in words of what was said on the

5    video?

6          **MR. DiLORENZO:**  Yes.

7          **THE COURT:**  What is wrong with what is on here?

8          **MR. DiLORENZO:**  The word "profiling".  I don't

9    hear that, and I would add that the defense shared what they

10   believed to be a transcript of the video.  And their

11   transcript doesn't have the word "profiling".

12         **MR. SILVERMAN:**  This is three days ago, before

13   what I just explained, where three of us listened to it

14   separately and each of us came back with this as the

15   transcript.

16         **MS. SHROFF:**  Your Honor, we vetted this with the

17   government yesterday.  We told the government that the

18   statement they put in was, sort of -- disjointed is the

19   word.  We asked the government for their agreement to put in

20   the rule of completeness, the reminder statement.  It was

21   the government that told us we didn't need it.

22         If you want to take a break and listen to it --

23         **THE COURT:**  Whoa.  Whoa.  Whoa.  Whoa.

24         Rule of completeness is not what you are talking

25   about.

1          **MS. SHROFF:**  I am giving you con...

2          **THE COURT:**  What I am talking about is, did you

3     provide the government with the words that are on this

4     screen now, to see if the government disagreed that these

5     words were said in the video?

6          **MR. SILVERMAN:**  Most of them but not all of them.

7     But the government stated last night that we didn't need the

8     curative video, because it was already in this video.

9          **THE COURT:**  Different point.  I am trying to get

10    to a very simple question and have it answered.

11         **MR. SILVERMAN:**  The government declined to

12    stipulate that the transcript we were discussing would be

13    admissible, if we were to come to an agreement about what it

14    said; therefore, we broke off discussions about the

15    transcript.

16         **MS. SHROFF:**  Your Honor, would the Court like to

17    recess?

18         **THE COURT:**  No.

19         **MS. SHROFF:**  I was just offering for you to listen

20    to the video.

21         **THE COURT:**  No, I don't.

22         **MS. SHROFF:**  We don't want to make a mistake.  We

23    are not trying to pull the wool over somebody; that is not

24    what this is about.  We had the conversation with them

25    precisely for this reason last night.

1          **THE COURT:**  I understand.  Let me ask this

2     question:  Even if the word "profiled" wasn't used, why

3     isn't it a fair inference for the defense to argue to the

4     jury that he was yelling about immigration enforcement?

5          **MR. DiLORENZO:**  So there's a couple of words that

6     are on the screen there --

7          **THE COURT:**  Not my question.  My question is:

8     Let's assume the government is right, he didn't use the word

9     "profile."  Table that for a second.  Why isn't it a fair

10    inference from the words that the government acknowledges he

11    used that the defense gets to argue that he was yelling

12    about immigration enforcement?

13         **MR. DiLORENZO:**  It's a bit of a stretch.  Also, I

14    don't have the defense words on the screen.  I thought I saw

15    the word "raid," also which is not there.  The inference is

16    a bit of a stretch.

17         **MS. SHROFF:**  Your Honor, it is precisely the

18    inference that is proper.  You know what?  He says it on the

19    other statement that the government has fought tooth and

20    nail to keep out of evidence.

21         **THE COURT:**  I understand.

22         **MS. SHROFF:**  We are really not drawing an improper

23    inference.  It's only fair game.

24         **THE COURT:**  On this point, I agree.  It seems to

25    me these statements make it far game for the closing for you

1    to say that he was yelling about immigration enforcement.

2    Okay?  So I am going to allow you to make those arguments.

3                Now -- hold on -- what I just want to make sure is

4    that the jury gets words that are an accurate reflection of

5    what is actually said on the video.  Okay?  The word "raid"

6    is not used on this screen, by the way.

7                Other than the word "profiling," what if anything

8    does the government think is not reflected in the video?

9                **MR. PARRON:**  Your Honor, it's just that statement,

10   "these people are racially profiling," so the record is

11   clear.

12               **MS. SHROFF:**  Your Honor, it is right there on the

13   video.  When the video is played, you will hear the words.

14   And not only that, even if you don't hear the words, it is

15   an absolutely logical and fair inference.  And the

16   government knows that to be true.

17               **THE COURT:**  I already agreed with you.

18               **MS. SHROFF:**  I apologize.  I am just trying to

19   make sure it is accurate.

20               **MS. SHROFF:**  I'm really happy to have a very

21   interrupted summation, which no lawyer wants.  Right?  If

22   you want to get it -- if you think I made a mistake, I am

23   happy to own it.

24               **THE COURT:**  No, it seems to me we have a proffer

25   from multiple lawyers, on the defense side, that this is

1    what they heard.  The government has an opportunity to tell

2    me that it absolutely doesn't say that.  They are not saying

3    it.  They are just saying they are not sure.

4            Given the process, I am going to permit this

5    because, A, again, whether it says profiling or not, it

6    seems to me the inference is fair.  And the jury

7    should -- and you will tell them.  I am actually going to

8    tell them that they are going to see some words, but really

9    the best evidence is the video here.  But let's just move on

10   okay?

11           Thank you.

12       (Bench conference concluded.)

13           **THE COURT:**  Thank you.  You may resume.

14           **MS. SHROFF:**  So as a total aside, no lawyer wants

15   to give a summation so interrupted.  So for that, I do

16   apologize.  I'm not even really sure where I left off so I

17   am going to start a little before or after.  I have to say,

18   no matter how long I have done this this is a new one for

19   me.

20           With that, let me just get back to the point I was

21   at.  Okay?  I think where I ended was -- I will go back a

22   little bit.  I had talked a little bit about how the

23   sandwich did not impede Officer Lairmore's duties that

24   night.  I talked to you a little bit -- it really is -- I am

25   talking at you.  I apologize.  That is how the federal rules

1     set it up.  But you can see that it is 30 seconds long.  You

2     can look at that on Detective Henry's body camera, that was

3     introduced into evidence.  You have that.

4          There is no indication that Agent Lairmore failed

5     in remaining highly visible that night.  Not only was he

6     visible, there were 20 officers that were equally visible.

7          I think where I left off was Mr. Dunn's statement,

8     in that police precinct, that the government focused on in

9     their main summation.  And it was not at all what the

10    government invites you to believe, that it is some sort of

11    confession.  It is not.  It is about Mr. Dunn's strongly

12    held feelings in opposition to immigration enforcement and

13    his worries.  Right or wrong, those were his worries on

14    August 10th, that large groups of federal immigration

15    officers, who were gathered at 14th and U, were there to

16    conduct a raid at the Bunker nightclub.  Mr. Dunn says that

17    on August 10th.

18         I'm really hoping it works, because I am going to

19    try to play that for you now.

20         (Video played.)

21         The government introduced testimony from

22    Agent Lairmore and Detective Henry, and they both told you

23    that neither they nor anyone else were intending to enforce

24    immigration laws that night.  And while Mr. Dunn certainly

25    wanted to stop any immigration raid, that's not

1    interference.  It's not interference because the law tells

2    you that you cannot interfere with something that was never

3    going to happen.  That's a problem for that table.  That's a

4    problem for the government.  That's what gives you

5    reasonable doubt.

6         And please do not forget, as you deliberate about

7    this and, you know, we said it was a short trial, and we've

8    kept you here for an inordinately long time.  Please, only

9    forcible conduct is a violation of federal law.

10        Judge Nichols told you the government must prove

11   that beyond a reasonable doubt.  It is not a civil case

12   where money is at play.  It is not the same standard as

13   grand jury has, where it is not reasonable doubt.  This is

14   not the same standard as civil court, family court or any

15   other court.  This is proof beyond a reasonable doubt.  And

16   it is the highest standard that the Court and our country

17   asks you to consider before holding someone to a criminal

18   conviction.

19        Proof beyond a reasonable doubt.  And Judge

20   Nichols told you that the government must prove beyond a

21   reasonable doubt that Mr. Dunn acted forcibly.  Only

22   forcible conduct is criminal.

23        Judge Nichols has also instructed you, as to what

24   "forcibly" means.  He told you that it means a person can

25   act forcibly if he threatens or attempts to inflict bodily

1    harm upon another with the present ability to inflict that

2    harm.

3           Think about that.  Just based on that instruction

4    alone, you don't even need to parse out whether there is an

5    assault or interference or impeding.  Just that definition

6    of forcible alone leads you to only one verdict and the

7    verdict is of not guilty.

8           There was no present ability to inflict bodily

9    harm.  A foot-long from Subway could not and certainly did

10   not inflict any bodily harm.  A foot-long Subway sandwich

11   thrown at somebody wearing bodily armor, did not and could

12   not inflict bodily harm on him.

13          Your common sense will also tell you that.  I am

14   telling you this, that the law is very much like what is in

15   our gut.  It's logical.  It makes sense.  And your gut

16   should be telling you, and I am hoping it does tell you,

17   because that's what a normal gut would say, throwing a

18   sandwich is not a forcible offense.  No matter what he

19   called it, spiked it, thrown it, it's not a forcible

20   offense.  It's not forcible assault.  It is not a forcible

21   interference.  It is not impeding and it is not forcible

22   conduct at all.

23          I think I'm pretty much done with my summation

24   and, you know, as I said a little bit earlier, I've been

25   doing this for a while now.  I'm sure you can tell, and it

1    never fails, okay, no matter how many times I've done it, it

2    never, ever fails.  They get a rebuttal.  And every time I

3    go back and sit down, I know I've left out something I

4    should have said.  Something.  That juror didn't look like

5    she was understanding what I said.  There is always

6    something.  There is always something -- I'm sure this time

7    too there is something that you've missed.  I don't know

8    what it is.  I also don't know what the government's

9    rebuttal is.  It's not like they share that with me.

10        I don't know what they are going to say, but I do

11   know one thing and that is all of you, all 14 of you, have

12   been an attentive jury.  You've listened to us.  And you are

13   a smart jury.  And there's nothing they can say that is

14   going to fill the gap that gives you reasonable doubt.

15        I'm telling you again, at the risk of being

16   repetitive, there is no injury.  There is no harm.  And you

17   don't have to take my word for it.  You know who tells you

18   that?  Their witness, Agent Lairmore.

19        Vote not guilty.  Acquit Mr. Dunn.  There was no

20   forceable conduct.

21        Thank you.

22        **THE COURT:**  Thank you, Counsel.

23        Rebuttal.

24        **MR. DiLORENZO:**  Good afternoon.

25        So you heard the defendant's take on the law.  The

1    Court's instruction controls.  You have that.  What I'd like

2    to do is just go over a couple of the elements.  I touched

3    on them in closing, the defense took their -- you heard the

4    defense argument, but let's start with "forcibly".

5            With forcibly, that the Court provided you, the

6    defendant acted forcibly if he used force, attempted to use

7    force or threatened to use force against law enforcement

8    officers.  The term forcibly means by use of force.

9    Physical force is sufficient, but actual physical conduct is

10   not required.

11           You heard the defense arguing, Where is the

12   physical harm?  There is no physical harm.  The government's

13   not saying there was physical harm.  Physical harm is not

14   required to establish the element of force.  It's just some

15   level of force.  And we have that clearly here.  Certainly

16   there are cases where there is much more force.

17           **MR. SILVERMAN:**  Objection, Your Honor.  This

18   misstates the law.  Attempt to inflict bodily harm.

19           **MR. DiLORENZO:**  I'm --

20           **THE COURT:**  It is a --

21           **MR. DiLORENZO:**  I was going to address that next.

22           **THE COURT:**  I mean, this is not a complete quote,

23   from what I instructed the jury.

24           **MR. DiLORENZO:**  The last part says, a person can

25   act forcibly by threatening or attempting actually to

1    inflict bodily harm --

2           **THE COURT:**  No, it has ten more words.  You

3    usually try to, you know, tell the jury all of the words.

4           **MR. DiLORENZO:**  Sorry.

5           So, ladies and gentlemen of the jury --

6           **MS. SHROFF:**  Your Honor --

7           **THE COURT:**  Hold on a second.  You are going to

8    have my instructions.  I already told you what "forcibly"

9    means.  You'll see on Page 27 of my instructions, that this

10   last sentence says as follows:  "A person can act by

11   threatening or attempting to inflict bodily harm with the

12   present ability to inflict bodily harm," that's what it says

13   and what you will see.

14          **MR. DiLORENZO:**  The keyword is "can".  It's not

15   required.  That is an example of how there can be force.

16   How "forcibly" could be established.  So it's not required.

17   Physical force is sufficient but actual physical contact is

18   not required.  And that's what we have here.  We have force

19   here.

20          Let me talk about the definition of assault.  The

21   Court has instructed, on the same page, "assault means any

22   intentional, attempt or threat to inflict injury upon

23   someone else, when coupled with an apparent present ability

24   to do so, that places another in reasonable apprehension of

25   immediate bodily harm."

1          So there the defense was arguing that physical

2     harm was required.  It's not required.  It's reasonable

3     apprehension.  We are not just talking about a sandwich.

4     This isn't just a sandwich.  This is essentially a

5     seven-minute tirade.

6               **MS. SHROFF:**  Objection.

7               **THE COURT:**  Overruled.

8               **MR. DiLORENZO:**  Would one be in reasonable

9     apprehension, threatening one of their colleagues,

10    attempting to instigate, to get people to, kind of, join --

11              **MR. SILVERMAN:**  Objection, Your Honor.

12              **MS. SHROFF:**  Objection.

13              **MR. SILVERMAN:**  Can we get on the phone, please?

14              **THE COURT:**  Sure.  I guess we will interrupt both

15    sides a lot.

16         (Bench conference.)

17              **MR. SILVERMAN:**  Your Honor, we proposed several

18    instructions on the First Amendment, including things that

19    would carve out threats or incitement.  The government

20    opposed and is now attempting to use attempted speech

21    without instruction as actus reus of that crime.  It

22    violates the First Amendment and violates this Court's

23    ruling this morning.

24              **THE COURT:**  Response?

25              **MR. DiLORENZO:**  The government is not saying

1   speech is a violation of law.  The government is saying the

2   speech is evidence of his intent, and it's showing that he

3   is trying to put -- I mean, that he is trying to create this

4   apprehension.

5            **MR. SILVERMAN:**  Your Honor, we would ask for a

6   curative instruction.  Sandwich throwing and should be

7   reasonable apprehension in order to convict.

8            **THE COURT:**  In context.  Right?

9            **MR. SILVERMAN:**  Speech can be considered in

10  context.

11           **THE COURT:**  Right.  So, I mean, it seems to me

12  that a sandwich throw, with nothing said for five minutes,

13  is different than a sandwich throw after someone is

14  screaming in someone's face.

15           I may give the curative instruction, but it would

16  include something like, "it can be relevant to context."  So

17  we will talk about the curative instruction at the end of

18  the closing.

19           And surely we are not going to be hypocritical

20  about jumping up and objecting during closings are we?

21  Let's keep going.

22           **MR. DiLORENZO:**  To make sure I don't lose my

23  place, I was explaining reasonable apprehension and what was

24  the defendant's conduct.  Right?

25           Physical harm is not required, and that's what the

1    argument was to you that you just heard.  No assault.  No

2    physical harm.  Physical harm, according to the Court's

3    instruction, is not necessary.  That element is reasonable

4    apprehension of physical harm.

5         In looking at the facts, do we have reasonable

6    apprehension to physical harm?  Someone yelling at you,

7    someone cussing at you, someone inches from your face

8    screaming "Get the F back".  Is that going to make one feel

9    apprehensive, when they are told to leave, they come back

10   more animated and more aggressive?  Clearly the key to that

11   definition is injury.  As the Court stated and has stated in

12   my closing, it's not the type of injury normally that we

13   think about and the defense, you know, focused on.  You

14   know, the fact that it occurred through -- that there was no

15   injury, and that there were -- you know, gag gifts

16   afterwards.

17        Let's look at what occurred that night.  Mr. Dunn

18   is in the officer's face.  He is bouncing up and down.  You

19   saw that.

20        **THE COURT:**  Counsel, this is rebuttal.  Let's move

21   it along.

22        **MR. DiLORENZO:**  He strikes the officer.  The

23   officer doesn't know that he is going to get, especially

24   after this 7-minute tirade, that he is getting hit in the

25   chest.  He sees an arm go back, as Detective Henry said, a

1    baseball pitch, even if it's a sandwich, it hits you in the

2    face, you are going to have some apprehension.

3         The law only requires that offensive touching.

4    Would a person with reasonable sensitivities believe that

5    that's offensive?  Absolutely.  Absolutely.

6         Let's just touch on a couple of other issues.

7    This case, as I said, it's not about dissent.  It's not

8    about opposition.  We can all have our views about anything

9    in politics, immigration.  The defendant, in their argument,

10   is asking for a free pass.  And there's no evidence of it.

11   In fact, the evidence is contrary --

12        **MS. SHROFF:**  Objection to "free pass".

13        **THE COURT:**  Overruled.

14        **MR. DiLORENZO:**  Defense counsel stood here and

15   said, he's got strong opinions, and referenced a club next

16   door.  You heard the officers.  The officer said the Custom

17   and Border Protection officer, Chief Lairmore, said I have

18   never been to this part of town.  There were questions about

19   clubs and bars he didn't know.

20        Even Detective Henry who is -- you know, patrols

21   that area, wasn't familiar with any specific bars.  They

22   were not there to carry out any sort of Immigration

23   operation.  And it really doesn't matter.  And the

24   defendant, right, he asks, What are you doing there?  They

25   told him.

1              In his mind, because he has these strong beliefs,

2     that's what they are arguing.  He can somehow get a pass

3     here.  I mean, the officers gave him every opportunity.

4     They let him cause a scene.  They let him make threatening

5     gestures.  They really gave him a pass.  It went too far.

6     It's about going too far.  It's about hitting another

7     individual.  You can't do that.  You can't do that to

8     anyone.  You can't do it to a police officer, a federal

9     police officer, and you can't do it while they are working;

10    that's why we are here; that's what this is about.

11             Just pull up the one slide.

12             Now, you heard the defense make a big deal

13    about -- it was Defense Exhibit 3, it was a photograph, and

14    it had all of these agents and police officers on the scene.

15    They are saying, there was no interference.  There was no

16    impeding.  The evidence shows otherwise.  The defendant's

17    statement was that he was trying to draw the police and the

18    agents from that scene and he did.

19             Can you see that?  You see this photograph.  So

20    what's happening here?  This is after the defendant's

21    arrest.  They are at 15th and U, a block away.

22             The defendant assaulted Agent Lairmore and then he

23    fled.  Then what happened is the officers then had to

24    respond.  When they respond, they are dealing with an

25    individual who was disorderly and assaulted a police

1    officer.  What they are not doing, they are not doing their

2    mission.  They are not doing their mission.  There is 10 of

3    them and then another 10 show up.

4         Then the defense argues, look at all of these

5    officers.  They are here doing high visibility.  They are

6    not.  Remember the facts.  Detective Henry was the one, the

7    local officer, she was with some federal officers, including

8    Agent Lairmore.  And then her partner, Officer Field, who

9    was also a local police officer, had her group of about 10

10   or so federal officers, including FBI officers, moving

11   around 14th and U and that area.  They are trying to keep

12   things safe.

13        When the defendant assaults Lairmore and there is

14   an arrest, Fields has to deal with it.  And she is with a

15   bunch of federal agents who don't know the area.  They can't

16   do their job.  They can't patrol because they don't know

17   their area.  They are now with her.  They are now unable to

18   perform their official duties.  They are unable to be in

19   that neighborhood and helping keep it safe.

20        You heard the defense say, when cross-examining

21   Detective Henry, This is a pretty safe neighborhood.  This

22   is a pretty safe neighborhood.  And her response was, No.  I

23   wouldn't say that.  That's why we were there.  To keep it

24   safe.  To keep it safe for the citizens that were there.

25        **MS. SHROFF:**  Objection, Your Honor.

1          **THE COURT:**  Overruled.

2          **MS. SHROFF:**  This is testimony about something --

3          **THE COURT:**  I've already overruled.

4          I do think, Counsel, this is getting way too long.

5          **MR. DiLORENZO:**  Almost done.

6          **THE COURT:**  This is rebuttal.

7          **MR. DiLORENZO:**  Yes.  Almost done.

8          Then the photograph shows that the 10 other

9    officers, who are with Fields, the 10 or so other officers,

10   they too, because Fields has to help Henry, because it's a

11   local arrest.  The federal officers, they are not there to

12   intimidate.  They are, basically, stuck on that corner

13   because their guide is there.  So, clearly it is impeding

14   that mission.

15         At the beginning of the trial, we went through the

16   voir dire process.  And as the Court explained, that process

17   is to get a fair jury.  The potential jurors, and you as

18   well, were asked to put aside any biases, any prejudices.

19   And you swore that you would base your verdict on the

20   evidence that is presented in this case, presented in court,

21   putting aside any feelings one may have, and assess the

22   evidence fairly.

23         If you do that, there's only one verdict; and that

24   is a verdict of guilty.  I would ask that you return a

25   guilty verdict.

1          Thank you.

2          **THE COURT:** Thank you, Counsel.

3          Members of the jury, I just have a few final

4    instructions.  One is a reminder of something I already

5    instructed you.  And you will find this around Page 27 of

6    the instructions or 28.  In any event, that Mr. Dunn's

7    speech cannot constitute assault, resistance, opposition,

8    impediment or interference.  You may consider Mr. Dunn's

9    speech to provide context on determining whether the

10   government's proven the third and fourth elements of the

11   offense.

12         Turning to the instructions you haven't heard

13   yet.  A verdict must represent the considered judgment of

14   each juror.  And in order to return a verdict, each juror

15   must agree on the verdict.  In other words, your verdict on

16   each count must be unanimous.

17         You will be provided with a verdict form for use

18   when you have concluded the deliberations.  The form is not

19   evidence in this case and nothing in it should be taken to

20   suggest or convey any opinion by me as to what the verdict

21   should be.  Nothing in the form replaces the instructions of

22   law I have given you.  And nothing in it replaces modifies

23   the instructions about the elements, which the government

24   must prove beyond a reasonable doubt.  The form is meant

25   only to assist you in recording your verdict.

1           I will be sending into the jury room with you the

2    exhibits that have been admitted into evidence.  You may

3    examine any and all of them when you consider your verdict.

4    Please keep in mind that exhibits that were only marked for

5    identification, but were not admitted into evidence, will

6    not be given to you to examine or consider in reaching your

7    verdict.

8           When you return to the jury room, you should first

9    select a foreperson to preside over your deliberations and

10   to be your spokesperson here in court.  There are no

11   specific rules regarding how you should select a foreperson;

12   that is up to you.  However, as you go about your task, be

13   mindful of your mission to reach a fair and just verdict

14   based on the evidence.

15          Consider selecting a foreperson who will be able

16   to facilitate your discussions, who can help you organize

17   the evidence, who will encourage civility and mutual respect

18   among all of you, who will invite each juror to speak up

19   regarding his or her views about the evidence, and who will

20   promote a full and fair consideration of that evidence.

21          I would like to remind you that in some cases,

22   although not necessarily this one, there may be reports in

23   the newspaper or on the radio, internet, social media or

24   television concerning this case.  If there should be such

25   media coverage in this case, you may be tempted to read,

1    listen to or watch it.  You must not read, listen to or

2    watch such reports, because you must decide this case solely

3    on the evidence presented in this courtroom.

4         If any publicity about this trial inadvertently

5    comes to your attention, do not discuss it with any other

6    jurors or anyone else.  Just let me or my clerk know, as

7    soon after it happens as you can, and then I will briefly

8    discuss it with you.

9         As you retire to the jury room to deliberate, I

10   also wish to remind you of an instruction I gave you at the

11   beginning of the trial.  During deliberations, you must not

12   communicate with anyone not on the jury about this case.

13   This includes electronic communications, such as email or

14   text or any blogging about the case.  In addition, you may

15   not conduct any independent investigation during

16   deliberations.  This means you may not conduct any research

17   in person or electronically, via the Internet, or in another

18   way.

19        If it becomes necessary during your deliberations

20   to communicate with me, you may send a note, by the Clerk or

21   Marshal, signed by your foreperson or by one or more members

22   of the jury.  No member of the jury should try to

23   communicate with me, except by such a signed note.  And I

24   will never communicate with any member of the jury on any

25   matter concerning the merits of this case, except in writing

1  or orally here in open court.

2      Bear in mind also that you are never, under any

3  circumstances, to reveal to any person, not the Clerk, the

4  Marshal or me, how jurors are voting until after you have

5  reached a unanimous verdict.  This means you should never

6  tell me, in writing or in open court, how the jury is

7  divided on any matter.  For example, 6-6 or 7-5 or 11-1 or

8  any other fashion, whether the vote is for conviction or

9  acquittal or anything else in the case.

10      The attitude and conduct of jurors at the

11  beginning of deliberations are matters of considerable

12  importance.  It may not be useful for a juror, upon entering

13  the jury room, to voice a strong expression of an opinion on

14  the case or to announce a determination to stand for a

15  certain verdict.

16      When one does at the outset, a sense of pride may

17  cause that juror to hesitate to back away from an announced

18  position after a discussion of the case.  Furthermore, many

19  juries find it useful to avoid an initial vote upon retiring

20  to the jury room.  Calmly reviewing and discussing the case

21  at the beginning of deliberations is often a more useful way

22  to proceed.  Remember, you are not partisans or advocates in

23  this matter, but judges of the facts.

24      The last thing I must do before you begin your

25  deliberations is to excuse the alternate jurors.  Before

1    jury selection began, we selected two seats to be the

2    alternate seats.  Since the rest of you have remained

3    healthy and attentive, I can now excuse those jurors in

4    seats 13 and 14.

5            Before you two leave, I'm going to ask you to tear

6    out a page from your notebook and to write down your name

7    and daytime phone number and hand it to the clerk.  I do

8    this because it is possible, but unlikely, that we may need

9    to summon you back, if something happens to one of the other

10   jurors.  Since that possibility exists, I am going to

11   instruct you to not discuss the case with anyone until we

12   call you.

13           My earlier instruction on use of the Internet

14   still applies.  Do not research this case or communicate

15   about it on the Internet.  In all likelihood, we will be

16   calling you to tell you there has been a verdict and you are

17   now free to discuss the case.  There is, however, the small

18   chance that we will need to bring you back onto the jury.

19           Thank you very much for your service, and please

20   report back to the jury office to turn in your badge on your

21   way out.  With that, I would like to thank you all very much

22   for your time, to date, your attentiveness and promptness.

23   It is much appreciated.

24           With that, Ms. Moore will bring you-all back to

25   the jury room.

1          Thank you, all.

2          (Jury exits the courtroom.)

3          **THE COURT:**  Here's my practice when the jury is

4     deliberating.  I haven't told them this today, because I

5     want them to try to be productive.  But I typically have the

6     jury deliberate until 5 p.m. and at 5 p.m. I will release

7     them.

8               In the interim, people don't have to sit in the

9     courtroom.  Just, please, very much be reachable by

10    Ms. Moore.  If she has your contact information, great.  If

11    at least one person from each side is in the courtroom, that

12    also suffices, as well, because you can gather everyone.

13              At 5:00, if there hasn't been a verdict today, I

14    will release the jury, very likely, with instructions that I

15    expect them back here deliberating tomorrow morning at

16    9 a.m, but we will see where we are.

17              Is there anything either party would like to raise

18    with me before I step off the bench while we wait for the

19    jury's deliberations to conclude?

20              From the government?

21         **MR. PARRON:**  I just have a quick question about

22    those procedures.  Do you want the parties here at 9 and 5?

23         **THE COURT:**  At 5, yes; for today I'll bring the

24    jury back in, because I haven't told them any of the timing

25    things.  I will excuse them at 5, and I will tell them at 5

1    they need to return at 9.

2        I'm not going to have them come back in here at 9.

3    I will have them just come into the jury room.  And I will

4    make clear that they need to start working no later than 9.

5    No one needs to be present in the courtroom for that, so

6    long as everybody is reachable, in case at 9:01 there is a

7    verdict.  Okay?

8        **MR. PARRON:**  Yes, Your Honor.  Thank you.

9        **THE COURT:**  Anything from the defense side?

10        **MS. SHROFF:**  No.

11        **THE COURT:**  Okay.  We will see everyone at some

12    point.

13        Everyone, I apologize.  I meant to ask one thing.

14    Obviously, I will be providing the jury with copies of my

15    instructions, which we've worked through.  I will also be

16    providing the jury with the verdict form, and we had

17    circulated a draft of that verdict form to everyone.

18        Does either party have any objections to the draft

19    verdict form?  And I'll read it right now in case everyone

20    doesn't have it top of mind.  I would remove the word

21    "draft" and it would say, "Count 1.  With respect to Count

22    1, the charge of forcibly assaulting, resisting, opposing,

23    impeding, intimidating or interfering with an officer or

24    employee of the United States, who engaged in or account of

25    the performance of official duties, colon, not guilty'

1    guilty."

2            Does the government have an objection to that

3    verdict form?

4            **MR. DiLORENZO:**  No.

5            **THE COURT:**  Does the defense?

6            **MS. SHROFF:**  No.

7            **THE COURT:**  Obviously we will remove the word

8    "draft" and that will be the verdict form that will be

9    provided to the jury.

10           Thank you.

11       (Recess from 2:55 p.m. to 5:03 p.m.)

12           **THE COURT:**  Thank you, Ms. Moore.

13           Members of the jury, my understanding is you are

14   still deliberating.  My normal practice is to have the jury

15   deliberate until 5:00, which it is now and, therefore, to

16   release you for the evening.

17           Just two small notes.  The first is that all of

18   the instructions I have given you now, many times, about not

19   speaking with anyone outside of the jury, about not

20   researching the case, not reading about the case and all of

21   those things still apply.

22           The second is that my expectation is that each of

23   you will be here by 9 a.m. tomorrow deliberating in the jury

24   room.  I am not going to open court at 9 a.m. with you here,

25   just to say, You are here.  Go deliberate.  Okay?  I trust

1    you to be here and ready to work and the like.

2            In any event, for whatever reason you are still

3    deliberating as of 5:00 tomorrow, I will very likely release

4    you again at 5:00 tomorrow.  But we may not see each other

5    unless and until there is some reason to do so.  So I expect

6    you to be here at 9 a.m.

7            I wish you each a good evening and good luck

8    tomorrow morning.  Good luck, you-all.

9        (Jury exited the courtroom.)

10        **THE COURT:**  So consistent with what I said

11    earlier, nobody needs to be here at 9 a.m. either.  I

12    suspect Ms. Moore will open the courtroom.  But if anyone

13    wants to be here, I will leave that to her.  As before, so

14    long as each side is reachable by her, if we hear from the

15    jury for whatever reason, I don't need people to be sitting

16    in the courtroom, so long as you can get back pretty

17    quickly.  So we'll just be back together when we are back

18    together.

19            Are there any topics we should discuss tonight

20    before we call it a day, from the government?

21        **MR. DiLORENZO:**  Nothing from the government,

22    Your Honor.

23            **THE COURT:**  From the defense?

24        **MS. SHROFF:**  No.

25            **THE COURT:**  Okay.  See everyone, maybe, tomorrow.

1           (Proceedings concluded at 5:05 p.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                    **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8
          ___December 8, 2025___          ___/s/ Lorraine T. Herman___
9                 **DATE**                         **REPORTED BY**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK: [2]** 4/5 35/3

**MR. DiLORENZO: [41]** 16/25 35/6 36/7 40/9 40/17 48/21 52/11 53/23 54/18 57/13 59/6 59/8 59/11 64/18 64/20 66/21 67/1 67/17 67/21 67/25 68/2 68/25 69/6 69/8 71/5 71/13 77/24 78/19 78/21 78/24 79/4 79/14 80/8 80/25 81/22 82/22 83/14 86/5 86/7 94/4 95/21

**MR. PARRON: [8]** 10/1 10/8 10/21 10/24 51/15 72/9 92/21 93/8

**MR. SILVERMAN: [20]** 4/13 4/24 8/10 9/1 9/8 9/12 9/18 18/14 34/12 34/24 68/7 69/12 70/6 70/11 78/17 80/11 80/13 80/17 81/5 81/9

**MS. SHROFF: [68]** 4/10 13/12 13/14 13/17 14/2 14/7 15/4 15/11 15/15 15/20 16/8 17/3 17/10 17/23 18/12 18/24 40/5 40/8 48/19 51/12 51/16 51/18 53/9 53/13 53/16 53/22 54/12 54/14 54/25 55/2 55/8 55/14 55/19 55/25 56/3 56/5 57/17 57/22 58/4 58/6 58/9 58/20 59/13 64/23 66/23 66/25 67/7 68/11 69/16 70/1 70/16 70/19 70/22 71/17 71/22 72/12 72/18 72/20 73/14 79/6 80/6 80/12 83/12 85/25 86/2 93/10 94/6 95/24

**THE COURT: [125]**

**THE DEFENDANT: [4]** 14/13 14/16 14/21 14/24

**$**

**$50 [1]** 63/17

**-**

**-- you [1]** 82/15

**/**

**/s [1]** 97/8

**1**

**1 p.m [2]** 34/2 34/2
**10 [5]** 85/2 85/3 85/9 86/8 86/9
**10004 [1]** 2/4
**10036 [1]** 2/7
**10th [9]** 35/21 36/4 59/22 63/19 64/15 64/23 66/14 74/14 74/17
**11 [1]** 43/19
**11-1 [1]** 90/7
**111 [5]** 6/1 6/5 7/18 12/8 12/9
**1114 [1]** 2/7
**11:25 [1]** 1/9
**11:42 [1]** 16/18
**12:09 p.m [1]** 34/7
**12:10 p.m [1]** 35/2
**13 [1]** 91/4
**1330 [1]** 2/10
**14 [2]** 77/11 91/4
**14th [15]** 7/5 7/11 7/13 36/14 36/19 38/10 39/10 48/3 52/16 64/17 64/24 65/4 66/17 74/15 85/11
**15 [1]** 65/11
**15th [4]** 7/5 64/25 65/4 84/21
**1795 [1]** 2/11
**18 [1]** 42/9
**19 [1]** 7/11
**19th [1]** 2/4
**1:00 [1]** 35/1
**1:11 p.m [1]** 35/2
**1:25-252 [1]** 1/5

**2**

**20 [5]** 7/3 17/25 18/7 18/8 74/6
**20001 [1]** 2/17
**20036-1795 [1]** 2/11
**20053 [1]** 1/19
**2025 [4]** 1/7 35/21 36/4 97/8
**25 [4]** 7/3 17/25 18/7 18/8
**252 [1]** 1/5
**27 [3]** 7/4 79/9 87/5
**28 [1]** 87/6
**29 [13]** 4/8 4/15 9/4

**1/23** 1/24 13/25 14/4 15/9 15/12 15/20 16/3 16/6
**2:55 p.m [1]** 94/11

**3**

**30 [2]** 65/25 74/1
**32 [1]** 7/4
**333 [1]** 2/16

**5**

**5 p.m [2]** 92/6 92/6
**5:00 [4]** 92/13 94/15 95/3 95/4
**5:03 [1]** 94/11
**5:05 p.m [1]** 96/1

**6**

**6-6 [1]** 90/7
**601 [1]** 1/19

**7**

**7-5 [1]** 90/7
**7-minute [1]** 82/24

**8**

**80 [1]** 2/4

**9**

**9 a.m [5]** 92/16 94/23 94/24 95/6 95/11
**9:01 [1]** 93/6

**A**

**a.m [6]** 1/9 92/16 94/23 94/24 95/6 95/11
**ability [8]** 25/3 31/24 32/6 47/7 76/1 76/8 79/12 79/23
**able [7]** 16/1 18/21 41/1 41/2 41/25 62/7 88/15
**abnormal [1]** 8/19
**about [90]** 4/21 4/25 5/9 7/20 8/8 9/13 11/5 16/16 19/19 24/8 24/13 25/9 26/22 27/8 35/8 35/9 35/9 35/10 39/21 44/1 44/10 44/15 46/3 47/1 47/14 49/6 54/5 56/9 56/18 56/20 58/24 59/2 59/5 59/5 59/13 59/14 62/10 62/21 63/7 63/13 63/14 64/8 65/14 66/14 67/2 67/3 67/6 67/13 67/15 67/16 68/4

70/2 70/13 70/14 70/24 71/4 71/12 72/1 73/22 74/11 75/6 76/3 79/20 80/3 81/17 81/20 82/13 83/7 83/8 83/8 83/18 84/6 84/6 84/10 84/13 85/9 86/2 87/23 88/12 88/19 89/4 89/12 89/14 91/15 92/21 94/18 94/19 94/20
**about -- it [1]** 84/13
**about -- we [1]** 4/25
**above [1]** 97/5
**above-entitled [1]** 97/5
**absolute [1]** 28/24
**absolutely [6]** 34/15 67/1 72/15 73/2 83/5 83/5
**accept [2]** 19/25 62/21
**acceptable [1]** 24/17
**accepting [1]** 28/5
**according [2]** 56/6 82/2
**account [7]** 31/2 31/15 33/4 44/13 45/13 46/2 93/24
**accuracy [1]** 27/13
**accurate [7]** 27/6 28/6 67/23 68/20 68/21 72/4 72/19
**accurately [1]** 26/21
**accusing [1]** 22/6
**acknowledges [1]** 71/10
**Acquit [1]** 77/19
**acquittal [5]** 4/14 5/14 8/23 13/21 90/9
**across [7]** 37/25 38/1 38/2 38/3 38/4 38/9 48/13
**act [14]** 6/12 6/13 6/17 8/18 8/18 23/17 31/12 31/22 45/11 45/12 46/15 75/25 78/25 79/10
**acted [8]** 12/25 30/22 31/14 31/17 32/3 46/17 75/21 78/6
**acting [3]** 33/1 37/21 44/19
**action [9]** 1/5 10/24 10/25 11/4 11/7 32/11 32/13 36/17 36/18

# A

actions [1] 43/24
acts [9] 8/16 12/10
30/11 30/15 31/24
44/12 46/3 47/1 60/8
actual [9] 6/24 24/1
31/20 46/20 58/2 58/8
64/24 78/9 79/17
actually [13] 30/9
37/18 43/5 43/7 46/14
53/18 53/23 58/12
63/18 65/22 72/5 73/7
78/25
actus [1] 80/21
add [1] 69/9
addition [2] 52/7 89/14
additional [3] 7/7
33/20 53/7
address [2] 5/16 78/21
admissible [2] 26/2
70/13
admit [1] 52/8
admitted [5] 20/7
21/19 21/20 88/2 88/5
advice [3] 14/17 14/19
15/2
advocates [1] 90/22
affect [2] 25/3 25/6
affects [1] 27/1
after [28] 12/1 13/20
15/17 15/20 15/23 16/4
17/9 17/22 19/10 23/11
23/16 24/13 26/6 33/20
33/23 40/19 44/8 49/22
53/20 63/22 65/12
73/17 81/13 82/24
84/20 89/7 90/4 90/18
afternoon [2] 35/6
77/24
afterwards [1] 82/16
again [20] 12/8 17/12
26/24 33/7 39/15 40/18
42/11 42/20 49/18
50/14 53/21 61/25 62/8
62/23 63/5 66/3 66/8
73/5 77/15 95/4
against [10] 11/4 11/8
25/24 26/14 28/10 29/1
31/18 32/13 46/18 78/7
age [2] 20/21 30/4
agent [57] 7/1 11/2
11/3 11/8 11/9 11/16
31/12 31/14 36/7 36/11
36/22 36/24 37/1 39/19
41/5 41/15 46/8 47/1
41/12 41/20 41/25
42/10 42/12 42/13 43/1
43/1 43/6 43/16 43/17
44/12 45/5 45/15 45/17
45/23 46/23 46/24
48/17 49/1 49/5 50/16
56/7 57/6 59/15 59/16
59/17 59/20 60/13
62/21 62/22 63/3 64/12
64/25 74/4 74/22 77/18
84/22 85/8
Agent Lairmore [38]
7/1 11/2 11/3 11/8 11/9
11/16 31/12 31/14 36/7
36/11 36/22 36/24
39/19 41/7 41/20 42/12
43/1 43/1 43/16 45/5
45/15 45/17 49/1 56/7
57/6 59/15 59/16 59/17
59/20 60/13 62/21
62/22 64/12 64/25 74/4
74/22 77/18 85/8
Agent Lairmore's [1]
63/3
Agent Trejo [5] 41/5
41/6 41/12 41/25 48/17
agent's [1] 42/19
agents [14] 6/25 29/11
29/23 29/24 38/5 38/5
41/3 41/18 42/2 42/11
52/14 84/14 84/18
85/15
agents -- and [1]
42/11
aggressive [2] 42/9
82/10
aggressively [2] 37/10
42/10
ago [3] 18/17 26/24
69/12
agree [12] 7/17 9/17
36/8 54/25 55/3 58/1
58/3 58/5 58/6 58/7
71/24 87/15
agreed [2] 12/16 72/17
agreement [2] 69/19
70/13
ahead [1] 13/15
aid [1] 21/13
aided [1] 2/19
all [70] 4/17 4/20 7/4
7/14 7/18 8/9 9/14 9/19
9/20 10/3 10/17 16/21
18/10 19/3 20/1 20/10
20/18 22/19 23/12
23/21 24/24 25/15
26/15 29/12 29/22 30/2
30/3 30/12 30/19 31/24
33/19 34/6 34/18 35/1
36/15 39/3 42/11 46/6
46/11 56/15 56/15
56/18 59/15 60/1 62/22
63/3 65/3 67/3 67/18
68/3 68/9 68/20 70/6
74/9 76/22 77/11 77/11
79/3 83/8 84/14 85/4
88/3 88/18 91/15 91/21
91/24 92/1 94/17 94/20
95/8
alleged [3] 5/6 8/18
12/17
allegedly [1] 7/16
alleges [2] 5/14 8/14
alleges -- excuse [1]
8/14
alleging [1] 43/2
allow [7] 25/6 55/21
60/4 67/5 67/11 67/12
72/2
allowed [2] 7/14 55/11
almost [4] 50/6 65/18
86/5 86/7
alone [5] 20/7 20/8
26/17 76/4 76/6
along [2] 61/13 82/21
already [7] 16/5 53/12
70/8 72/17 79/8 86/3
87/4
also [23] 20/13 26/20
27/22 45/23 46/1 46/1
47/21 53/6 54/18 55/10
56/8 61/3 62/4 71/13
71/15 75/23 76/13 77/8
85/9 89/10 90/2 92/12
93/15
also -- the [1] 46/1
alternate [2] 90/25
91/2
although [1] 88/22
altogether [1] 18/4
always [2] 77/5 77/6
am [39] 8/23 10/19
12/22 15/4 16/1 16/3
16/3 16/5 18/15 19/4
22/7 37/5 43/21 45/19
52/5 53/6 53/13 55/19
55/21 56/18 60/10
61/18 61/18 61/19 70/1
70/2 70/9 72/2 72/18
20/18 22/19 23/12 73/7 73/17
73/24 74/18 76/13
76/16 91/10 94/24
amend [1] 9/5
Amendment [6] 35/10
38/9 60/24 61/2 80/18
80/22
AMERICA [1] 1/5
Americas [1] 2/7
among [2] 16/16 88/18
anger [1] 63/25
animal [1] 64/2
animated [1] 82/10
announce [1] 90/14
announced [1] 90/17
another [13] 24/18
31/23 32/6 35/16 35/16
37/21 38/4 47/7 76/1
79/24 84/6 85/3 89/17
answer [4] 9/13 26/7
26/8 59/1
answered [2] 26/6
70/10
anticipated [2] 16/8
18/21
any [77] 4/16 5/9 5/12
10/9 12/16 12/18 18/15
19/16 20/2 20/8 20/20
20/23 21/3 21/5 21/24
22/9 22/10 22/11 22/19
24/19 26/18 27/2 27/6
27/9 27/15 27/18 27/20
27/22 27/23 27/25 28/9
28/18 28/20 28/22
29/21 30/1 30/11 32/4
32/8 33/15 40/14 47/5
47/9 50/11 56/18 62/9
65/20 67/6 67/14 69/2
74/25 75/14 76/10
79/21 83/21 83/22
86/18 86/18 86/21 87/6
87/20 88/3 89/4 89/5
89/14 89/15 89/16
89/24 89/24 90/2 90/3
90/7 90/8 92/24 93/18
95/2 95/19
anyone [8] 52/1 74/23
84/8 89/6 89/12 91/11
94/19 95/12
anything [11] 20/25
27/1 27/11 58/24 60/23
63/3 72/7 83/8 90/9
92/17 93/9
anywhere [1] 56/16
apologize [8] 9/13

# A

**apologize... [7]** 36/2 36/5 54/14 72/18 73/16 73/25 93/13
**apparent [3]** 32/6 47/7 79/23
**APPEARANCES [2]** 1/16 2/1
**appears [1]** 40/22
**applied [1]** 28/20
**applies [3]** 19/25 45/6 91/14
**apply [2]** 51/7 94/21
**appreciate [1]** 7/19
**appreciated [1]** 91/23
**apprehension [11]** 32/7 47/8 79/24 80/3 80/9 81/4 81/7 81/23 82/4 82/6 83/2
**apprehensive [1]** 82/9
**appropriate [3]** 12/3 34/20 54/9
**appropriately [1]** 7/19
**are [165]**
**are -- I [1]** 18/5
**area [6]** 36/14 65/8 83/21 85/11 85/15 85/17
**aren't [1]** 68/14
**argue [5]** 10/3 10/5 16/16 71/3 71/11
**argued [1]** 34/21
**argues [2]** 6/3 85/4
**arguing [6]** 4/20 6/18 65/22 78/11 80/1 84/2
**argument [13]** 3/3 3/4 3/4 4/25 12/6 12/12 25/22 40/14 52/21 64/9 78/4 82/1 83/9
**arguments [6]** 6/4 19/11 22/1 33/21 34/19 72/2
**arm [1]** 82/25
**armor [3]** 56/11 56/11 76/11
**around [10]** 37/11 39/24 39/25 42/1 42/2 57/2 65/4 65/8 85/11 87/5
**arranged [1]** 7/12
**arrest [9]** 6/14 37/21 49/17 65/7 65/12 65/13 84/21 85/14 86/11
**arrested [3]** 38/13

**arresting [1]** 7/15
**arrive [1]** 20/17
**art [1]** 22/8
**as [121]**
**aside [4]** 56/14 73/14 86/18 86/21
**ask [24]** 13/23 16/13 17/13 41/11 41/23 51/5 51/25 53/9 56/19 56/19 59/2 60/4 63/5 63/19 66/8 66/9 66/11 67/21 68/25 71/1 81/5 86/24 91/5 93/13
**asked [11]** 7/6 9/12 9/13 25/1 25/5 25/22 27/17 51/5 63/1 69/19 86/18
**asking [3]** 53/13 62/21 83/10
**asks [3]** 45/18 75/17 83/24
**asleep [1]** 24/15
**assault [30]** 5/8 8/1 8/2 8/4 32/4 32/20 44/6 45/4 45/12 45/25 46/12 46/14 47/4 47/4 47/5 47/16 47/19 57/1 60/14 61/20 61/21 61/21 61/23 62/1 76/5 76/20 79/20 79/21 82/1 87/7
**assaulted [8]** 31/10 33/9 44/4 45/1 46/7 56/25 84/22 84/25
**assaulting [6]** 5/16 12/10 13/4 30/24 31/25 93/22
**assaults [1]** 85/13
**asserts [1]** 24/1
**assess [1]** 86/21
**assist [2]** 22/2 87/25
**assistant [1]** 41/6
**assume [4]** 24/6 24/11 29/3 71/8
**assuming [1]** 16/2
**attempt [8]** 6/2 6/2 32/4 47/5 61/22 61/25 78/18 79/22
**attempted [7]** 10/7 31/18 46/17 52/13 52/25 78/6 80/20
**attempting [5]** 31/23 78/25 79/11 80/10 80/20
**attempts [3]** 6/2 42/21

**attention [4]** 41/3 41/20 52/15 89/5
**attentive [2]** 77/12 91/3
**attentiveness [1]** 91/22
**attitude [1]** 90/10
**attorneys [3]** 21/5 25/10 60/2
**attracted [1]** 65/8
**August [10]** 35/21 36/4 59/22 63/19 64/15 64/23 66/14 66/19 74/14 74/17
**authority [1]** 44/16
**Avenue [3]** 2/7 2/10 2/16
**avoid [1]** 90/19
**avoidance [1]** 4/19
**aware [2]** 20/12 20/15
**away [9]** 43/5 49/23 50/7 50/25 63/16 63/17 63/18 84/21 90/17

# B

**back [37]** 4/5 7/9 8/15 13/10 15/8 15/25 18/20 34/2 34/3 34/8 38/6 39/7 41/14 41/17 41/20 42/1 48/18 50/3 68/9 69/14 73/20 73/21 77/3 82/8 82/9 82/25 90/17 91/9 91/18 91/20 91/24 92/15 92/24 93/2 95/16 95/17 95/17
**badge [2]** 56/24 91/20
**bait [2]** 41/19 42/1
**ballistic [1]** 56/11
**Bankruptcy [1]** 2/16
**bar [1]** 39/25
**bars [2]** 83/19 83/21
**base [2]** 40/15 86/19
**baseball [2]** 42/25 83/1
**based [12]** 11/5 11/19 12/22 23/9 23/10 23/19 23/20 33/17 51/18 52/11 76/3 88/14
**basically [1]** 86/12
**be [102]**
**Bear [1]** 90/2
**beautiful [4]** 37/6 44/24 45/5 65/16
**became [1]** 38/23

**because [50]** 5/17 6/13 7/22 8/4 8/10 10/16 11/8 11/13 14/5 17/18 17/17 25/5 28/22 29/4 30/8 37/20 38/5 39/8 42/4 42/18 43/8 45/6 46/2 52/4 53/14 54/1 54/3 55/21 59/15 59/20 63/1 63/6 64/13 65/17 67/8 70/8 73/5 74/18 75/1 76/17 84/1 85/16 86/10 86/10 86/13 89/2 91/8 92/4 92/12 92/24
**becomes [2]** 6/13 89/19
**bed [1]** 63/25
**bedtime [1]** 63/21
**been [27]** 4/20 5/11 6/5 10/15 12/7 15/17 15/22 16/4 18/21 18/22 19/22 21/22 25/7 28/7 38/12 38/25 43/18 46/11 57/15 58/24 61/11 76/24 77/12 83/18 88/2 91/16 92/13
**before [24]** 1/13 5/21 16/15 16/19 16/21 17/4 17/8 18/10 25/10 33/21 34/10 44/5 53/17 57/4 57/21 69/12 73/17 75/17 90/24 90/25 91/5 92/18 95/13 95/20
**began [5]** 36/23 36/25 37/1 37/25 91/1
**begin [1]** 90/24
**beginning [7]** 21/12 26/23 49/3 86/15 89/11 90/11 90/21
**begins [1]** 50/22
**behalf [1]** 14/23
**behaved [1]** 11/6
**behavior [1]** 27/4
**being [5]** 7/7 33/9 44/25 67/19 77/15
**beings [1]** 20/10
**beliefs [4]** 35/13 35/14 35/17 84/1
**believability [1]** 20/9
**believable [1]** 25/18
**believe [20]** 5/1 5/10 5/12 6/18 6/20 7/4 12/18 21/2 25/17 26/2 26/17 28/9 34/20 57/14 57/20 58/14 66/7 69/3

**B**

**believe... [2]** 74/10 83/4
**believed [4]** 25/23 26/19 60/14 69/10
**believes [1]** 46/5
**bench [9]** 44/9 51/13 56/2 57/12 58/16 66/22 73/12 80/16 92/18
**benefit [1]** 29/21
**berated [1]** 39/21
**best [3]** 50/1 66/11 73/9
**between [4]** 27/15 27/20 27/23 29/23
**beyond [28]** 4/16 4/18 5/1 5/19 12/14 12/19 22/16 22/20 22/23 23/2 23/8 23/8 23/21 23/22 26/14 29/9 30/21 31/7 32/2 55/23 61/16 62/6 62/24 75/11 75/15 75/19 75/20 87/24
**bias [1]** 28/12
**biased [1]** 28/10
**biases [6]** 20/12 20/14 20/14 20/16 26/25 86/18
**big [1]** 84/12
**bit [8]** 39/11 50/6 71/13 71/16 73/22 73/22 73/24 76/24
**bit -- it [1]** 73/24
**block [4]** 43/5 49/16 50/22 84/21
**blogging [1]** 89/14
**bodily [19]** 31/23 31/24 32/7 47/8 61/24 62/2 62/9 62/19 64/4 75/25 76/8 76/10 76/11 76/12 78/18 79/1 79/11 79/12 79/25
**body [4]** 49/2 62/17 66/2 74/2
**boisterous [1]** 37/15
**bolted [2]** 49/23 49/23
**boots [1]** 62/14
**borage [2]** 50/19 50/23
**Border [7]** 31/8 35/22 43/18 45/18 45/23 57/7 83/17
**bored [1]** 19/8
**both [20]** 5/10 13/3 24/16 24/21 24/24 26/7

34/19 55/3 56/7 58/21 58/22 58/22 58/23 58/23 60/19 64/10 64/25 65/2 74/22 80/14
**bouncing [3]** 42/11 48/15 82/18
**box [3]** 56/24 57/2 63/12
**boy [2]** 63/23 63/23
**break [7]** 17/5 17/16 17/17 18/3 18/11 33/23 69/22
**breaking [1]** 37/18
**briefly [2]** 43/14 89/7
**bright [1]** 39/9
**bring [5]** 13/22 16/11 91/18 91/24 92/23
**Broad [1]** 2/4
**broke [2]** 65/1 70/14
**brought [2]** 5/22 56/17
**Brown [5]** 6/22 7/18 8/7 8/9 9/14
**bullet [2]** 56/12 62/15
**bullet-proof [1]** 62/15
**bunch [1]** 85/15
**Bunker [6]** 5/23 66/18 67/8 67/13 67/15 74/16
**burden [7]** 10/12 12/13 22/12 22/16 23/1 23/22 62/23

**C**

**call [4]** 6/10 54/24 91/12 95/20
**called [1]** 76/19
**calling [2]** 54/19 91/16
**calm [1]** 42/20
**Calmly [1]** 90/20
**cam [1]** 66/2
**came [7]** 36/22 37/9 38/3 45/16 58/22 68/9 69/14
**camera [1]** 74/2
**can [54]** 5/3 7/23 8/12 8/12 9/14 9/21 11/25 13/15 13/21 13/22 16/11 16/16 21/10 31/22 36/9 37/8 38/5 38/17 39/9 39/19 40/2 40/18 45/11 46/1 46/4 46/24 51/14 53/5 55/12 60/17 62/11 62/12 64/22 66/1 74/1 74/2 75/24 76/25 77/13 78/24 79/10 79/14

79/15 80/10 81/9 81/16 83/8 84/2 84/19 88/16 89/7 91/3 92/12 95/16
**can't [17]** 6/12 8/3 18/6 54/21 55/12 57/14 57/20 58/14 66/4 67/11 68/13 84/7 84/7 84/8 84/9 85/15 85/16
**cannot [5]** 23/12 30/7 32/20 75/22 87/7
**capability [1]** 28/14
**capacity [2]** 43/19 45/6
**captured [1]** 38/10
**car [1]** 39/3
**careful [2]** 23/11 23/16
**CARL [1]** 1/13
**carries [1]** 33/4
**carry [2]** 57/2 83/22
**carrying [1]** 51/3
**cars [3]** 38/23 38/25 39/10
**carve [1]** 80/19
**case [68]** 4/3 4/15 5/3 6/12 6/22 6/23 7/18 11/20 12/2 12/4 13/8 13/25 14/1 14/4 14/12 15/13 15/21 15/24 16/7 18/25 19/25 20/5 21/2 21/4 21/14 21/19 22/13 23/11 24/23 25/8 25/21 27/10 27/12 28/18 28/24 29/7 33/18 35/8 35/20 51/22 56/5 59/3 60/12 60/20 61/15 64/11 65/5 75/11 83/7 86/20 87/19 88/24 88/25 89/2 89/12 89/14 89/25 90/9 90/14 90/18 90/20 91/11 91/14 91/17 93/6 93/19 94/20 94/20
**cases [7]** 8/20 9/20 23/3 23/4 23/6 78/16 88/21
**categories [2]** 46/10 47/20
**cause [2]** 84/4 90/17
**caused [2]** 60/12 60/13
**causing [4]** 37/18 38/12 42/5 49/24
**CBP [2]** 45/17 59/4
**CBT [1]** 44/15
**CCTV [10]** 37/8 37/24

79/16 80/7 80/8 81/18 86/3 87/9 89/18 40/11
40/19 44/3 49/2 50/20
**certain [7]** 8/25 10/10 10/16 12/16 55/14 68/16 90/15
**certainly [12]** 4/25 5/10 9/15 16/18 18/15 36/17 43/8 47/19 60/15 74/24 76/9 78/15
**certainty [2]** 23/22 24/22
**certify [1]** 97/4
**chair [1]** 59/21
**chance [1]** 91/18
**characteristic [2]** 20/20 20/23
**charge [5]** 9/14 9/19 25/2 25/6 93/22
**charged [6]** 8/12 22/21 29/5 30/24 61/17 61/19
**charges [5]** 8/12 8/24 26/14 29/9 56/17
**Charging [1]** 4/2
**CHARLES [1]** 1/8
**chased [2]** 43/4 49/15
**chasing [1]** 65/24
**checked [1]** 61/6
**chest [7]** 43/1 47/18 56/7 56/11 62/16 65/25 82/25
**chief [2]** 41/6 83/17
**choice [1]** 15/1
**chose [1]** 29/4
**chosen [2]** 28/25
**Circuit [2]** 6/6 13/19
**circular [2]** 6/10 6/15
**circulated [1]** 93/17
**circumstances [9]** 24/3 25/16 27/14 27/16 29/12 30/10 30/12 30/19 90/3
**circumstantial [7]** 23/25 24/4 24/14 24/16 24/20 24/21 24/25
**cited [1]** 6/6
**citizens [1]** 85/24
**city [1]** 59/25
**civil [3]** 23/2 75/11 75/14
**civility [1]** 88/17
**clear [9]** 15/5 15/23 34/17 43/22 44/18 51/24 52/2 72/11 93/4
**clearly [6]** 45/10 48/24 60/10 78/15 82/10

**C**

clearly... [1] 86/13
clerk [4] 89/6 89/20
90/3 91/7
close [8] 17/4 17/5
18/9 34/4 34/4 38/18
61/16 64/5
closest [1] 11/11
closing [18] 3/3 3/4
3/4 6/4 10/11 16/22
17/8 19/11 33/21 33/24
39/8 40/14 51/11 53/19
71/25 78/3 81/18 82/12
closings [9] 16/15
16/20 16/21 16/23
17/19 17/21 18/8 53/20
81/20
clothes [2] 38/6 62/15
clothing [1] 62/12
club [2] 67/2 83/15
clubs [1] 83/19
co [2] 35/19 51/5
co-counsel [2] 35/19
51/5
colleagues [5] 57/6
57/6 58/22 59/18 80/9
colloquial [1] 53/2
colloquially [1] 54/5
colloquy [1] 14/5
colon [1] 93/25
colored [1] 28/12
COLUMBIA [1] 1/2
come [10] 13/10 15/25
19/2 35/24 35/25 37/9
70/13 82/9 93/2 93/3
comes [2] 42/15 89/5
commit [1] 8/16
committed [3] 10/15
11/22 46/4
committing [3] 8/11
8/13 9/5
common [3] 63/5
64/11 76/13
communicate [5]
89/12 89/20 89/23
89/24 91/14
communications [1]
89/13
community [3] 35/24
36/1 37/17
complete [1] 78/22
completely [1] 60/7
completeness [2]
69/20 69/24

computer [1] 2/19
computer-aided [1]
2/19
con [1] 70/1
concede [1] 10/9
conceded [1] 7/1
concedes [1] 10/6
concern [1] 33/13
concerned [2] 27/12
53/24
concerning [2] 88/24
89/25
conclude [5] 12/15
12/19 12/25 13/3 92/19
concluded [5] 56/2
58/16 73/12 87/18 96/1
condition [1] 30/6
conduct [17] 14/9
19/22 41/15 45/24
63/11 65/13 66/18
74/16 75/9 75/22 76/22
77/20 78/9 81/24 89/15
89/16 90/10
conference [8] 4/2
51/13 56/2 57/12 58/16
66/22 73/12 80/16
confession [2] 66/8
74/11
confusing [1] 9/23
Connecticut [1] 2/10
consciously [1] 20/15
consequences [1]
30/15
consider [44] 15/17
15/22 19/17 20/1 20/13
21/18 21/21 22/6 22/9
22/10 24/24 25/7 25/15
26/12 26/15 27/1 27/3
27/14 27/18 27/22
27/24 28/3 28/6 28/12
29/7 29/12 29/17 29/19
29/22 29/24 29/25 30/4
30/11 30/19 32/22
33/18 53/21 55/15
62/10 75/17 87/8 88/3
88/6 88/15
considerable [1]
90/11
consideration [4]
20/25 23/12 60/18
88/20
considered [4] 34/18
61/4 81/9 87/13
considering [1] 43/14
consistencies [2]

consistent [3] 8/11
52/22 95/10
consists [1] 21/19
conspiracy [3] 8/14
8/16 8/17
constitute [2] 32/20
87/7
constituted [1] 13/3
Constitution [1] 2/16
contact [7] 31/21
39/24 45/16 46/20
46/21 79/17 92/10
contained [1] 7/18
context [6] 32/23 53/4
81/8 81/10 81/16 87/9
continue [2] 38/9
40/25
continued [3] 2/1 37/1
38/1
continues [1] 40/1
contort [1] 60/22
contradicted [1] 28/7
contrary [2] 6/20
83/11
control [3] 21/7 40/10
49/6
controls [1] 78/1
conversation [2] 30/4
70/24
conversations [1]
29/22
convey [1] 87/20
convict [1] 81/7
conviction [4] 33/13
33/16 75/18 90/8
convinced [1] 23/13
copies [1] 93/14
copy [2] 19/14 43/13
core [1] 12/12
corner [13] 7/11 36/19
39/24 40/1 43/5 48/6
48/8 49/12 49/21 49/23
64/16 65/11 86/12
correct [5] 9/8 14/2
15/15 58/9 97/4
correctly [1] 54/1
cost [1] 63/17
could [24] 4/17 5/12
7/12 10/14 11/22 12/7
12/15 12/19 12/24 13/3
15/17 38/3 38/12 43/2
45/10 57/24 59/21
60/13 63/1 68/5 68/7
76/9 76/11 79/16

counsel [12] 9/24 14/8
14/15 15/3 35/19 51/5
51/10 77/22 82/20
83/14 86/4 87/2
counsel's [1] 14/17
count [8] 8/21 8/24
12/3 61/17 66/2 87/16
93/21 93/21
Count 1 [1] 8/24
counteract [1] 32/12
country [2] 61/6 75/16
couple [4] 39/1 71/5
78/2 83/6
coupled [3] 32/5 47/6
79/23
course [5] 12/23 16/16
17/12 26/3 57/3
court [38] 1/2 2/15 3/3
5/3 7/21 9/12 13/21
14/8 15/17 17/24 18/1
24/8 44/14 46/4 46/15
47/4 47/15 47/23 52/9
53/23 54/1 54/8 55/20
70/16 75/14 75/14
75/15 75/16 78/5 79/21
82/11 86/16 86/20
88/10 90/1 90/6 94/24
97/3
Court's [4] 44/17 78/1
80/22 82/2
courtroom [12] 18/19
20/16 34/ 56/17 89/3
92/2 92/9 92/11 93/5
95/9 95/12 95/16
courts [2] 2/16 8/10
coverage [1] 88/25
CRC [1] 2/15
create [3] 42/16 42/17
81/3
created [2] 62/16
66/13
credibility [6] 20/9
26/16 26/19 26/24 27/2
28/19
credit [3] 27/24 28/8
49/15
crime [4] 5/14 22/6
61/19 80/21
crimes [1] 61/7
criminal [11] 1/5 6/12
6/13 6/17 12/9 22/13
23/6 28/24 60/4 75/17
75/22
criminalize [2] 6/1 6/7
cross [2] 51/23 85/20

**C**

cross-examination [1] 51/23
cross-examining [1] 85/20
crossed [5] 35/10 35/18 43/3 51/3 52/16
crosses [2] 39/5 39/10
cuffs [1] 65/10
cumbersome [1] 15/16
curative [5] 53/14 70/8 81/6 81/15 81/17
cursing [2] 48/11 52/14
cuss [1] 38/7
cussing [3] 36/24 38/2 82/7
custody [1] 7/12
Custom [6] 35/21 43/18 45/17 45/22 57/7 83/16
Customs [1] 31/7

**D**

D.C [9] 1/18 36/1 36/8 36/12 37/6 44/23 44/24 45/20 65/16
daily [2] 57/2 63/13
date [3] 12/23 91/22 97/9
day [8] 18/5 33/4 57/2 57/3 63/9 66/12 66/16 95/20
days [1] 69/12
daytime [1] 91/7
DC [4] 1/7 1/19 2/11 2/17
dcd.uscourts.gov [1] 2/17
de [2] 42/18 42/21
de-escalate [2] 42/18 42/21
deal [3] 9/15 84/12 85/14
dealing [1] 84/24
December [1] 97/8
decide [8] 11/25 20/6 20/7 20/8 21/2 24/19 29/15 89/2
deciding [3] 29/8 29/14 62/10
decision [4] 14/11 14/20 29/1 29/3

declined [1] 70/7
declining [1] 14/6
deeply [1] 52/3
defendant [63] 1/9 2/3 10/15 11/5 11/14 11/23 13/25 18/18 22/12 22/14 26/14 28/24 30/6 30/24 31/5 31/10 31/12 31/14 31/17 32/2 33/7 33/8 33/13 35/12 35/18 36/10 36/20 36/22 36/25 37/4 37/9 37/11 37/14 38/7 38/19 38/22 39/1 39/5 41/12 41/18 41/19 42/6 44/1 44/11 45/14 45/16 45/18 45/22 45/24 46/7 46/16 46/22 47/22 48/5 49/7 50/19 50/21 51/25 78/6 83/9 83/24 84/22 85/13
defendant's [7] 37/7 41/15 43/23 77/25 81/24 84/16 84/20
defense [49] 4/14 10/11 10/22 12/6 12/12 13/8 13/11 13/19 13/20 14/4 14/11 15/13 15/17 15/20 15/21 15/23 15/24 16/4 17/2 17/5 17/9 18/25 33/25 34/4 34/12 44/15 51/11 53/25 54/2 68/19 68/21 69/9 71/3 71/11 71/14 72/25 78/3 78/4 78/11 80/1 82/13 83/14 84/12 84/13 85/4 85/20 93/9 94/5 95/23
defense's [1] 18/2
defer [1] 12/1
define [4] 9/7 13/4 13/4 13/6
defined [4] 8/18 12/25 47/9 53/1
definitely [1] 62/17
definition [9] 44/14 46/16 46/25 47/4 47/15 47/15 76/5 79/20 82/11
definitions [2] 31/16 47/23
degree [1] 24/22
deliberate [5] 75/6 89/9 92/6 94/15 94/25
deliberating [6] 17/20 92/4 92/15 94/14 94/23 95/3

deliberations [16] 19/15 21/8 21/11 21/8 26/9 26/12 33/15 87/18 88/9 89/11 89/16 89/19 90/11 90/21 90/25 92/19
demeanor [2] 27/3 59/21
demonstrating [1] 58/11
demonstrative [3] 57/17 57/19 58/11
demonstratively [1] 58/11
denied [3] 13/7 52/9 53/6
deny [3] 12/5 52/18 53/7
denying [3] 9/9 16/3 16/5
depending [1] 16/19
depth [1] 5/17
described [4] 26/22 39/19 57/22 57/24
describing [1] 53/25
deserve [1] 20/19
desire [1] 28/13
desired [1] 50/23
details [1] 27/17
Detective [13] 7/6 37/13 38/15 43/6 64/12 65/2 66/2 74/2 74/22 82/25 83/20 85/6 85/21
Detective Henry [11] 7/6 37/13 38/15 43/6 64/12 65/2 74/22 82/25 83/20 85/6 85/21
Detective Henry's [2] 66/2 74/2
deter [4] 11/11 11/14 11/15 32/18
determination [2] 12/22 90/14
determine [5] 20/4 20/24 23/24 25/16 26/17
determined [1] 25/14
determining [5] 26/13 28/5 30/20 32/23 87/9
deterring [1] 11/17
did [32] 11/1 11/14 29/15 30/16 30/16 31/12 37/24 37/25 38/7 44/9 44/11 45/24 49/19 49/22 49/25 50/4 50/4

50/6 50/5 50/7 50/25 51/24 51/25 55/25 57/25 60/23 63/1 70/2 73/23 76/9 76/11 84/18
didn't [18] 9/15 13/24 17/13 18/17 38/21 42/17 48/12 49/17 52/12 55/5 57/14 57/21 67/18 69/21 70/7 71/8 77/4 83/19
differences [1] 28/2
different [11] 7/23 8/11 8/13 12/9 21/6 48/12 57/24 63/20 65/4 70/9 81/13
differently [1] 10/6
DiLorenzo [4] 1/17 3/3 3/4 52/10
dire [1] 86/16
direct [9] 23/25 24/2 24/9 24/16 24/20 24/23 24/24 63/1 68/16
directly [2] 30/8 39/21
disability [1] 20/21
disagree [3] 35/17 36/9 50/10
disagreed [2] 7/25 70/4
disagrees [1] 50/9
disclose [1] 17/24
discuss [9] 13/10 34/9 45/12 47/3 89/5 89/8 91/11 91/17 95/19
discussed [4] 6/22 14/7 14/14 14/19
discussing [2] 70/12 90/20
discussion [1] 90/18
discussions [2] 70/14 88/16
disjointed [1] 69/18
dislikes [1] 20/11
dismiss [1] 8/21
dismissed [2] 8/12 8/17
disorderly [5] 37/19 37/22 48/24 48/25 84/25
display [1] 56/21
displayed [1] 58/23
dispute [1] 5/18
disregard [2] 58/13 58/18
dissent [2] 61/6 83/7
distasteful [1] 61/9

**D**

**distract [2]** 6/11 50/24
**district [9]** 1/2 1/2 1/13
2/16 7/21 9/19 9/19
64/13 64/16
**disturbance [5]** 37/16
37/18 38/12 42/4 50/23
**divided [1]** 90/7
**do [88]** 4/11 4/15 5/1
5/18 7/14 9/4 9/20
13/21 16/1 16/19 16/21
17/12 17/20 17/21 18/4
18/7 18/8 19/4 21/10
30/16 32/6 33/2 33/2
33/22 33/24 39/18 41/1
41/16 41/16 42/17
42/23 43/11 44/17
44/20 44/21 45/15
45/24 47/7 48/5 49/25
50/13 50/13 50/14 51/6
51/7 53/5 54/2 54/25
55/2 55/3 55/25 57/19
57/23 58/3 58/5 58/10
59/19 60/4 60/21 61/18
62/7 63/7 63/11 63/15
63/15 65/16 67/19
67/22 68/1 73/15 75/6
77/10 78/2 79/24 82/5
84/7 84/7 84/8 84/9
85/16 86/4 86/23 89/5
90/24 91/7 91/14 92/22
95/5
**does [26]** 6/1 13/19
22/18 24/18 24/22
35/15 39/5 39/9 39/11
39/18 40/1 41/1 41/19
42/23 42/24 48/5 48/17
63/17 65/2 69/2 72/8
76/16 90/16 93/18 94/2
94/5
**doesn't [17]** 6/7 8/7
40/4 41/1 42/21 48/8
48/11 48/14 48/16
48/21 52/23 63/24
69/11 73/2 82/23 83/23
93/20
**doing [30]** 7/6 11/3
11/8 11/9 11/15 13/2
16/22 16/23 17/7 17/8
40/22 41/13 41/18 43/4
44/5 44/25 45/19 48/3
48/4 48/9 49/11 50/17
51/2 57/10 76/25 83/24
85/1 85/1 85/2 85/5

**doing -- from [1]** 1/15
**don't [34]** 5/5 5/12
6/19 9/3 10/8 10/11
14/22 17/10 41/18
46/21 52/4 58/1 58/2
63/8 63/9 63/22 66/1
67/14 68/19 69/8 70/21
70/22 71/14 72/14 76/4
77/7 77/8 77/10 77/17
81/22 85/15 85/16 92/8
95/15
**done [11]** 21/1 30/11
33/21 58/25 63/8 63/10
73/18 76/23 77/1 86/5
86/7
**door [2]** 64/5 83/16
**doubt [42]** 4/16 4/18
4/19 5/2 5/19 12/14
12/20 22/16 22/20
22/24 23/2 23/8 23/8
23/9 23/9 23/14 23/15
23/15 23/19 23/19
23/20 23/21 23/23
26/14 29/9 30/21 31/7
32/3 56/18 61/16 62/5
62/6 62/24 64/23 75/5
75/11 75/13 75/15
75/19 75/21 77/14
87/24
**down [15]** 7/5 15/8
39/13 39/17 42/11
42/21 43/4 43/21 48/15
49/4 49/5 50/22 77/3
82/18 91/6
**dozen [1]** 65/8
**draft [4]** 93/17 93/18
93/21 94/8
**draw [5]** 21/21 22/10
40/21 50/7 84/17
**drawing [2]** 52/15
71/22
**drawn [2]** 24/4 67/6
**drugs [1]** 8/20
**DUNN [33]** 1/8 5/21
5/23 6/10 7/9 7/12 7/14
12/25 14/5 14/10 15/8
22/18 22/21 22/24 23/2
28/25 29/3 29/10 30/2
30/11 30/22 51/20
60/23 61/14 65/9 65/10
65/24 66/19 74/16
74/24 75/21 77/19
82/17
**Dunn's [11]** 15/1 22/10
23/13 32/20 32/22 66/6

66/14 74/17 74/21 87/8
87/8
**duration [1]** 30/1
**during [15]** 5/6 6/4
19/14 20/7 21/7 21/9
21/11 21/18 26/3 30/2
30/18 81/20 89/11
89/15 89/19
**duties [16]** 6/12 6/14
11/16 11/18 31/3 31/15
32/25 44/13 44/25 45/8
45/13 60/16 65/24
73/23 85/18 93/25
**duty [6]** 19/25 22/22
22/24 33/15 45/2 65/21

**E**

**each [23]** 10/4 10/19
11/19 11/22 12/20 18/8
25/14 28/15 31/6 35/12
59/13 60/7 62/5 69/14
87/14 87/14 87/16
88/18 92/11 94/22 95/4
95/7 95/14
**earlier [6]** 7/20 20/10
20/18 76/24 91/13
95/11
**ed [1]** 38/24
**education [2]** 20/22
30/4
**effect [2]** 28/13 50/24
**efficient [3]** 4/22 18/22
19/23
**effort [7]** 36/1 36/8
36/10 36/12 37/6 45/20
59/3
**eight [1]** 63/21
**eight-year-old [1]**
63/21
**either [8]** 28/10 28/21
29/20 34/22 45/10
92/17 93/18 95/11
**elaborate [1]** 52/4
**elapsed [2]** 27/15
38/18
**electronic [1]** 89/13
**electronically [1]**
89/17
**element [6]** 22/21 29/5
43/20 44/11 78/14 82/3
**elements [14]** 4/17
4/21 4/22 16/17 30/23
31/7 32/24 43/11 43/15
61/19 62/6 78/2 87/10
87/23

66/14 74/17 74/21 87/8
**else [7]** 27/1 32/5 47/6
74/23 79/23 89/6 90/9
**email [6]** 1/20 1/20 2/5
2/8 2/11 89/13
**embedded [1]** 13/24
**emotion [1]** 64/1
**emphatic [1]** 5/11
**employed [3]** 33/2
43/18 44/20
**employee [6]** 31/1
31/9 33/1 33/10 43/16
93/24
**employees [1]** 59/5
**encountered [1]** 50/18
**encourage [1]** 88/17
**end [4]** 11/12 15/13
16/6 81/11
**ended [3]** 38/21 45/25
73/21
**enforce [1]** 74/23
**enforcement [23]**
28/17 28/23 29/11
29/23 30/3 31/19 36/17
36/18 36/21 46/18 59/4
64/10 64/16 64/24 65/5
65/11 65/24 66/15 71/4
71/12 72/1 74/12 78/7
**engage [2]** 42/3 42/7
**engaged [11]** 31/2
31/14 32/25 36/16
36/17 44/12 44/14
44/19 44/25 45/7 93/24
**engages [3]** 41/20
49/1 49/1
**engaging [1]** 33/3
**enough [6]** 11/12
12/14 16/18 56/12
58/15 62/16
**enter [2]** 9/8 33/14
**entering [1]** 90/12
**enters [1]** 18/19
**entirely [2]** 30/17
60/20
**entirety [1]** 65/18
**entitled [3]** 21/25
28/16 97/5
**equal [1]** 24/21
**equally [1]** 74/6
**escalate [3]** 37/1
42/18 42/21
**escalated [4]** 36/23
37/7 45/25 49/12
**escalating [2]** 36/25
41/15
**escalation [1]** 48/7

**especially [2]** 43/23 82/23

**ESQ [1]** 2/3

**essential [1]** 4/17

**essentially [2]** 48/17 80/4

**establish [2]** 46/1 78/14

**established [6]** 10/4 11/21 39/25 45/11 46/11 79/16

**establishment [2]** 40/20 48/13

**ethnic [1]** 20/20

**evaluate [1]** 26/24

**evaluated [1]** 28/17

**evaluating [3]** 26/19 27/13 28/18

**even [21]** 5/6 7/25 11/11 12/16 34/17 35/16 48/16 49/15 49/16 50/12 60/2 61/8 61/22 61/25 62/19 71/2 72/14 73/16 76/4 83/1 83/20

**evening [4]** 7/10 36/4 94/16 95/7

**event [12]** 12/16 12/18 27/14 27/15 27/16 28/21 33/13 33/16 36/23 59/23 87/6 95/2

**events [1]** 39/2

**ever [3]** 51/25 52/1 77/2

**every [8]** 22/12 22/21 28/24 33/4 63/9 64/16 77/2 84/3

**everybody [3]** 17/18 34/8 93/6

**everyone [11]** 18/20 34/2 35/1 35/12 51/14 92/12 93/11 93/13 93/17 93/19 95/25

**everyone's [1]** 34/1

**everything [2]** 8/1 8/2

**everywhere [1]** 64/17

**evid [1]** 57/13

**evidence [107]**

**exactly [2]** 44/5 63/4

**examination [1]** 51/23

**examine [2]** 88/3 88/6

**examining [1]** 85/20

**example [6]** 6/6 24/6

**except [2]** 89/23 89/25

**exchange [3]** 37/3 37/11 39/3

**exchanged [1]** 38/20

**exclusive [1]** 21/4

**exclusively [1]** 33/16

**excuse [6]** 8/14 55/7 57/15 90/15 91/3 92/25

**executive [1]** 64/14

**exercise [1]** 28/25

**exercising [1]** 48/22

**exert [1]** 32/12

**Exhibit [1]** 84/13

**exhibits [4]** 21/20 26/10 88/2 88/4

**exists [3]** 15/13 67/5 91/10

**exited [3]** 36/20 50/21 95/9

**exits [2]** 34/7 92/2

**expansion [1]** 6/16

**expect [2]** 92/15 95/5

**expectation [1]** 94/22

**expected [3]** 33/2 44/21 44/23

**experience [2]** 21/24 30/5

**explain [2]** 41/7 43/14

**explained [4]** 20/10 45/19 69/13 86/16

**explaining [1]** 81/23

**explains [1]** 37/5

**exploded [1]** 56/7

**express [1]** 15/24

**expressed [2]** 21/2 61/8

**expressing [1]** 59/24

**expression [2]** 20/22 90/13

**extent [16]** 4/16 5/14 6/3 6/7 6/9 6/25 7/10 7/15 8/14 8/17 8/19 8/24 26/18 34/20 40/14 60/22

**eye [1]** 39/23

**eyewitness [1]** 24/1

**F**

**F-u [1]** 38/7

**face [8]** 37/4 41/12 42/15 48/18 81/14 82/7 82/18 83/2

**faces [1]** 48/14

**facilitate [1]** 88/16

**facing [1]** 13/4

**facists [3]** 38/7 67/9 67/15

**fact [15]** 9/14 12/2 23/3 24/2 24/17 36/9 43/9 50/8 51/19 51/22 55/22 60/23 67/6 82/14 83/11

**facts [18]** 10/13 20/5 20/6 20/24 21/22 23/25 24/3 25/15 30/12 30/17 35/20 36/3 51/7 52/2 64/10 82/5 85/6 90/23

**failed [4]** 5/18 22/23 66/4 74/4

**fails [3]** 6/1 77/1 77/2

**fair [16]** 19/23 20/19 20/24 25/3 25/8 52/23 59/9 67/5 71/3 71/9 71/23 72/15 73/6 86/17 88/13 88/20

**fairly [4]** 21/25 28/16 68/5 86/22

**falling [2]** 24/7 24/9

**falsehood [1]** 28/1

**familiar [1]** 83/21

**family [1]** 75/14

**far [5]** 11/20 49/14 71/25 84/5 84/6

**fascists [1]** 67/7

**fashion [1]** 90/8

**favor [1]** 24/18

**favorable [1]** 10/14

**FBI [3]** 38/5 38/5 85/10

**fear [3]** 61/24 62/2 62/9

**fearful [1]** 32/18

**federal [34]** 31/4 43/17 54/1 54/4 54/6 54/10 54/12 54/17 54/20 54/22 54/24 55/7 55/9 55/12 55/18 55/19 55/20 55/22 55/24 56/16 60/3 60/9 64/15 65/8 65/21 66/16 73/25 74/14 75/9 84/8 85/7 85/10 85/15 86/11

**feel [6]** 4/15 19/20 21/23 43/2 46/24 82/8

**feelings [3]** 66/15 74/12 86/21

**fell [1]** 43/25

**felony [2]** 55/7 56/23

**felt [1]** 56/10

**few [4]** 4/21 7/8 33/20

**Field [1]** 85/8

**Fields [3]** 85/14 86/9 86/10

**fights [1]** 59/4

**figure [1]** 44/16

**file [1]** 53/3

**fill [1]** 77/14

**final [6]** 13/1 16/14 17/15 17/21 19/7 87/3

**Finally [2]** 6/23 33/6

**find [21]** 4/17 5/12 10/14 11/22 21/22 22/19 22/22 22/22 22/24 25/17 25/20 29/15 30/17 31/5 31/6 32/1 32/2 40/6 46/6 87/5 90/19

**fine [3]** 13/15 16/25 50/9

**finish [1]** 41/21

**fire [1]** 62/17

**firmly [1]** 23/13

**first [22]** 4/24 5/21 14/5 31/7 35/10 38/8 38/9 41/5 43/15 43/20 47/3 49/21 57/15 60/24 61/2 62/8 66/24 69/2 80/18 80/22 88/8 94/17

**fit [2]** 63/25 64/1

**five [1]** 81/12

**fled [1]** 84/23

**Floor [1]** 2/4

**focus [4]** 5/2 10/10 12/6 38/22

**focused [7]** 10/22 38/22 38/23 44/1 44/4 74/8 82/13

**focuses [2]** 41/5 41/19

**focusing [3]** 10/16 36/22 68/22

**follow [3]** 19/18 44/17 49/24

**following [2]** 20/2 31/6

**follows [1]** 79/10

**food [1]** 59/4

**foot [2]** 76/9 76/10

**foot-long [2]** 76/9 76/10

**footlong [1]** 56/23

**force [24]** 31/17 31/18 31/18 31/20 31/20 46/17 46/17 46/18 46/19 46/20 46/24 46/25 56/16 78/6 78/7

## F

**force... [9]** 78/7 78/8 78/9 78/14 78/15 78/16 79/15 79/17 79/18
**forceable [1]** 77/20
**forced [1]** 29/19
**forcible [10]** 60/12 60/14 75/9 75/22 76/6 76/18 76/19 76/20 76/20 76/21
**forcibly [29]** 4/25 5/1 11/1 12/25 30/24 31/10 31/17 31/19 31/22 32/1 32/3 33/9 46/7 46/15 46/16 46/17 46/19 60/15 75/21 75/24 75/25 78/4 78/5 78/6 78/8 78/25 79/8 79/16 93/22
**forcing [1]** 9/22
**foregoing [1]** 97/4
**foreperson [4]** 88/9 88/11 88/15 89/21
**forget [1]** 75/6
**form [10]** 24/18 87/17 87/18 87/21 87/24 93/16 93/17 93/19 94/3 94/8
**formal [1]** 22/5
**forward [1]** 5/19
**fought [1]** 71/19
**four [3]** 4/21 43/15 65/2
**fourth [3]** 31/13 32/24 87/10
**frankly [1]** 9/23
**free [6]** 19/20 26/25 59/4 83/10 83/12 91/17
**friend [1]** 63/13
**friendship [1]** 27/11
**frighten [1]** 32/18
**frolic [2]** 33/3 45/3
**front [3]** 9/22 57/16 68/15
**full [1]** 88/20
**function [2]** 19/22 20/4
**fundamental [1]** 61/8
**funny [1]** 59/15
**further [1]** 34/25
**Furthermore [1]** 90/18

## G

**gag [6]** 56/22 57/5 60/3 63/16 63/17 82/15

**gag-gift-worthy [1]** 60/3
**gain [1]** 27/10
**game [3]** 52/24 71/23 71/25
**gap [1]** 77/14
**gather [1]** 92/12
**gathered [4]** 66/17 67/8 67/15 74/15
**Gatto [4]** 2/6 4/8 15/6 61/13
**gave [7]** 16/5 34/18 57/5 57/5 84/3 84/5 89/10
**gender [1]** 20/21
**general [3]** 33/1 44/20 57/24
**generally [4]** 13/19 20/12 40/7 56/20
**generic [1]** 22/8
**gentlemen [6]** 19/2 50/16 56/5 58/17 67/7 79/5
**genuine [1]** 59/19
**genuinely [1]** 56/20
**gestures [3]** 48/15 49/2 84/5
**get [38]** 8/4 11/13 19/8 37/15 37/15 40/3 40/4 40/23 40/24 41/2 41/14 41/25 42/3 42/23 48/6 48/8 48/12 48/18 49/12 54/22 57/11 58/10 60/21 66/10 66/20 67/18 68/13 70/9 72/22 73/20 77/2 80/10 80/13 82/8 82/23 84/2 86/17 95/16
**gets [4]** 48/14 48/16 71/11 72/4
**getting [5]** 49/8 52/15 64/1 82/24 86/4
**gift [6]** 56/23 60/3 63/14 63/16 63/16 63/17
**gifts [7]** 56/22 57/5 57/6 58/20 58/21 58/21 82/15
**girl [1]** 63/23
**give [20]** 7/22 13/1 16/14 17/14 17/15 17/19 18/15 20/8 21/24 23/16 24/6 24/19 24/21 28/15 28/21 29/16 31/16 35/15 73/15

8/1 5
**given [6]** 12/2 30/1 73/4 87/22 88/6 94/18
**gives [3]** 63/14 75/4 77/14
**giving [2]** 34/17 70/1
**gloves [1]** 62/14
**gmail.com [1]** 2/5
**go [26]** 8/5 8/9 10/19 10/21 12/17 13/15 17/18 34/1 34/3 39/6 43/11 43/14 56/1 58/14 60/11 61/19 63/24 63/25 64/5 66/2 73/21 77/3 78/2 82/25 88/12 94/25
**goal [3]** 20/16 63/25 65/19
**goes [4]** 39/24 49/9 50/5 54/7
**going [56]** 4/10 5/16 9/25 10/9 12/5 12/21 15/14 17/16 18/3 18/7 18/15 18/18 19/4 19/7 19/8 19/9 19/12 31/16 33/22 33/22 43/13 42/15 49/3 49/5 49/12 52/18 53/7 53/19 55/21 57/10 60/10 61/18 61/18 61/20 62/17 72/2 73/4 73/7 73/8 73/17 74/18 75/3 77/10 77/14 78/21 79/7 81/19 81/21 82/8 82/23 83/2 84/6 91/5 91/10 93/2 94/24
**good [6]** 35/6 51/24 77/24 95/7 95/7 95/8
**got [5]** 35/22 49/13 52/17 65/1 83/15
**government [92]** 4/15 5/5 5/8 5/18 5/19 6/3 6/18 8/3 10/3 10/5 10/6 10/10 10/14 11/12 12/7 12/13 12/18 16/24 16/25 17/4 17/8 22/15 22/20 22/23 23/1 23/20 26/13 29/6 29/8 30/21 31/6 32/23 33/24 33/25 34/3 34/4 35/5 45/10 46/1 46/5 49/20 51/19 52/11 52/12 52/20 53/24 54/2 54/15 55/11 55/13 57/21 58/14 59/3 60/5 60/7 60/20 62/5 62/20 65/18 66/3 66/7

69/18 68/19 69/2 69/17 69/17 69/19 69/21 70/3 70/4 70/7 70/11 71/8 71/10 71/19 72/8 72/16 73/1 74/8 74/10 74/21 75/4 75/10 75/20 80/19 80/25 81/1 87/23 92/20 94/2 95/20 95/21
**government's [13]** 4/20 6/9 11/20 16/7 18/2 23/7 46/10 61/1 64/8 68/22 77/8 78/12 87/10
**grand [1]** 75/13
**grant [1]** 9/4
**granted [1]** 64/21
**granting [1]** 9/9
**graver [1]** 23/17
**great [4]** 5/17 18/13 50/3 92/10
**greater [3]** 24/22 25/19 28/21
**Greg [1]** 31/8
**ground [5]** 7/9 24/12 24/13 49/18 56/8
**group [4]** 38/4 38/8 66/16 85/9
**groups [4]** 65/1 65/1 65/3 74/14
**guess [2]** 57/10 80/14
**guesswork [1]** 23/19
**guide [1]** 86/13
**guidelines [1]** 28/20
**guilt [6]** 22/10 22/11 23/13 23/21 23/22 61/17
**guilty [13]** 22/16 22/22 22/25 23/22 29/4 31/5 32/2 51/8 76/7 77/19 86/24 86/25 94/1
**guilty' [1]** 93/25
**gut [3]** 76/15 76/15 76/17
**guys [1]** 39/1

## H

**had [21]** 4/2 5/21 17/7 24/8 24/14 24/14 27/7 37/14 38/24 38/25 49/16 50/23 57/20 58/12 68/8 70/24 73/22 84/14 84/23 85/9 93/16
**hand [13]** 24/3 37/10 41/13 41/14 42/10 42/24 48/15 48/18

## H

**hand... [5]** 48/22 49/4 49/9 61/2 91/7
**hands [2]** 42/16 42/19
**hanging [1]** 39/2
**happen [5]** 16/2 18/10 19/12 24/10 75/3
**happened [9]** 43/9 43/25 48/2 53/5 58/25 59/22 63/19 66/12 84/23
**happening [2]** 59/25 84/20
**HAPPENINGS [1]** 3/2
**happens [5]** 42/6 42/22 42/24 89/7 91/9
**happily [1]** 56/21
**happy [6]** 10/19 14/8 17/24 52/4 72/20 72/23
**hard [1]** 46/23
**harm [31]** 31/23 31/24 32/7 43/8 47/8 59/24 61/24 62/3 62/9 62/20 76/1 76/2 76/9 76/10 76/12 77/16 78/12 78/12 78/13 78/13 78/18 79/1 79/11 79/12 79/25 80/2 81/25 82/2 82/2 84/4 86/6
**has [68]** 4/15 4/20 5/5 5/18 5/19 6/5 6/24 10/3 10/11 10/18 11/12 11/21 12/7 12/18 15/24 19/2 19/22 22/15 22/20 22/23 23/1 25/7 26/13 26/20 27/6 27/9 27/9 27/11 28/7 28/9 28/12 28/24 28/25 29/9 30/21 32/23 35/13 38/18 46/15 53/3 53/24 54/6 54/19 56/24 57/24 58/24 61/11 61/21 62/4 62/14 62/14 62/14 63/6 63/8 63/24 68/14 71/19 73/1 75/13 75/23 79/2 79/21 82/11 84/1 85/14 86/10 91/16 92/10
**has -- the [1]** 53/24
**hasn't [3]** 10/6 10/7 92/13
**have [111]**
**haven't [8]** 5/9 10/9 53/1 55/11 68/3 87/12 92/4 92/24

**having [6]** 13/11 15/22 16/4 27/6 47/17 56/20
**he [218]**
**he's [13]** 14/7 37/11 38/12 40/19 41/1 42/8 42/8 42/9 42/9 43/18 62/12 62/13 83/15
**heads [1]** 39/10
**healthy [1]** 91/3
**hear [9]** 19/11 33/25 40/2 51/14 66/24 69/9 72/13 72/14 95/14
**heard [29]** 5/9 11/20 18/6 19/3 25/9 29/10 35/19 36/13 37/3 37/3 37/13 41/6 41/6 42/13 43/1 44/22 45/15 46/3 61/14 68/3 73/1 77/25 78/3 78/11 82/21 83/16 84/12 85/20 87/12
**hearing [2]** 17/17 19/9
**heart [2]** 5/17 56/13
**held [3]** 7/21 66/14 74/12
**help [3]** 9/21 86/10 88/16
**helpful [1]** 47/23
**helping [1]** 85/19
**Henry [12]** 7/6 37/13 38/15 43/6 64/12 65/2 74/22 82/25 83/20 85/6 85/21 86/10
**Henry's [2]** 66/2 74/2
**her [7]** 85/8 85/9 85/17 85/22 88/19 95/13 95/14
**here [51]** 8/23 9/5 12/6 19/6 22/7 34/3 34/9 36/3 37/5 38/21 43/22 44/13 45/11 45/14 45/19 45/19 46/21 47/12 47/21 48/2 49/4 53/1 53/4 60/25 63/19 66/12 67/8 67/15 69/7 73/9 75/8 78/15 79/18 79/19 83/14 84/3 84/10 84/20 85/5 88/10 90/1 92/15 92/22 93/2 94/23 94/24 94/25 95/1 95/6 95/11 95/13
**here's [2]** 68/4 92/3
**herman [4]** 2/15 2/17 97/3 97/8
**herself [1]** 28/10
**hesitate [2]** 23/17

**Hey [1]** 69/1
**high [11]** 7/1 7/15 10/12 10/12 36/14 37/22 39/15 48/3 50/18 65/19 85/5
**high-visibility [4]** 37/22 39/15 48/3 50/18
**higher [1]** 7/2
**highest [1]** 75/16
**highly [2]** 23/5 74/5
**him [53]** 7/9 11/17 11/17 15/5 22/22 28/9 29/1 29/23 29/24 36/23 36/24 37/9 37/17 37/23 37/23 38/15 39/9 39/12 39/12 39/17 39/19 39/23 39/23 39/24 40/2 40/10 40/21 42/5 42/8 44/4 44/6 44/6 49/1 49/15 49/17 49/18 51/25 52/1 52/12 56/21 57/5 57/7 59/22 59/22 63/1 63/2 63/2 76/12 83/25 84/3 84/4 84/4 84/5
**himself [2]** 43/7 62/22
**hinder [2]** 32/19 47/25
**hindering [2]** 32/16 47/25
**his [70]** 7/13 11/18 14/7 14/8 15/1 22/18 24/8 24/13 29/3 29/25 30/13 31/3 31/15 33/3 37/2 37/4 37/9 37/11 38/9 38/16 38/23 39/8 39/9 41/12 41/13 41/14 41/20 42/10 42/19 42/21 42/24 43/24 44/7 44/13 45/5 45/7 45/13 45/24 48/15 48/18 48/18 49/2 49/4 49/9 49/25 56/7 56/11 56/11 56/23 56/24 57/6 57/6 58/12 58/22 59/18 59/21 59/24 59/25 60/24 62/12 62/15 62/15 65/25 66/4 66/16 74/13 74/13 81/2 84/1 88/19
**hit [3]** 47/17 49/10 82/24
**hits [1]** 83/1
**hitting [1]** 84/6
**hold [7]** 25/24 29/1

90/17 57/6 68/24 72/3 79/7
**holding [1]** 75/17
**honest [1]** 23/11
**Honor [47]** 4/5 4/10 4/13 8/10 10/1 13/17 14/2 14/7 14/13 14/16 14/21 14/24 15/4 15/15 17/1 17/3 17/23 18/24 34/12 34/24 35/3 36/5 51/15 51/16 53/9 53/23 54/14 55/2 55/3 56/3 57/13 58/9 66/23 68/7 69/16 70/16 71/17 72/9 72/12 78/17 79/6 80/11 80/17 81/5 85/25 93/8 95/22
**HONORABLE [1]** 1/13
**hoping [3]** 38/14 74/18 76/16
**hostility [1]** 27/11
**hour [2]** 18/9 18/10
**how [21]** 11/5 17/20 21/1 24/19 29/15 38/7 38/17 57/19 57/23 59/19 65/16 68/4 73/18 73/22 73/25 77/1 79/15 79/16 88/11 90/4 90/6
**however [9]** 5/2 23/18 24/11 30/17 32/8 35/15 47/10 88/12 91/17
**huge [1]** 64/15
**human [1]** 20/10
**hurled [1]** 56/16
**hurtful [1]** 63/15
**hypocritical [1]** 81/19
**hypothetically [3]** 7/25 8/2 9/2

## I

**I'd [2]** 4/24 78/1
**I'll [5]** 33/20 45/12 47/3 92/23 93/19
**I'm [22]** 5/16 12/5 12/21 13/18 14/8 17/24 19/7 31/16 52/3 52/18 55/15 65/22 72/20 73/16 74/18 76/23 76/25 77/6 77/15 78/19 91/5 93/2
**I've [8]** 34/18 53/12 53/15 68/2 76/24 77/1 77/3 86/3
**idea [1]** 58/2
**identification [1]** 88/5

**identified [1]** 41/7
**identity [1]** 20/21
**ignore [5]** 19/18 20/2 21/3 26/4 26/7
**imaginary [1]** 23/18
**imagine [4]** 7/17 8/1 9/2 18/7
**immediate [5]** 32/7 47/8 61/24 62/2 79/25
**immediately [2]** 37/7 49/23
**immigration [14]** 35/9 36/18 66/15 66/16 67/16 71/4 71/12 72/1 74/12 74/14 74/24 74/25 83/9 83/22
**impacted [1]** 64/14
**impartial [4]** 20/17 23/12 25/4 25/8
**impede [7]** 5/8 6/2 6/19 32/15 47/24 64/7 73/23
**impeded [5]** 31/11 33/9 46/8 64/9 65/23
**impediment [4]** 6/14 6/24 32/21 87/8
**impeding [15]** 5/20 12/10 13/5 30/25 31/25 46/13 47/21 47/22 60/15 65/20 76/5 76/21 84/16 86/13 93/23
**implications [1]** 14/18
**implicit [1]** 20/13
**implies [1]** 23/9
**imply [2]** 54/23 55/23
**implying [2]** 55/17 55/19
**impoliteness [1]** 60/8
**importance [1]** 90/12
**important [3]** 5/25 23/18 36/9
**importantly [1]** 59/14
**imposing [1]** 33/15
**impresses [1]** 27/5
**improbability [1]** 28/4
**improper [3]** 29/2 61/4 71/22
**inaccurate [1]** 69/4
**inadvertently [1]** 89/4
**inapplicable [1]** 60/20
**inappropriate [1]** 54/16
**Inaudible [2]** 13/12

**inches [2]** 42/10 82/7
**incite [4]** 41/2 52/3 52/25 53/1
**incited [3]** 51/20 51/21 52/13
**incitement [1]** 80/19
**inciting [1]** 53/3
**incivility [1]** 60/8
**inclination [1]** 42/14
**include [2]** 9/6 81/16
**included [3]** 18/16 35/12 38/4
**includes [1]** 89/13
**including [9]** 27/15 29/13 32/9 47/10 59/16 60/19 80/18 85/7 85/10
**income [1]** 20/22
**incomprehensible [1]** 64/9
**inconsistencies [3]** 27/19 27/23 27/25
**inconsistent [1]** 40/14
**incorrect [2]** 6/20 18/16
**independent [1]** 89/15
**indicate [1]** 30/13
**indicated [1]** 21/3
**indicating [1]** 21/1
**indication [1]** 74/4
**indirectly [1]** 8/18
**individual [3]** 35/10 84/7 84/25
**infer [4]** 30/9 30/14 30/14 68/5
**inference [12]** 22/11 40/22 59/9 67/5 67/12 71/3 71/10 71/15 71/18 71/23 72/15 73/6
**inferences [3]** 21/23 24/4 52/21
**inflict [16]** 31/23 31/24 32/5 47/6 61/22 61/25 75/25 76/1 76/8 76/10 76/12 78/18 79/1 79/11 79/12 79/22
**information [5]** 22/5 22/7 22/7 22/9 92/10
**initial [2]** 37/10 90/19
**injured [2]** 56/20 64/4
**injury [22]** 32/5 32/8 32/8 47/6 47/9 47/10 47/12 47/13 47/16 59/23 60/12 60/13 61/22 61/23 61/25 62/2

82/12 82/15
**innocence [2]** 22/14 22/19
**innocent [1]** 22/13
**inordinately [1]** 75/8
**inquiry [1]** 14/9
**insignia [1]** 45/17
**Instagram [1]** 66/13
**instigate [1]** 80/10
**instruct [6]** 19/4 19/24 20/1 53/10 58/13 91/11
**instructed [14]** 25/11 26/23 43/12 46/15 47/15 53/18 54/8 61/21 62/4 63/6 75/23 78/23 79/21 87/5
**instruction [14]** 7/22 8/6 9/6 34/13 53/14 76/3 78/1 80/21 81/6 81/15 81/17 82/3 89/10 91/13
**instructions [38]** 3/3 5/5 6/21 13/1 16/14 16/22 17/7 17/15 17/21 18/16 19/8 19/13 19/14 19/16 19/17 19/18 19/19 19/21 20/1 33/20 34/18 34/19 34/21 44/18 44/18 46/4 53/17 79/8 79/9 80/18 87/4 87/6 87/12 87/21 87/23 92/14 93/15 94/18
**insufficient [1]** 4/20
**intact [2]** 8/22 56/8
**intelligence [1]** 30/5
**intend [2]** 17/20 55/25
**intended [3]** 6/19 11/2 22/2
**intending [2]** 14/1 74/23
**intends [3]** 10/3 10/5 30/15
**intent [9]** 15/24 16/14 30/7 30/10 30/13 43/21 43/22 44/10 81/2
**intentional [5]** 28/1 32/4 44/7 47/5 79/22
**intentionally [4]** 30/16 30/16 31/13 42/17
**interacting [1]** 40/2
**interest [2]** 27/10 28/11
**interfere [8]** 5/9 6/2 6/19 32/19 33/14 47/25

**interfered [5]** 31/11 33/10 46/8 50/9 64/10
**interference [11]** 5/21 6/25 32/22 46/12 65/20 75/1 75/1 76/5 76/21 84/15 87/8
**interfering [8]** 12/11 13/5 30/25 31/25 47/21 47/22 60/15 93/23
**interim [1]** 92/8
**internet [4]** 88/23 89/17 91/13 91/15
**interpreting [1]** 16/4
**interrupt [1]** 80/14
**interrupted [2]** 72/21 73/15
**intervene [2]** 32/19 48/1
**interview [1]** 25/12
**intimates [1]** 55/14
**intimidate [4]** 5/9 11/10 32/17 86/12
**intimidated [3]** 31/11 33/10 46/8
**intimidating [5]** 5/11 12/11 13/5 30/25 93/23
**intimidation [3]** 5/13 5/15 32/21
**introduce [1]** 61/12
**introduced [3]** 66/3 74/3 74/21
**investigation [1]** 89/15
**investigator [1]** 25/11
**investigators [1]** 25/10
**invite [3]** 39/6 40/18 88/18
**invites [2]** 66/7 74/10
**inviting [2]** 55/15 55/16
**involved [2]** 7/8 48/13
**irrelevant [1]** 64/22
**is [444]**
**isn't [9]** 15/14 17/16 38/19 43/24 50/3 68/18 71/3 71/9 80/4
**issue [1]** 60/18
**issues [3]** 7/21 14/20 83/6
**it [291]**
**it's [59]** 14/10 16/18 19/3 19/9 35/9 35/9 35/10 40/21 40/24 42/14 44/3 44/16 46/22

**I**

**it's... [46]** 48/19 48/24 48/25 50/23 52/2 52/23 54/18 54/22 55/6 55/8 55/8 55/10 55/11 55/12 57/15 57/17 57/25 58/3 59/9 62/23 63/16 63/16 63/17 64/17 67/8 71/13 71/23 72/9 75/1 76/15 76/19 76/20 77/9 78/14 79/14 79/16 80/2 80/2 81/2 82/12 83/1 83/7 83/7 84/6 84/6 86/10
**its [15]** 4/15 10/11 12/12 12/13 15/24 17/8 18/25 23/4 23/22 33/4 33/24 34/13 51/19 53/10 56/9
**itself [1]** 25/3

**J**

**jgatto [1]** 2/8
**job [5]** 44/16 44/17 50/17 51/2 85/16
**jobs [1]** 7/14
**John [1]** 1/18
**john.parron [1]** 1/20
**Johns [1]** 4/3
**JOHNSON [1]** 2/10
**join [2]** 51/25 80/10
**joined [1]** 65/11
**joining [1]** 42/5
**joking [4]** 59/5 59/5 59/13 59/14
**joyfully [1]** 56/21
**judge [8]** 1/13 43/12 61/20 62/4 63/6 75/10 75/19 75/23
**judges [3]** 20/5 26/16 90/23
**Judging [1]** 26/19
**judgment [10]** 4/14 5/13 8/4 8/23 9/8 13/21 21/25 27/1 28/16 87/13
**Julia [2]** 2/6 61/13
**Julia Gatto [1]** 61/13
**jump [1]** 43/21
**jumping [1]** 81/20
**juries [1]** 90/19
**juror [11]** 4/17 5/12 12/15 12/19 12/24 77/4 87/14 87/14 88/18 90/12 90/17
**jurors [10]** 9/21 21/9

21/15 86/17 89/6 90/4 90/10 90/25 91/3 91/10
**jury [91]** 1/12 3/3 4/4 5/4 7/21 8/5 8/6 8/7 8/9 9/6 10/3 10/5 10/13 11/13 11/22 12/17 13/1 13/3 13/6 13/10 13/22 15/14 15/25 16/1 16/11 16/14 17/14 17/19 17/21 18/19 20/4 25/2 34/7 34/18 39/7 40/13 50/4 52/3 52/5 53/2 53/10 54/8 55/15 56/6 57/16 58/13 58/17 67/11 67/20 68/5 68/16 71/4 72/4 73/6 75/13 77/12 77/13 78/23 79/3 79/5 86/17 87/3 88/1 88/8 89/9 89/12 89/22 89/22 89/24 90/6 90/13 90/20 91/1 91/18 91/20 91/25 92/2 92/3 92/6 92/14 92/24 93/3 93/14 93/16 94/9 94/13 94/14 94/19 94/23 95/9 95/15
**jury's [1]** 92/19
**just [62]** 7/23 8/1 12/4 12/8 13/18 15/5 15/25 17/8 18/6 19/3 19/5 19/12 20/17 23/1 26/24 28/18 29/4 33/7 34/1 34/13 34/18 38/19 40/6 43/24 49/8 56/19 57/4 58/24 61/11 63/5 63/13 64/17 65/8 67/6 68/22 68/24 69/13 70/19 72/3 72/9 72/18 73/3 73/9 73/20 76/3 76/5 78/2 78/14 80/3 80/4 82/1 83/6 84/11 87/3 88/13 89/6 92/9 92/21 93/3 94/17 94/25 95/17
**justified [1]** 21/23
**justifying [1]** 56/16

**K**

**keep [17]** 36/8 37/22 42/20 45/20 57/1 57/10 59/4 62/16 62/18 65/16 71/20 81/21 85/11 85/19 85/23 85/24 88/4
**keeping [1]** 42/20
**keeps [2]** 56/22 63/18 59/1 75/8
**kept [4]** 49/12 58/23 59/1 75/8

key [2] 47/1 52/10
keyword [2] 46/9 79/14
**kind [5]** 22/9 23/15 43/24 52/14 80/10
**kinds [1]** 12/9
**knew [5]** 33/7 33/8 43/4 45/22 45/23
**know [49]** 11/10 13/18 13/24 18/17 19/5 19/12 35/21 35/23 43/17 43/18 47/20 48/24 53/13 54/1 56/15 56/15 57/19 57/23 58/1 58/2 59/19 59/20 59/20 60/21 63/23 64/13 65/7 65/17 68/1 68/19 71/18 75/7 76/24 77/3 77/7 77/8 77/10 77/11 77/17 79/3 82/13 82/14 82/15 82/23 83/19 83/20 85/15 85/16 89/6
**knowing [2]** 15/2 30/8
**knowledge [4]** 24/1 30/7 30/10 30/13
**knows [1]** 72/16

**L**

**lack [2]** 23/10 29/7
**ladies [6]** 19/2 50/16 56/5 58/17 67/7 79/5
**Lairmore [54]** 7/1 11/2 11/3 11/8 11/9 11/16 31/8 31/12 31/14 36/7 36/11 36/22 36/24 37/3 37/14 39/19 41/7 41/20 42/12 42/13 43/1 43/1 43/16 44/4 45/5 45/15 45/17 49/1 50/16 51/23 56/7 56/10 57/6 59/15 59/16 59/17 59/20 60/13 62/8 62/9 62/11 62/19 62/21 62/22 63/18 64/12 64/25 74/4 74/22 77/18 83/17 84/22 85/8 85/13
**Lairmore's [5]** 56/14 60/16 63/3 65/23 73/23
**landed [2]** 56/8 62/11
**lapses [1]** 27/25
**large [2]** 66/16 74/14
**last [6]** 61/6 70/7 70/25 78/24 79/10 90/24
**lasting [1]** 38/20

later [4] 14/8 27/16 52/4 93/4
**Latin [2]** 67/8 67/13
**laughed [1]** 59/22
**law [37]** 7/16 19/4 19/8 19/24 19/24 19/25 22/18 24/16 24/18 28/17 28/23 29/10 29/23 30/3 31/4 31/19 36/21 37/18 46/18 51/7 59/4 60/10 64/10 64/15 64/24 65/5 65/11 65/23 75/1 75/9 76/14 77/25 78/7 78/18 81/1 83/3 87/22
**lawful [1]** 50/14
**laws [1]** 74/24
**lawyer [5]** 25/11 25/23 25/24 72/21 73/14
**lawyer's [1]** 26/4
**lawyers [5]** 16/16 22/1 22/4 25/21 72/25
**lawyers' [1]** 26/1
**leading [1]** 11/6
**leads [1]** 76/6
**least [5]** 5/14 11/21 52/23 53/9 92/5
**leave [4]** 8/21 82/9 91/5 95/13
**left [3]** 73/16 74/7 77/3
**legal [4]** 5/25 20/19 22/8 47/14
**length [1]** 16/19
**less [3]** 15/16 16/8 55/6
**less -- it's [1]** 55/6
**lesser [1]** 28/21
**let [16]** 8/14 13/23 16/13 19/5 24/6 33/7 57/4 58/14 62/8 64/7 71/1 73/20 79/20 84/4 84/4 84/9 6
**let's [16]** 7/17 34/1 46/3 46/14 46/14 47/1 56/1 57/11 66/20 71/8 73/9 78/4 81/21 82/17 82/20 83/6
**level [2]** 20/22 78/15
**lien [1]** 35/18
**life [2]** 23/18 63/13
**lifetime [1]** 58/25
**light [3]** 10/13 10/18 21/23
**like [22]** 4/24 5/2 14/4 16/17 17/8 17/18 18/1

## L

**like... [15]** 18/4 42/16 42/25 43/11 58/2 70/16 76/14 77/4 77/9 78/1 81/16 88/21 91/21 92/17 95/1
**likelihood [1]** 91/15
**likely [4]** 23/4 53/2 92/14 95/3
**likes [1]** 20/11
**Likewise [1]** 26/10
**limited [1]** 53/4
**line [3]** 35/11 43/3 51/4
**listen [7]** 41/11 50/4 68/8 69/22 70/19 89/1 89/1
**listened [4]** 41/10 68/2 69/13 77/12
**listening [2]** 12/9 67/17
**little [9]** 19/9 39/11 50/6 59/23 73/17 73/22 73/22 73/24 76/24
**live [1]** 64/13
**LLP [2]** 2/6 2/10
**local [6]** 7/16 35/22 36/12 85/7 85/9 86/11
**Logic [1]** 6/15
**logical [2]** 72/15 76/15
**logistically [1]** 13/18
**long [16]** 17/16 17/20 17/25 18/5 38/17 62/13 62/13 73/18 74/1 75/8 76/9 76/10 86/4 93/6 95/14 95/16
**long-pant [1]** 62/13
**long-sleeved [1]** 62/13
**longer [1]** 65/25
**look [21]** 38/16 39/18 40/18 42/2 42/2 43/23 43/24 44/3 44/5 44/7 46/7 49/2 49/21 50/20 50/20 63/19 66/11 74/2 77/4 82/17 85/4
**looked [2]** 24/7 24/11
**looking [3]** 8/23 39/16 82/5
**looks [2]** 42/1 58/2
**lorraine [4]** 2/15 2/17 97/3 97/8
**lose [1]** 81/22
**lot [2]** 49/6 80/15
**loud [2]** 37/15 42/8
**luck [2]** 95/7 95/8
**lunch [15]** 16/19 16/20 16/23 17/4 17/5 17/8 17/9 17/16 17/17 17/22 19/10 33/23 56/24 57/2 63/12

## M

**made [22]** 15/17 15/23 15/24 16/3 16/4 16/6 25/22 25/25 27/21 29/10 29/14 29/17 30/11 34/19 36/13 38/2 38/3 44/8 45/16 51/23 56/12 72/22
**main [3]** 18/2 61/1 74/9
**maintain [1]** 7/1
**maintaining [1]** 7/15
**major [1]** 54/23
**make [24]** 5/4 15/12 18/21 29/15 32/17 37/6 37/16 44/24 52/5 52/6 65/14 68/7 68/13 68/16 70/22 71/25 72/2 72/3 72/19 81/22 82/8 84/4 84/12 93/4
**makes [7]** 12/9 16/20 37/11 39/24 54/7 55/24 76/15
**making [5]** 14/20 29/21 40/25 52/20 54/6
**man [3]** 51/3 56/19 59/24
**manner [4]** 19/23 27/5 52/6 61/9
**many [4]** 50/10 77/1 90/18 94/18
**marked [1]** 88/4
**markings [1]** 36/15
**marks [1]** 38/6
**Marshal [2]** 89/21 90/4
**masks [1]** 36/16
**massive [1]** 6/16
**mathematical [1]** 23/21
**matter [11]** 14/23 33/18 48/8 73/18 76/18 77/1 83/23 89/25 90/7 90/23 97/5
**matters [4]** 23/18 26/22 27/18 90/11
**may [59]** 10/10 13/13 15/8 15/11 19/15 19/16 19/18 20/2 20/14 20/25 21/1 21/4 24/25 24/25 26/5 26/25 27/3 27/18 27/22 27/24 28/3 28/6 28/11 29/7 29/17 29/19 29/22 29/24 29/25 30/4 30/9 30/11 30/14 32/22 35/5 38/25 50/10 51/16 51/17 52/22 52/22 56/3 56/4 59/12 60/5 73/13 81/15 86/21 87/8 88/2 88/22 88/25 89/14 89/16 89/20 90/12 90/16 91/8 95/4
**maybe [2]** 7/3 95/25
**me [51]** 7/20 8/7 8/14 8/15 12/1 12/4 12/24 12/25 13/23 16/11 16/13 16/15 16/18 16/22 17/7 17/9 19/20 19/21 21/5 24/6 33/7 33/16 34/22 51/14 52/20 53/1 53/20 55/7 57/4 61/13 62/8 64/7 68/18 69/1 71/1 71/25 72/24 73/2 73/6 73/19 73/20 77/9 79/20 81/11 87/20 89/6 89/20 89/23 90/4 90/6 92/18
**mean [10]** 8/3 18/5 42/8 49/3 52/23 67/17 78/22 81/3 81/11 84/3
**meaning [3]** 33/5 53/4 54/6
**meaningful [1]** 27/8
**meanings [1]** 5/6
**means [31]** 7/23 8/11 8/13 9/4 14/5 24/17 26/19 31/19 32/4 32/8 32/11 32/13 32/15 32/17 32/19 33/1 45/4 46/19 47/5 47/9 47/24 47/25 61/20 61/21 75/24 75/24 78/8 79/9 79/21 89/16 90/5
**meant [5]** 9/13 11/14 12/13 87/24 93/13
**media [2]** 88/23 88/25
**medical [2]** 43/2 47/13
**meeting [1]** 25/9
**meets [1]** 46/25
**member [2]** 89/22 89/24
**members [4]** 35/21 87/3 89/21 94/13
**memory [9]** 21/6 21/7
21/16 21/18 24/4 24/4 24/4 21/16 27/6 27/13 27/25 40/9
**mental [1]** 30/5
**merely [3]** 22/5 28/22 44/19
**merits [1]** 89/25
**met [4]** 10/11 10/18 12/15 12/20
**metro [1]** 38/24
**metro-ed [1]** 38/24
**mic [1]** 18/14
**Michael [1]** 1/17
**michael.dilorenzo [1]** 1/20
**middle [2]** 18/3 63/21
**might [2]** 25/17 25/20
**military [1]** 62/17
**mind [6]** 30/22 38/16 84/1 88/4 90/2 93/20
**mindful [1]** 88/13
**mine [2]** 62/25 63/23
**minimal [1]** 54/19
**minor [5]** 54/22 55/3 55/5 55/6 55/8
**minute [11]** 16/2 26/24 38/18 39/21 50/19 50/23 58/14 60/11 61/12 80/5 82/24
**minutes [11]** 7/4 7/4 17/25 18/18 18/17 38/18 44/2 44/3 48/6 48/25 81/12
**misbranded [1]** 8/20
**misbranding [1]** 8/21
**misdemeanor [7]** 54/3 54/18 54/19 54/24 55/6 55/10 55/11
**missed [1]** 77/7
**mission [20]** 35/23 35/23 35/24 35/25 36/15 37/21 37/22 38/13 48/4 50/9 50/10 50/10 50/18 51/3 65/16 66/4 85/2 85/2 86/14 88/13
**misstatement [1]** 52/2
**Misstatements [1]** 40/8
**misstates [2]** 64/21 78/18
**mistake [4]** 28/1 65/14 70/22 72/22
**mistrial [3]** 51/18 52/5 53/6
**misunderstanding [1]**

misunderstanding...
[1] 28/1
modified [1] 32/1
modifies [1] 87/22
moment [4] 37/24
51/15 60/3 60/25
momento [2] 57/1
59/1
money [1] 75/12
Moore [6] 4/7 35/4
91/24 92/10 94/12
95/12
more [18] 7/2 11/3
12/15 18/7 23/3 23/7
23/17 25/18 34/17 54/7
55/6 59/14 78/16 79/2
82/10 82/10 89/21
90/21
morning [5] 4/22 6/22
80/23 92/15 95/8
most [5] 10/13 38/23
52/6 55/2 70/6
mostly [1] 36/22
motion [17] 4/9 9/4
11/25 12/4 13/7 14/4
15/10 15/12 15/22 16/3
16/6 51/12 51/18 52/5
52/18 53/3 53/6
motions [1] 4/2
motivated [1] 28/11
motive [4] 29/5 29/6
29/7 29/8
mouthing [1] 39/16
move [13] 5/13 13/8
13/19 37/23 37/24
50/24 57/4 64/5 64/20
64/21 64/22 73/9 82/20
moves [2] 4/14 15/20
moving [2] 49/4 85/10
Mr [4] 3/3 3/4 15/1
82/17
Mr. [48] 4/8 4/10 5/21
5/23 6/10 7/9 7/12 7/14
9/25 11/24 12/25 14/5
14/10 15/6 15/8 22/10
22/18 22/21 22/24 23/2
23/13 28/25 29/3 29/10
30/2 30/11 30/22 32/20
32/22 34/11 51/20
52/10 60/23 61/14 65/9
65/10 65/24 66/6 66/14
66/19 74/7 74/11 74/16
74/24 75/21 77/19 87/6

Mr. DiLorenzo [1]
52/10
Mr. Dunn [31] 5/21
5/23 6/10 7/9 7/12 7/14
12/25 14/5 14/10 15/8
22/18 22/21 22/24 23/2
28/25 29/3 29/10 30/2
30/11 30/22 51/20
60/23 61/14 65/9 65/10
65/24 66/19 74/16
74/24 75/21 77/19
Mr. Dunn's [10] 22/10
23/13 32/20 32/22 66/6
66/14 74/7 74/11 87/6
87/8
Mr. Parron [2] 9/25
11/24
Mr. Silverman [4] 4/8
4/10 15/6 34/11
Ms [1] 3/4
Ms. [14] 4/7 4/8 4/8
13/16 14/25 15/6 15/9
18/23 19/1 35/4 91/24
92/10 94/12 95/12
Ms. Gatto [2] 4/8 15/6
Ms. Moore [6] 4/7 35/4
91/24 92/10 94/12
95/12
Ms. Schoff [6] 4/8
13/16 14/25 15/9 18/23
19/1
much [12] 15/7 24/19
29/15 55/22 65/15
76/14 76/23 78/16
91/19 91/21 91/23 92/9
multiple [2] 8/16 72/25
must [25] 22/6 23/7
23/7 25/5 25/7 25/24
26/4 26/12 26/15 29/1
29/3 29/15 31/6 32/2
62/5 75/10 75/20 87/13
87/15 87/16 87/24 89/1
89/2 89/11 90/24
mustard [1] 56/8
mutual [1] 88/17
my [31] 16/14 17/6
17/6 17/11 19/7 19/9
19/14 19/22 20/6 27/14
35/19 39/7 61/12 66/1
68/3 69/2 71/7 71/7
76/23 77/17 79/8 79/9
81/22 82/12 89/6 91/13
92/3 93/14 94/13 94/1
94/22

N

nail [1] 71/20
name [3] 23/9 61/12
91/6
national [1] 20/20
natural [3] 30/15 42/14
nature [2] 25/2 25/6
navigate [1] 9/23
near [1] 56/16
nearby [1] 48/13
nearly [1] 64/8
necessarily [3] 13/25
25/13 88/22
necessary [6] 23/3
30/22 33/6 33/8 82/3
89/19
need [12] 6/19 44/19
46/21 66/1 69/21 70/7
76/4 91/8 91/18 93/1
93/4 95/15
needed [1] 43/2
needing [1] 47/13
needs [2] 93/5 95/11
negligent [1] 43/25
neighborhood [4]
37/23 85/19 85/21
85/22
neither [1] 74/23
never [11] 22/17 60/13
60/14 63/2 75/2 77/1
77/2 83/18 89/24 90/2
90/5
new [2] 2/7 73/18
newspaper [1] 88/23
next [3] 18/10 78/21
83/15
Nicholas [1] 2/9
NICHOLS [6] 1/13
61/21 62/4 75/10 75/20
75/23
Nick [1] 61/13
night [22] 11/3 11/6
11/8 11/9 11/17 11/18
11/23 43/9 43/19 50/17
51/2 60/23 64/6 65/24
67/8 67/13 70/7 70/25
73/24 74/5 74/24 82/17
nightclub [3] 5/24
66/18 74/16
no [66] 1/5 5/11 6/24
7/7 7/13 10/12 17/10
18/6 20/16 24/12 26/8
28/21 30/8 42/3 44/6

myself [1] 66/3

N

nail [1] 71/20
name [3] 23/9 61/12

44/10 44/23 50/5 50/11
51/22 51/25 52/1 55/19
57/14 58/1 59/1 59/8
60/12 63/18 64/5 64/23
65/14 65/20 65/25 67/1
67/3 70/18 70/21 72/21
72/24 73/14 73/18 74/4
76/8 76/18 77/1 77/16
77/16 77/19 78/12 79/2
82/1 82/1 82/14 83/10
84/15 84/15 85/22
88/10 89/22 93/4 93/5
93/10 94/4 94/6 95/24
nobody [2] 42/5 95/11
Nodded [1] 59/11
non [1] 6/12
non-criminal [1] 6/12
none [1] 10/14
normal [2] 76/17 94/14
normally [1] 82/12
not [222]
not -- it's [1] 48/25
not -- Your Honor [1]
55/3
note [3] 19/20 89/20
89/23
notebook [1] 91/6
notebooks [1] 21/10
notes [6] 21/10 21/13
21/16 21/17 51/24
94/17
notetakers' [1] 21/17
nothing [10] 16/8
34/24 49/7 49/7 77/13
81/12 87/19 87/21
87/22 95/21
notice [3] 37/17 40/24
42/4
noticed [2] 37/14
37/16
notwithstanding [1]
8/4
November [1] 1/7
now [40] 4/5 9/2 12/1
13/15 13/21 15/10
15/13 18/16 19/2 19/3
19/3 31/16 33/22 38/21
45/9 46/3 47/1 49/20
52/6 53/10 53/14 59/7
60/3 61/18 67/5 67/20
69/3 70/4 72/3 74/19
76/25 80/20 84/12
85/17 85/17 91/3 91/17
93/19 94/15 94/18
Now -- hold [1] 72/3

## N

**nowhere [1]** 61/16
**nsilverman [1]** 2/11
**number [5]** 25/14
25/18 25/19 41/10 91/7
**nutshell [1]** 43/9
**NW [3]** 1/19 2/10 2/16
**NY [2]** 2/4 2/7
**NYC [1]** 2/4

## O

**oath [1]** 51/6
**object [5]** 6/4 26/1
50/11 53/24 57/21
**objected [1]** 25/21
**objecting [2]** 25/23
81/20
**objection [18]** 26/4
26/11 40/5 40/6 48/19
48/19 57/10 59/6 64/18
66/21 66/24 78/17 80/6
80/11 80/12 83/12
85/25 94/2
**objections [4]** 25/24
34/13 34/22 93/18
**observe [1]** 27/8
**observed [1]** 26/21
**obstructing [2]** 32/16
47/24
**Obviously [5]** 11/25
12/6 40/13 93/14 94/7
**occur [1]** 46/16
**occurred [5]** 45/5 45/6
45/12 82/14 82/17
**off [12]** 6/11 18/14
39/16 48/6 48/8 49/12
49/21 57/4 70/14 73/16
74/7 92/18
**offended [6]** 56/20
56/25 62/23 63/3 63/8
64/3
**offense [39]** 8/12 8/13
22/21 27/18 30/23 31/5
32/24 43/12 43/15 46/4
47/2 53/25 54/1 54/4
54/6 54/10 54/12 54/17
54/20 54/22 54/23
54/24 55/4 55/5 55/7
55/7 55/9 55/10 55/12
55/12 55/18 55/20
55/22 55/24 55/24 60/4
76/18 76/20 87/11
**offenses [2]** 29/5 60/9
**offensive [12]** 32/9

47/10 47/11 47/18
58/24 61/22 62/1 63/10
63/11 63/15 83/3 83/5
**offensiveness [1]**
62/23
**offer [1]** 68/8
**offered [1]** 25/22
**offering [1]** 70/19
**office [5]** 56/23 58/12
60/2 63/10 91/20
**officer [29]** 6/17 28/23
31/1 31/8 31/8 31/19
33/2 33/10 36/24 37/3
42/7 43/16 44/12 49/13
49/22 51/1 51/23 73/23
82/22 82/23 83/16
83/17 84/8 84/9 85/1
85/7 85/8 85/9 93/23
**Officer Field [1]** 85/8
**Officer Lairmore [2]**
37/3 51/23
**Officer Lairmore's [1]**
73/23
**Officer Trejo [1]** 42/7
**officer's [3]** 28/17
28/19 82/18
**officers [53]** 7/3 7/11
7/12 13/2 36/13 36/21
37/12 38/4 38/4 38/23
38/24 38/24 38/25 39/3
39/15 39/20 39/20
40/19 40/20 40/25 41/2
43/6 43/8 44/1 46/18
48/2 48/12 48/15 48/22
49/11 49/21 49/24
50/14 50/17 50/24 65/9
65/14 65/15 66/17 74/6
74/15 78/8 83/16 84/3
84/14 84/23 85/5 85/7
85/10 85/10 86/9 86/9
86/11
**officers' [1]** 38/13
**official [14]** 2/15 6/11
11/16 11/18 31/3 31/15
32/25 45/2 45/7 45/13
65/21 85/18 93/25 97/3
**often [1]** 90/21
**Oh [2]** 54/14 66/25
**okay [31]** 4/23 9/11
10/22 15/9 16/11 16/24
17/2 17/14 17/22 18/12
19/12 34/5 34/8 34/23
51/14 52/17 53/16
53/22 55/21 56/1 56/1
57/11 72/2 72/5 73/10

73/21 77/1 93/7 93/10
94/25 95/25
**old [1]** 63/21
**once [1]** 63/2
**one [53]** 8/8 8/18 8/18
8/21 9/12 10/19 11/10
11/11 11/19 12/3 12/15
15/14 19/5 23/6 24/18
25/1 25/18 42/3 42/13
45/10 46/5 46/6 46/10
51/8 51/15 55/14 56/21
58/20 61/2 61/22 62/9
62/24 63/6 65/7 68/15
73/18 76/6 77/11 80/8
80/9 82/8 84/11 85/6
86/21 86/23 87/4 88/22
89/21 90/16 91/9 92/11
93/5 93/13
**ones [4]** 10/16 10/17
10/21 64/14
**oneself [1]** 32/12
**onion [1]** 56/8
**only [25]** 4/21 5/8 8/23
9/7 11/1 12/3 21/13
21/18 22/2 23/3 25/7
37/24 45/6 46/6 46/10
71/23 72/14 74/5 75/8
75/21 76/6 83/3 86/23
87/25 88/4
**open [4]** 90/1 90/6
94/24 95/12
**opened [1]** 5/8
**opening [3]** 5/20 35/19
51/5
**operation [1]** 83/23
**opinion [6]** 21/3 37/2
68/3 68/9 87/20 90/13
**opinions [3]** 20/11
35/9 83/15
**opportunity [3]** 27/8
73/1 84/3
**oppose [5]** 5/10 11/4
32/11 32/13 60/23
**opposed [7]** 31/11
33/2 33/9 45/3 45/4
46/8 80/20
**opposing [9]** 5/15
10/24 10/25 12/10 13/5
30/25 31/25 60/19
93/22
**opposite [2]** 25/20
63/4
**opposition [7]** 32/21
59/24 61/7 66/15 74/12
83/8 87/7

**orally [1]** 30/1
**order [4]** 4/22 6/11
81/7 87/14
**ordered [1]** 26/11
**orderly [1]** 19/23
**orders [1]** 64/14
**ordinarily [1]** 30/7
**ordinary [1]** 33/6
**organize [1]** 88/16
**orientation [1]** 20/22
**origin [1]** 20/21
**other [45]** 6/14 7/8
7/20 8/1 8/2 8/6 8/8
9/12 10/17 14/18 16/16
20/23 24/3 25/20 25/22
27/12 27/24 28/7 28/18
30/12 36/13 37/12
38/25 41/2 41/18 42/1
42/3 50/13 50/13 50/16
59/14 60/7 60/17 61/3
71/19 72/7 75/15 83/6
86/8 86/9 87/15 89/5
89/19 91/9 95/4
**others [6]** 19/19 46/12
47/3 48/12 51/25 68/8
**otherwise [3]** 6/4
60/14 84/16
**our [11]** 17/25 18/5
18/10 18/22 52/8 60/24
61/7 64/16 75/16 76/15
83/8
**ourselves [1]** 61/12
**out [25]** 5/22 13/22
24/7 24/11 36/22 37/9
37/9 38/19 39/1 39/2
39/8 44/17 45/16 51/3
57/3 57/5 60/25 63/22
71/20 76/4 77/3 80/19
83/22 91/6 91/21
**outcome [1]** 27/10
**outmost [2]** 48/23
49/6
**outrageous [3]** 57/20
57/25 62/20
**outset [1]** 90/16
**outside [3]** 16/1 62/15
94/19
**over [13]** 24/18 38/14
38/17 38/24 39/10
39/11 48/25 53/20 54/6
65/12 70/23 78/2 88/9
**overruled [6]** 40/12
48/20 80/7 83/13 86/1
86/3
**own [10]** 14/11 14/23

**O**

own... **[8]** 21/6 21/14 21/16 21/17 33/3 40/21 45/3 72/23

**P**

p.m **[10]** 34/2 34/2 34/7 35/2 35/2 92/6 92/6 94/11 94/11 96/1
page **[5]** 3/2 79/9 79/21 87/5 91/6
Page 27 **[1]** 79/9
painful **[1]** 63/14
pant **[1]** 62/13
parcel **[1]** 61/2
Parron **[3]** 1/18 9/25 11/24
parse **[1]** 76/4
part **[10]** 9/9 9/9 26/8 36/1 37/6 37/10 61/2 61/7 78/24 83/18
particular **[5]** 12/7 12/24 19/16 24/19 58/7
parties **[7]** 16/13 16/15 16/21 18/7 33/21 34/19 92/22
parties' **[1]** 19/11
partisans **[1]** 90/22
partner **[1]** 85/8
parts **[2]** 65/4 66/10
party **[5]** 25/25 34/22 45/5 92/17 93/18
pass **[4]** 83/10 83/12 84/2 84/5
past **[1]** 40/19
patch **[1]** 63/11
patrol **[2]** 39/16 85/16
patrols **[1]** 83/20
patrons **[1]** 40/3
people **[23]** 7/16 12/8 20/18 27/12 37/16 37/21 39/1 39/25 40/3 40/4 40/23 40/24 41/3 42/1 42/3 42/4 52/15 64/13 67/9 72/10 80/10 92/8 95/15
perception **[1]** 28/2
perfectly **[1]** 51/23
perform **[1]** 85/18
performance **[7]** 31/2 31/3 31/15 32/25 44/13 45/7 93/25
performing **[4]** 11/15 11/16 11/18 65/15

performing **[1]** 11/15
perhaps **[2]** 17/24 34/17
period **[1]** 48/25
permit **[1]** 73/4
permitted **[3]** 21/9 21/21 24/21
persists **[2]** 60/2 60/2
person **[20]** 22/6 23/16 24/6 30/9 30/15 31/22 32/9 33/7 33/9 35/16 35/16 47/11 47/18 75/24 78/24 79/10 83/4 89/17 90/3 92/11
personal **[10]** 20/11 20/15 20/20 20/23 21/17 33/3 35/13 45/3 45/6 65/23
pharmaceutical **[1]** 8/20
phone **[4]** 57/11 66/20 80/13 91/7
photograph **[4]** 41/8 84/13 84/19 86/8
physical **[22]** 30/5 31/20 31/20 32/8 46/20 46/20 46/21 47/9 78/9 78/9 78/12 78/12 78/13 78/13 79/17 79/17 80/1 81/25 82/2 82/2 82/4 82/6
physically **[3]** 29/20 42/7 64/3
pick **[1]** 9/3
picked **[1]** 34/21
picture **[1]** 58/8
piece **[1]** 45/9
piercing **[1]** 56/13
pitch **[1]** 83/1
place **[3]** 10/8 20/16 81/23
placed **[2]** 61/23 62/2
places **[3]** 32/6 47/7 79/24
Plaintiff **[2]** 1/6 1/17
plan **[2]** 13/11 19/5
planning **[1]** 49/10
play **[6]** 26/8 39/7 50/1 68/12 74/19 75/12
played **[9]** 38/11 39/4 41/9 41/22 41/24 50/2 52/7 72/13 74/20
playing **[1]** 53/7
please **[8]** 19/20 60/22

75/6 75/8 80/13 88/4 91/19 92/9
plenty **[1]** 9/20
plush **[1]** 56/22
point **[16]** 38/18 42/9 42/23 48/16 49/2 49/4 49/13 50/21 50/21 57/5 60/25 62/9 70/9 71/24 73/20 93/12
pointed **[1]** 7/20
pointing **[4]** 40/20 42/9 44/6 52/13
police **[15]** 6/11 6/13 6/17 29/13 35/22 36/12 36/15 66/6 74/8 84/8 84/9 84/14 84/17 84/25 85/9
polite **[1]** 60/5
politely **[1]** 45/19
politics **[1]** 83/9
portions **[1]** 19/17
position **[2]** 46/11 90/18
possibility **[2]** 20/13 91/10
possible **[2]** 33/12 91/8
post **[3]** 14/4 50/25 66/13
post-defense-case **[1]** 14/4
posted **[1]** 48/2
potential **[1]** 86/17
powerful **[1]** 23/7
practice **[3]** 9/18 92/3 94/14
pre **[1]** 34/13
pre-instruction **[1]** 34/13
precinct **[2]** 66/6 74/8
precisely **[2]** 70/25 71/17
prefer **[1]** 17/3
preference **[2]** 17/11 17/11
preferences **[1]** 20/15
prejudice **[1]** 28/12
prejudiced **[1]** 28/10
prejudices **[4]** 20/11 20/15 26/25 86/18
prejudicial **[1]** 53/3
preparation **[1]** 25/12
prepared **[1]** 63/2
presence **[4]** 7/2 16/1 64/16 64/24

present **[11]** 4/4 7/3 30/1 31/24 40/12 47/7 76/1 76/8 79/12 79/23 93/5
presentation **[1]** 34/13
presented **[6]** 12/23 24/24 25/7 86/20 86/20 89/3
preserved **[1]** 34/23
preside **[1]** 88/9
pressured **[1]** 29/20
presumed **[1]** 22/13
presumption **[1]** 22/14
pretty **[10]** 5/11 35/20 35/25 43/10 43/22 51/24 76/23 85/21 85/22 95/16
preventing **[1]** 11/17
previous **[1]** 27/20
previously **[2]** 4/2 52/9
pride **[3]** 50/7 50/8 90/16
primary **[1]** 36/14
probability **[1]** 28/4
probable **[2]** 23/5 30/15
probably **[1]** 16/20
problem **[7]** 16/22 17/7 17/10 50/11 54/11 75/3 75/4
procedures **[1]** 92/22
proceed **[4]** 13/9 35/5 59/12 90/22
proceedings **[4]** 1/12 2/19 96/1 97/5
process **[3]** 73/4 86/16 86/16
produce **[1]** 22/19
produced **[1]** 2/19
productive **[1]** 92/5
proffer **[1]** 72/24
proffering **[1]** 68/19
profile **[1]** 71/9
profiled **[1]** 71/2
profiling **[7]** 67/9 67/16 69/8 69/11 72/7 72/10 73/5
progress **[3]** 18/21 32/15 47/24
promised **[1]** 29/21
promote **[1]** 88/20
promptness **[1]** 91/22
proof **[8]** 4/20 22/12 23/7 61/16 62/15 68/8 75/15 75/19

**P**

proper [3] 25/11 25/23 71/18
proportionate [1] 59/19
proposed [1] 80/17
proposition [1] 62/20
prosecuted [1] 59/3
prosecution [1] 53/10
protected [1] 61/10
Protection [7] 31/8 35/22 43/18 45/18 45/23 57/8 83/17
prove [19] 5/18 6/19 8/3 12/8 12/14 22/18 22/23 23/3 23/21 23/22 29/6 45/10 46/10 47/2 62/5 62/23 75/10 75/20 87/24
proved [5] 26/13 29/9 30/8 30/21 31/6
proven [11] 4/15 5/1 5/6 10/7 10/9 12/18 21/22 22/16 22/20 32/23 87/10
proves [1] 63/4
provide [6] 19/7 19/14 32/22 46/4 70/3 87/9
provided [4] 7/7 78/5 87/17 94/9
provides [3] 44/14 47/4 47/23
providing [2] 93/14 93/16
proving [2] 23/2 24/17
psychologically [1] 29/20
public [1] 35/15
publicity [1] 89/4
publicly [1] 37/19
pull [3] 49/21 70/23 84/11
punishable [1] 60/9
punishment [3] 33/12 33/18 54/7
purported [2] 59/3 65/16
purpose [1] 11/17
purposes [2] 34/14 40/12
pursuant [1] 13/20
pursued [4] 43/6 43/6 43/7 49/24
put [17] 5/19 6/5 7/12 10/5 14/1 14/8 16/12 42/16 58/10 63/2 63/9 63/11 68/15 69/18 69/19 81/3 86/18
put -- I [1] 81/3
putting [5] 7/9 43/7 56/14 57/16 86/21

**Q**

question [30] 9/12 9/16 13/12 13/14 13/23 16/13 17/6 17/6 17/13 25/5 25/22 26/5 26/6 26/8 33/12 44/7 44/10 44/15 50/5 50/6 54/13 54/15 68/4 68/23 69/2 70/10 71/2 71/7 71/7 92/21
questionable [1] 56/14
questioning [2] 30/1 30/2
questions [7] 9/22 19/19 19/24 22/3 25/1 26/4 83/18
quick [1] 92/21
quickly [2] 36/23 95/17
quintessential [1] 6/8
quite [2] 44/18 60/10
quote [2] 68/16 78/22

**R**

race [1] 20/20
racial [1] 67/15
racially [2] 67/9 72/10
racists [1] 67/10
radio [1] 88/23
raid [7] 5/23 66/18 67/2 71/15 72/5 74/16 74/25
raise [1] 92/17
raising [2] 7/9 52/19
ran [3] 6/11 43/7 49/22
Rather [1] 25/15
re [3] 41/20 42/7 49/1
re- engage [1] 42/7
re-engages [2] 41/20 49/1
reach [2] 25/3 88/13
reachable [3] 92/9 93/6 95/14
reached [1] 90/5
reaches [1] 39/1
reaching [4] 12/22 24/23 25/8 88/6
react [1] 38/6
reaction [3] 37/7 39/22 59/17
read [3] 88/25 89/1 93/19
reading [1] 94/20
ready [3] 13/9 17/18 95/1
real [2] 9/22 59/17
real-world [1] 59/17
realism [1] 9/21
reality [1] 36/11
really [11] 49/3 61/4 63/20 71/22 72/20 73/8 73/16 73/24 74/18 83/23 84/5
reason [16] 5/25 7/13 16/5 23/9 23/10 23/20 27/7 29/2 49/20 60/1 68/14 69/3 70/25 95/2 95/5 95/15
reasonable [58] 4/16 4/17 4/18 5/2 5/12 5/19 10/13 11/21 12/14 12/14 12/19 12/19 12/24 21/23 22/16 22/20 22/24 23/2 23/8 23/8 23/14 23/15 23/16 23/23 24/4 26/14 29/9 30/21 31/7 32/2 32/7 32/9 47/8 47/11 47/18 61/16 61/24 62/2 62/5 62/6 62/24 67/12 75/5 75/11 75/13 75/15 75/19 75/21 77/14 79/24 80/2 80/8 81/7 81/23 82/3 82/5 83/4 87/24
reasonableness [1] 28/3
reasons [1] 29/3
reasserts [1] 34/12
rebut [1] 34/4
rebuttal [10] 3/4 18/3 18/9 60/21 60/21 77/2 77/9 77/23 82/20 86/6
recall [2] 27/17 37/8
recalled [1] 26/21
receive [2] 21/25 28/16
received [4] 30/12 30/18 58/20 58/21
recess [7] 16/21 16/23 19/10 19/11 35/2 70/17 94/11
recollections [1] 27/16
record [14] 4/6 4/19 6/5 15/5 15/23 34/2 34/3 35/3 59/10 67/4 67/13 67/14 72/10 97/5
recorded [4] 2/19 29/13 29/13 30/3
recording [1] 87/25
recruit [1] 52/1
refer [4] 19/15 19/16 54/2 54/16
reference [1] 21/5
referenced [1] 83/15
referring [2] 54/4 54/20
reflected [1] 72/8
reflection [2] 23/17 72/4
reflects [1] 9/21
refocuses [1] 41/3
refuse [1] 20/2
regarding [2] 88/11 88/19
regardless [1] 20/19
related [1] 53/7
relates [1] 19/13
relative [1] 12/2
relatively [5] 33/23 54/22 54/23 55/1 55/6
release [4] 92/6 92/14 94/16 95/3
relevant [2] 30/20 81/16
relief [2] 52/9 53/7
religion [1] 20/21
rely [1] 21/16
remain [1] 66/4
remainder [1] 52/8
remained [1] 91/2
remaining [2] 9/6 74/5
remains [2] 22/14 64/15
remember [4] 60/22 65/9 85/6 90/22
remind [2] 88/21 89/10
reminded [1] 63/9
reminder [2] 69/20 87/4
remove [2] 93/20 94/7
removed [1] 67/21
rendered [1] 19/21
renew [2] 15/9 52/8
repeatedly [1] 54/4
repetitive [1] 77/16

# R

**replace [1]** 21/14
**replaces [2]** 87/21
87/22
**report [1]** 91/20
**reported [3]** 2/15 4/3
97/9
**Reporter [2]** 2/15 97/3
**reports [2]** 88/22 89/2
**represent [2]** 61/14
87/13
**representation [2]**
68/20 69/4
**representations [1]**
67/24
**represents [1]** 25/25
**requesting [1]** 9/10
**require [2]** 22/18
24/22
**required [15]** 23/20
29/6 30/14 31/21 46/21
47/14 52/5 78/10 78/14
79/15 79/16 79/18 80/2
80/2 81/25
**requires [2]** 8/7 83/3
**research [2]** 89/16
91/14
**researching [1]** 94/20
**resist [5]** 5/10 11/1
11/2 32/11 60/23
**resistance [2]** 32/21
87/7
**resisted [3]** 31/11 33/9
46/8
**resisting [7]** 5/15
12/10 13/4 30/24 31/25
60/19 93/22
**resolve [1]** 12/4
**respect [6]** 37/2 38/9
43/22 51/2 88/17 93/21
**respectful [3]** 17/14
34/1 60/6
**respectfully [1]** 55/2
**respecting [1]** 37/2
**respond [3]** 9/25
84/24 84/24
**response [5]** 50/6
52/10 68/22 80/24
85/22
**responsibility [3]** 20/6
21/5 26/1
**rest [3]** 12/17 15/18
91/2
**restaurant [2]** 36/20

38/19
**restrain [1]** 40/25
**restraint [9]** 36/25
38/8 39/23 41/17 42/12
48/23 49/18 50/15 51/1
**rests [5]** 13/20 15/23
16/4 18/25 33/16
**result [3]** 6/16 27/25
51/8
**resume [1]** 73/13
**retire [1]** 89/9
**retiring [1]** 90/19
**return [5]** 19/20 86/24
87/14 88/8 93/1
**reus [1]** 80/21
**reveal [1]** 90/3
**revealing [1]** 59/19
**review [2]** 66/8 66/9
**reviewing [1]** 90/20
**reward [1]** 29/21
**ridiculous [1]** 58/12
**rifle [1]** 62/17
**right [30]** 7/5 7/22 9/11
9/11 14/8 14/15 15/1
28/25 29/1 35/13 35/13
35/14 35/15 37/2 44/5
46/9 60/5 61/3 63/16
67/20 69/3 71/8 72/12
72/21 74/13 81/8 81/11
81/24 83/24 93/19
**rights [5]** 29/25 38/9
60/24 61/8 61/9
**riled [2]** 40/3 40/4
**risk [1]** 77/15
**role [1]** 36/14
**room [10]** 39/7 50/4
88/1 88/8 89/9 90/13
90/20 91/25 93/3 94/24
**RPR [1]** 2/15
**rudeness [1]** 60/8
**rule [16]** 4/8 4/15 9/4
11/25 12/4 13/7 13/20
14/4 15/9 15/12 15/20
16/3 16/6 19/23 69/20
69/24
**Rule 29 [1]** 14/4
**ruled [1]** 26/6
**rules [2]** 73/25 88/11
**ruling [2]** 18/1 80/23
**ruling -- is [1]** 18/1

# S

**Sabrina [3]** 2/3 2/3
61/12
**sabrinashroff [1]** 2/5

37/6 37/6
37/23 44/24 45/20 59/4
62/16 62/17 62/18
65/16 85/12 85/19
85/21 85/22 85/24
85/24
**safety [1]** 36/1
**said [43]** 7/7 9/14 9/15
20/18 21/1 23/1 33/21
37/13 37/17 38/15 44/9
45/20 47/1 47/20 48/7
48/10 49/6 49/20 50/17
51/19 53/12 53/15
53/17 55/6 67/6 67/24
68/6 68/17 69/4 70/5
70/14 72/5 75/7 76/24
77/4 77/5 81/12 82/25
83/7 83/15 83/16 83/17
95/10
**same [9]** 8/11 16/5
28/19 38/8 48/19 51/6
75/12 75/14 79/21
**sandwich [35]** 6/10
10/25 11/6 11/7 11/14
13/2 35/17 42/24 46/23
47/17 47/17 49/10
50/12 56/6 56/6 56/10
56/21 56/22 59/18
60/11 62/11 62/18 64/9
65/7 65/23 65/25 73/23
76/10 76/18 80/3 80/4
81/6 81/12 81/13 83/1
**sandwich-thrower [1]**
65/7
**sandwiches [1]** 60/6
**sat [2]** 59/20 65/10
**satisfied [2]** 12/13
15/1
**save [1]** 15/16
**saved [1]** 58/21
**saw [14]** 24/7 24/10
24/12 24/12 36/20 37/8
37/9 37/14 37/24 38/10
49/10 49/11 71/14
82/19
**say [24]** 10/8 10/10
23/13 35/19 45/15
49/25 50/4 52/12 53/21
55/5 55/11 55/12 55/13
67/2 72/1 73/2 73/17
76/17 77/10 77/13
85/20 85/23 93/21
94/25
**saying [13]** 29/18 49/9
55/17 56/19 61/3 65/19

71/3 73/3 78/13
80/25 81/1 84/15
**says [15]** 7/21 24/16
41/14 42/2 42/17 48/18
53/10 54/5 66/19 71/18
73/5 74/16 78/24 79/10
79/12
**scared [1]** 64/4
**scene [8]** 7/7 40/25
65/9 65/13 65/13 84/4
84/14 84/18
**scheme [1]** 33/23
**Schoff [6]** 4/8 13/16
14/25 15/9 18/23 19/1
**scientific [1]** 23/22
**scope [2]** 33/1 44/20
**screaming [2]** 81/14
82/8
**screen [8]** 57/15 58/18
67/23 69/3 70/4 71/6
71/14 72/6
**SEAN [1]** 1/8
**searching [1]** 7/8
**seats [3]** 91/1 91/2
91/4
**second [15]** 13/18
13/19 18/5 19/5 31/10
44/4 45/9 45/12 56/23
57/9 67/22 68/24 71/9
79/7 94/22
**seconds [2]** 66/1 74/1
**Section [1]** 6/1
**see [46]** 8/13 8/17 8/20
34/8 35/1 37/8 38/17
39/3 39/5 39/9 39/17
39/19 39/19 39/23 40/9
40/10 40/10 40/18
40/21 41/3 41/8 41/10
41/11 41/16 42/6 42/7
42/19 42/22 48/7 51/25
52/1 52/12 52/16 62/11
62/12 70/4 73/8 74/1
79/9 79/13 84/19 84/19
92/16 93/11 95/4 95/25
**seem [2]** 8/7 54/7
**seemed [1]** 38/22
**seems [10]** 12/1 12/24
16/11 34/22 52/20 53/1
71/24 72/24 73/6 81/11
**seen [8]** 8/19 9/18
11/5 12/23 24/8 24/14
39/8 40/13
**sees [2]** 49/7 82/25
**select [2]** 88/9 88/11
**selected [1]** 91/1

**S**

**selecting [2]** 25/2 88/15
**selection [1]** 91/1
**self [1]** 28/11
**self-interest [1]** 28/11
**send [2]** 19/20 89/20
**sending [1]** 88/1
**sense [7]** 16/20 18/1 63/5 64/11 76/13 76/15 90/16
**sensibilities [1]** 47/19
**sensibility [2]** 32/10 47/11
**sensitivities [1]** 83/4
**sentence [5]** 33/15 54/20 55/14 55/15 79/10
**separately [1]** 69/14
**serious [4]** 54/3 54/7 55/18 55/24
**seriously [1]** 51/6
**serve [2]** 35/24 36/1
**service [1]** 91/19
**serving [1]** 35/23
**set [1]** 74/1
**seven [8]** 12/13 18/17 44/1 44/3 48/5 50/19 50/23 80/5
**seven-minute [3]** 50/19 50/23 80/5
**Seventh [1]** 6/6
**several [4]** 5/6 46/5 48/14 80/17
**sex [1]** 20/21
**sexual [1]** 20/22
**share [1]** 77/9
**shared [1]** 69/9
**she [17]** 25/25 27/9 28/22 37/13 37/13 37/14 37/16 37/17 37/17 37/20 37/23 38/15 67/2 77/5 85/7 85/14 92/10
**shelf [2]** 56/23 63/11
**shifts [1]** 22/17
**shirt [3]** 39/9 39/9 62/13
**short [3]** 33/23 61/11 75/7
**shorter [1]** 8/6
**shorthand [1]** 2/19
**should [48]** 17/18 19/20 20/1 20/13 20/24

21/16 21/24 22/8 24/24 25/15 26/7 26/7 26/8 26/18 26/24 28/15 28/17 28/19 28/21 29/12 30/19 33/14 33/17 33/18 34/9 38/21 54/23 60/6 61/4 61/5 63/7 65/14 73/7 76/16 77/4 81/6 87/19 87/21 88/8 88/11 88/24 89/22 90/5 95/19
**should -- and [1]** 73/7
**shoulder [1]** 6/17
**shouldn't [2]** 8/8 54/2
**shout [1]** 63/22
**show [9]** 33/6 33/8 37/1 38/8 39/22 40/25 45/11 65/12 85/3
**showed [5]** 36/25 50/14 51/1 51/2 65/12
**showing [6]** 10/12 41/17 42/12 49/5 49/18 81/2
**shown [4]** 6/24 28/9 66/13 67/19
**shows [4]** 11/7 57/8 84/16 86/8
**Shroff [4]** 2/3 2/3 3/4 61/13
**side [13]** 25/15 25/18 25/20 25/22 28/11 33/25 42/19 57/7 57/7 72/25 92/11 93/9 95/14
**sides [1]** 80/15
**sidewalk [1]** 39/17
**signed [2]** 89/21 89/23
**significance [1]** 59/23
**Silverman [6]** 2/9 4/8 4/10 15/6 34/11 61/14
**similar [1]** 47/25
**Similarly [1]** 22/3
**simple [2]** 5/3 70/10
**simpler [1]** 5/4
**simplicity [1]** 12/2
**simply [1]** 6/12
**Since [2]** 91/2 91/10
**sir [1]** 37/5
**sit [3]** 15/8 77/3 92/8
**sitting [2]** 44/9 95/15
**situated [1]** 65/3
**six [11]** 5/4 7/11 7/18 9/14 9/19 9/20 10/4 12/9 46/9 47/1 47/20
**sleep [2]** 24/12 63/25

**sleeps [1]** 64/2
**sleeved [1]** 62/13
**slide [1]** 84/11
**small [5]** 32/8 41/17 47/10 91/17 94/17
**smaller [3]** 25/18 65/1 65/3
**smart [1]** 77/13
**snippets [1]** 66/9
**snow [4]** 24/7 24/9 24/12 24/12
**snowed [1]** 24/14
**so [75]** 5/13 6/2 8/8 11/1 11/19 11/20 12/16 13/2 13/7 13/9 13/22 14/3 15/5 15/9 16/11 18/5 18/8 18/18 18/23 19/12 21/10 28/13 31/14 32/6 34/2 34/8 38/24 41/1 41/19 42/1 43/20 43/21 45/22 45/25 46/21 47/7 47/19 47/24 49/1 53/5 54/21 56/12 57/24 58/10 61/25 62/7 62/8 64/7 65/2 68/3 71/5 72/2 72/10 73/14 73/15 73/15 73/16 77/25 79/5 79/16 79/24 80/1 81/11 81/16 84/19 85/10 86/9 86/13 93/5 95/5 95/5 95/10 95/13 95/16 95/17
**social [1]** 88/23
**society [1]** 60/6
**soft [1]** 49/17
**soldier's [1]** 56/13
**sole [3]** 20/5 21/4 26/16
**solely [4]** 20/24 33/17 40/15 89/2
**some [31]** 7/17 12/14 16/21 18/1 19/18 23/4 30/2 30/3 31/16 38/6 38/20 38/20 39/10 39/25 40/2 42/9 43/8 44/15 49/4 59/3 60/1 66/7 67/25 73/8 74/10 78/14 83/2 85/7 88/21 93/11 95/5
**somebody [5]** 39/16 44/19 49/10 70/23 76/11
**somehow [5]** 56/7 56/10 61/3 66/4 84/2

**someone [19]** 7/23 11/4 32/5 32/14 35/8 42/15 47/6 50/12 54/5 56/25 56/25 61/20 63/8 75/17 79/23 81/13 82/6 82/7 82/7
**someone's [3]** 30/7 30/9 81/14
**something [14]** 34/9 43/24 63/8 63/14 75/2 77/3 77/4 77/6 77/6 77/7 81/16 86/2 87/4 91/9
**sometimes [2]** 8/17 25/21
**soon [1]** 89/7
**sorely [1]** 60/7
**sorry [3]** 35/24 66/25 79/4
**sort [4]** 66/7 69/18 74/10 83/22
**souvenir [1]** 63/10
**space [2]** 42/16 42/17
**speak [2]** 69/1 88/18
**speaking [3]** 36/21 37/14 94/19
**specific [2]** 83/21 88/11
**specifically [2]** 12/21 56/12
**speculate [2]** 26/5 29/2
**speculation [1]** 23/19
**speech [8]** 32/20 32/22 80/20 81/1 81/2 81/9 87/7 87/9
**spent [2]** 48/5 65/18
**spiked [2]** 47/17 76/19
**spikes [1]** 42/25
**spoke [2]** 18/14 36/23
**spokesperson [1]** 88/10
**spray [1]** 56/7
**sprint [1]** 39/20
**sprinted [2]** 40/19 43/4
**sprinting [2]** 39/23 50/22
**sprints [1]** 39/21
**squadron [1]** 65/11
**Stacy [1]** 4/3
**Stacy Johns [1]** 4/3
**stage [2]** 11/13 11/21
**stand [5]** 7/2 27/4 57/14 57/21 90/14

**S**

standard [5] 10/12
10/18 75/12 75/14
75/16
standing [4] 36/19
41/8 41/16 65/6
stands [2] 27/10 39/8
start [10] 10/2 17/19
33/7 46/14 46/14 61/20
62/8 73/17 78/4 93/4
started [10] 36/21 37/7
37/15 37/15 37/16
48/10 48/10 50/20
53/18 67/2
starting [1] 5/20
starts [1] 39/12
state [2] 30/22 40/6
stated [5] 34/23 54/2
70/7 82/11 82/11
statement [20] 29/14
29/14 29/15 29/16
29/18 29/22 29/25
30/11 52/7 52/8 52/8
66/6 66/11 67/12 69/18
69/20 71/19 72/9 74/7
84/17
statements [6] 22/1
27/20 29/10 44/8 67/23
71/25
STATES [10] 1/2 1/5
1/13 6/22 31/1 31/9
33/11 43/17 60/2 93/24
stating [2] 34/15 55/23
statute [5] 6/6 6/16
7/24 46/7 60/18
statute's [1] 6/21
stenotype [1] 2/19
step [4] 8/15 13/24
41/17 92/18
steps [1] 42/1
STEPTOE [2] 2/6 2/10
steptoe.com [2] 2/8
2/11
stick [1] 57/1
still [9] 8/5 38/22 56/9
61/9 65/15 91/14 94/14
94/21 95/2
stipulate [1] 70/12
stood [1] 83/14
stop [2] 47/24 74/25
stopping [1] 32/15
stops [1] 56/12
straight [1] 18/9
straightforward [3]

35/20 35/20 36/3
strategic [1] 14/18
street [19] 1/19 2/4 7/5
7/5 36/14 37/25 38/1
38/2 38/3 38/10 39/6
39/10 39/13 39/13
39/14 39/17 48/13
52/16 65/7
street -- if [1] 38/3
streets [3] 36/12 44/23
65/4
stretch [2] 71/13 71/16
stricken [2] 26/7 26/11
strike [3] 35/16 64/20
64/21
strikes [3] 42/25 46/23
82/22
strong [6] 35/8 47/22
56/12 83/15 84/1 90/13
stronger [3] 10/17
46/12 47/2
strongly [2] 66/14
74/11
struck [2] 43/3 49/22
stuck [1] 86/12
stuffed [2] 64/2 64/2
submission [1] 61/1
submit [2] 61/15 62/6
subsequent [1] 40/22
Subway [7] 36/20
45/16 49/9 50/21 56/9
76/9 76/10
succeeded [2] 44/9
50/8
such [14] 20/20 21/3
21/22 21/24 23/6 24/1
25/24 28/12 28/15
51/22 88/24 89/2 89/13
89/23
suffer [1] 64/4
suffices [1] 92/12
sufficient [8] 6/3 9/16
31/20 46/20 46/24
47/16 78/9 79/17
suggest [3] 54/21
55/23 87/20
suggested [1] 34/21
suggests [2] 54/3
54/19
summation [9] 17/25
18/2 51/19 53/11 65/18
72/21 73/15 74/9 76/23
summon [1] 91/9
support [3] 36/12
44/24 45/20

supported [1] 28/7
sure [13] 10/20 14/22
17/12 19/9 65/22 72/3
72/19 73/3 73/16 76/25
77/6 80/14 81/22
surely [1] 81/19
surrounding [2] 27/14
30/10
suspect [1] 95/12
suspected [1] 5/23
sustained [3] 26/3
26/10 64/19
swore [1] 86/19
sworn [1] 21/20
system [1] 20/19

**T**

table [2] 71/9 75/3
tackle [1] 49/17
take [22] 5/3 16/20
17/16 18/10 19/9 19/10
20/25 21/10 21/10
32/13 33/22 36/6 41/19
41/25 49/18 51/6 60/25
61/12 66/1 69/22 77/17
77/25
taken [4] 14/17 14/19
21/15 87/19
takes [5] 6/13 41/17
42/24 64/1 64/2
taking [5] 11/4 11/7
16/23 42/4 50/8
talk [6] 4/21 4/24 46/3
47/1 79/20 81/17
talked [3] 15/5 73/22
73/24
talking [10] 7/20 47/14
52/13 54/5 67/2 67/16
69/24 70/2 73/25 80/3
tantrum [2] 63/21
63/24
Tapping [1] 6/16
target [2] 61/23 62/1
targeted [1] 45/14
Targeting [1] 48/11
task [2] 7/10 88/12
tasks [1] 7/7
teaches [1] 42/15
team [1] 15/6
tear [1] 91/5
television [1] 88/24
tell [17] 15/14 15/25
17/20 28/14 38/5 61/1
65/2 73/1 73/7 73/8
76/13 76/16 76/25 79/3

telling [5] 27/7 68/18
76/14 76/16 77/15
tells [5] 60/10 62/11
64/11 75/1 77/17
temper [2] 63/21 63/24
tempted [1] 88/25
ten [1] 79/2
term [14] 22/8 22/8
31/19 32/4 32/11 32/13
32/15 32/17 32/19 33/4
46/19 47/12 53/2 78/8
terms [2] 13/6 57/25
testified [8] 24/8 26/16
26/20 26/22 27/9 56/10
59/21 64/25
testify [11] 14/6 14/8
14/11 14/20 14/23 15/2
18/18 25/10 28/25 29/4
42/14
testifying [4] 14/19
25/14 27/5 27/11
testimony [28] 5/9
6/23 21/20 24/2 24/9
24/13 25/17 25/19
26/15 27/19 27/20
27/23 28/5 28/13 28/15
28/17 28/20 28/22 40/8
40/13 52/23 56/15 63/4
64/22 65/5 67/14 74/21
86/2
text [2] 6/21 89/14
than [19] 7/8 8/1 8/2
8/6 10/17 18/7 23/4
23/7 24/22 25/19 46/12
47/2 55/7 55/7 63/20
65/25 72/7 81/13 93/4
thank [37] 4/7 9/24
10/1 11/24 13/17 15/7
15/7 16/8 16/10 18/12
18/13 18/18 18/24 19/1
34/6 34/15 34/24 35/1
35/4 37/5 40/17 51/9
51/10 52/18 53/22
73/11 73/13 77/21
77/22 87/1 87/2 91/19
91/21 92/1 93/8 94/10
94/12
that [487]
that -- and [1] 51/24
that's [40] 8/19 10/22
14/2 15/15 16/18 16/25
17/13 19/12 35/17
38/13 41/17 43/9 43/13
43/20 44/24 45/10

**that's... [24]** 45/24 47/3 47/13 48/4 48/8 49/19 50/12 50/25 57/8 58/9 59/10 74/25 75/3 75/3 75/4 76/17 79/12 79/18 81/25 83/5 84/2 84/10 84/10 85/23

**their [45]** 5/20 6/11 6/14 7/14 11/16 17/15 18/8 21/16 35/13 35/24 35/25 36/13 38/6 39/22 44/16 44/25 45/2 45/3 49/15 50/9 50/10 50/17 50/25 51/2 51/3 61/2 62/23 62/25 62/25 63/22 65/3 65/18 69/10 69/19 74/9 77/18 78/3 80/9 83/9 85/1 85/2 85/16 85/17 85/18 86/13

**their -- you [1]** 78/3
**them [53]** 5/6 6/18 7/13 7/14 9/22 9/22 10/18 11/15 16/15 17/15 17/19 17/20 18/4 18/16 20/3 21/11 25/25 26/12 35/15 37/20 39/21 43/12 43/13 43/14 48/6 48/8 49/12 50/7 50/25 52/14 52/15 53/18 54/9 60/4 65/2 67/25 70/6 70/6 70/24 73/7 73/8 78/3 85/3 88/3 92/4 92/5 92/7 92/15 92/24 92/25 92/25 93/2 93/3

**then [35]** 7/11 9/5 11/7 16/15 16/19 16/22 16/23 17/5 17/15 17/21 19/10 23/13 31/1 33/24 34/10 37/11 37/15 38/22 39/11 40/1 40/19 41/19 42/6 42/6 44/7 53/18 54/20 84/22 84/23 84/23 85/3 85/4 85/8 86/8 89/7

**theories [1]** 5/20
**theory [5]** 5/21 6/1 6/9 6/10 8/21

**there [104]**
**there's [13]** 30/8 45/9 47/21 50/13 50/13 51/8 51/22 59/8 67/1 71/5

**therefore [3]** 13/8 70/14 94/15

**these [34]** 6/21 7/23 9/21 10/9 10/10 10/17 11/19 11/22 19/13 19/15 20/12 38/4 39/15 39/20 42/2 42/2 44/1 44/11 57/5 57/6 60/22 65/15 67/7 67/9 67/9 67/23 68/5 68/9 70/4 71/25 72/10 84/1 84/14 85/4

**they [132]**
**thing [12]** 42/13 51/6 54/9 58/2 58/7 58/8 58/18 63/10 68/15 77/11 90/24 93/13

**things [9]** 16/16 20/12 33/23 42/20 63/7 80/18 85/12 92/25 94/21

**think [41]** 5/3 5/5 5/17 5/18 6/23 7/19 10/11 10/17 10/24 11/4 11/10 11/11 11/12 12/12 13/24 21/1 30/20 47/12 47/13 49/25 51/24 58/24 59/2 59/15 62/10 62/19 62/21 63/7 63/13 67/14 67/19 67/22 68/14 72/8 72/22 73/21 74/7 76/3 76/23 82/13 86/4

**think -- is [1]** 67/19
**thinking [1]** 30/9
**third [4]** 31/12 32/24 44/11 87/10

**this [163]**
**thoroughly [1]** 14/14
**those [28]** 5/6 9/4 9/7 9/7 12/10 12/15 13/6 14/19 21/9 21/12 21/15 34/22 35/14 35/15 35/17 38/24 47/23 49/11 60/19 62/6 65/14 67/18 68/3 72/2 74/13 91/3 92/22 94/21

**though [2]** 49/15 49/16
**thought [3]** 5/23 38/15 71/14

**thoughtful [1]** 23/16
**threat [6]** 32/5 47/5 48/17 49/1 62/19 79/22
**threatened [4]** 29/19 31/18 46/18 78/7

**threatening [8]** 31/22 41/15 41/23 50/12 78/25 79/11 80/9 84/4

**threatens [1]** 75/25
**threats [1]** 80/19
**three [10]** 9/3 9/3 9/4 9/6 9/7 46/11 47/2 68/9 69/12 69/13

**threw [2]** 6/10 13/2
**through [16]** 5/22 9/23 10/19 10/21 10/24 10/25 12/21 32/11 43/11 43/14 56/11 60/11 61/19 82/14 86/15 93/15

**through -- that [1]** 82/14
**throughout [3]** 22/15 22/17 51/1
**throw [7]** 59/18 60/6 63/16 63/17 63/18 81/12 81/13

**thrower [1]** 65/7
**throwing [10]** 10/25 11/6 11/7 11/14 38/7 46/22 46/23 50/11 76/17 81/6

**thrown [7]** 56/21 60/12 62/18 65/23 65/25 76/11 76/19

**throws [3]** 42/25 49/8 64/3
**Thus [1]** 32/1
**time [22]** 6/13 13/20 15/16 16/18 17/15 18/22 19/2 19/10 24/10 27/15 34/1 35/7 36/6 36/25 38/20 44/4 52/18 61/6 75/8 77/2 77/6 91/22

**timely [2]** 52/6 52/19
**times [3]** 41/11 77/1 94/18

**timid [1]** 32/17
**timing [1]** 92/24
**tirade [2]** 80/5 82/24
**today [4]** 18/6 92/4 92/13 92/23
**together [5]** 8/12 35/22 65/1 95/17 95/18
**told [17]** 21/12 37/23 62/21 62/22 63/2 64/12 69/17 69/21 74/2 75/10 75/20 75/24 79/8 82/9 83/25 92/4 92/24

**tomorrow [6]** 92/15 94/23 95/3 95/4 95/8 95/25

**tonight [1]** 95/19
**too [7]** 49/14 61/14 77/7 84/5 84/6 86/4 86/10

**took [3]** 37/17 53/2 78/3

**tooth [1]** 71/19
**top [2]** 10/2 93/20
**topic [1]** 57/4
**topics [1]** 95/19
**toss [1]** 64/9
**total [1]** 73/14
**touch [2]** 35/16 83/6
**touched [2]** 49/13 78/2
**touching [4]** 32/9 47/10 47/17 83/3
**toward [2]** 27/11 39/24
**towards [1]** 39/20
**town [1]** 83/18
**toy [2]** 56/22 64/2
**track [1]** 39/12
**traffic [3]** 43/7 43/8 49/16

**training [1]** 42/15
**transcript [8]** 1/12 2/19 69/10 69/11 69/15 70/12 70/15 97/4

**transcription [1]** 2/19
**transport [2]** 7/13 65/10
**treatment [3]** 20/19 43/3 47/13
**Trejo [10]** 36/7 41/5 41/6 41/12 41/12 41/16 41/18 41/25 42/7 48/17

**trial [22]** 1/12 5/7 5/22 11/20 18/6 19/22 20/7 20/18 21/9 21/12 22/15 22/17 25/12 26/3 26/23 28/11 30/18 61/11 75/7 86/15 89/4 89/11

**tries [2]** 48/12 60/20
**troubling [1]** 52/3
**true [8]** 23/4 28/6 52/23 54/21 55/13 64/11 72/16 97/4

**trust [1]** 94/25
**truth [3]** 23/4 27/7 28/14
**truthfully [1]** 26/20
**try [6]** 35/6 42/20 74/19 79/3 89/22 92/5

## T

**trying [15]** 6/25 40/3 40/4 40/23 42/3 48/6 48/8 63/22 70/9 70/23 72/18 81/3 81/3 84/17 85/11
**turn [2]** 64/7 91/20
**turned [2]** 38/1 49/22
**turning [4]** 22/12 30/23 60/3 87/12
**twice [1]** 53/15
**two [13]** 5/20 23/24 38/18 44/22 56/22 58/20 58/21 58/21 65/8 68/8 91/1 91/5 94/17
**type [1]** 82/12
**types [1]** 23/24
**typical [1]** 17/17
**typically [2]** 16/14 92/5

## U

**U.S [1]** 2/16
**ultimately [2]** 6/15 45/25
**unable [2]** 85/17 85/18
**unanimity [1]** 7/22
**unanimous [3]** 8/8 87/16 90/5
**unbelievable [1]** 50/15
**uncontroverted [1]** 43/10
**under [7]** 4/14 8/9 8/21 11/25 18/9 27/16 90/2
**understand [5]** 9/21 14/3 14/10 71/1 71/21
**understanding [3]** 22/3 77/5 94/13
**understood [1]** 29/18
**unfold [1]** 39/2
**uniform [1]** 62/14
**UNITED [10]** 1/2 1/5 1/13 6/22 31/1 31/9 33/11 43/17 60/2 93/24
**United States [6]** 6/22 31/1 31/9 33/11 43/17 93/24
**unknown [1]** 60/1
**unless [6]** 13/10 22/15 34/9 61/23 62/1 95/5
**unlikely [1]** 91/8
**unreasonableness [1]** 28/4
**until [11]** 12/1 18/17

22/15 50/18 60/19 51/3 90/4 91/11 92/6 94/15 95/5
**up [31]** 7/9 11/6 18/9 19/4 24/13 30/17 40/3 40/4 40/24 41/2 42/11 42/16 48/2 48/15 49/4 49/5 49/8 52/4 57/15 57/21 65/1 65/12 65/12 68/13 74/1 81/20 82/18 84/11 85/3 88/12 88/18
**upon [8]** 23/10 31/23 32/5 47/6 76/1 79/22 90/12 90/19
**upsetting [1]** 58/24
**us [6]** 60/1 68/9 69/13 69/14 69/21 77/12
**USAO [1]** 1/18
**usdoj.gov [2]** 1/20 1/20
**use [19]** 21/11 21/17 28/19 31/18 31/18 31/19 46/17 46/18 46/19 52/25 53/25 63/5 71/8 78/6 78/7 78/8 80/20 87/17 91/13
**used [8]** 31/17 46/17 51/20 58/23 71/2 71/11 72/6 78/6
**useful [3]** 90/12 90/19 90/21
**using [1]** 22/7
**usually [1]** 79/3
**utmost [1]** 39/22
**utterly [1]** 6/15

## V

**v. [1]** 6/22
**v. Brown [1]** 6/22
**various [1]** 14/18
**verb [2]** 8/8 10/4
**verbal [1]** 50/19
**verbally [1]** 42/8
**verbally -- I [1]** 42/8
**verbs [21]** 5/3 5/4 7/18 8/25 9/3 9/6 9/7 9/15 9/19 9/20 9/23 10/4 10/11 10/15 11/19 11/22 12/13 12/15 12/17 12/17 12/20
**verdict [38]** 8/4 12/1 19/21 20/17 21/4 24/23 25/4 25/6 25/8 33/17 40/15 51/8 76/6 76/7 86/19 86/23 86/24

86/25 87/13 87/14 87/15 87/15 87/17 87/20 87/25 88/3 88/7 88/13 90/5 90/15 91/16 92/13 93/7 93/16 93/17 93/19 94/3 94/8
**versus [1]** 8/8
**very [22]** 4/12 7/19 9/23 15/7 42/8 52/2 53/2 53/4 55/22 55/24 56/1 56/14 59/23 65/15 70/10 72/20 76/14 91/19 91/21 92/9 92/14 95/3
**vest [2]** 62/15 62/16
**vetted [1]** 69/16
**via [1]** 89/17
**video [33]** 38/10 38/11 39/3 39/4 40/9 40/10 40/23 41/9 41/22 41/24 50/2 52/12 52/21 53/8 65/9 67/17 68/2 68/5 68/11 68/11 68/15 69/5 69/10 70/5 70/8 70/8 70/20 72/5 72/8 72/13 72/13 73/9 74/20
**videos [1]** 62/12
**view [1]** 68/21
**viewable [1]** 52/21
**viewing [2]** 10/13
**views [2]** 83/8 88/19
**violate [2]** 7/23 60/17
**violated [1]** 7/16
**violates [2]** 80/22 80/22
**violation [5]** 9/5 12/8 31/3 75/9 81/1
**violently [1]** 41/13
**visibility [10]** 7/1 7/2 7/15 36/15 37/22 39/15 48/3 50/18 65/19 85/5
**visible [6]** 65/17 65/19 66/4 74/5 74/6 74/6
**voice [6]** 19/9 35/14 35/14 37/2 42/20 90/13
**voir [1]** 86/16
**volume [1]** 50/3
**voluntarily [2]** 29/18 31/13
**voluntary [1]** 15/2
**vote [3]** 77/19 90/8 90/19
**voting [1]** 90/4
**vs [1]** 1/7

## W

**wagging [2]** 48/18 49/3
**wait [4]** 67/22 68/1 69/1 92/18
**waiting [1]** 65/10
**waive [1]** 15/1
**walk [3]** 12/21 37/25 39/17
**walked [2]** 38/1 38/19
**walking [5]** 36/11 39/12 39/13 39/13 44/23
**walks [1]** 39/16
**want [20]** 10/8 13/10 14/3 17/19 19/15 43/14 52/4 53/3 53/20 60/25 61/11 63/9 63/24 66/24 69/22 70/22 72/3 72/22 92/5 92/22
**wanted [6]** 19/5 21/10 42/18 49/11 49/20 74/25
**wants [6]** 13/22 14/9 64/1 72/21 73/14 95/13
**warned [5]** 29/24 37/17 37/20 37/23 38/15
**warranted [1]** 34/5
**was [145]**
**was -- I [1]** 73/21
**was -- let [1]** 33/7
**Washington [4]** 1/7 1/19 2/11 2/17
**wasn't [6]** 17/6 38/16 54/13 60/14 71/2 83/21
**watch [6]** 39/2 39/6 39/12 59/21 89/1 89/2
**watching [1]** 39/2
**wave [1]** 37/9
**waving [4]** 41/13 41/14 42/10 48/15
**way [17]** 5/12 11/1 22/5 30/8 33/15 36/13 37/11 38/16 41/15 50/12 52/7 63/22 72/6 86/4 89/18 90/21 91/21
**ways [6]** 12/7 46/5 47/2 50/13 50/14 60/17
**we [154]**
**we'll [1]** 95/17
**we've [4]** 9/18 41/10 75/7 93/15
**weapon [1]** 56/16

**W**

**wearing [6]** 36/15 36/16 45/17 62/13 62/13 76/11
**weight [8]** 20/8 21/25 24/19 24/21 25/13 28/16 28/21 29/16
**welcome [2]** 6/17 18/20
**well [14]** 4/12 6/5 13/23 17/3 34/22 39/3 47/23 48/21 49/25 56/1 58/4 60/24 86/18 92/12
**went [5]** 24/12 43/5 49/13 84/5 86/15
**were [63]** 4/2 6/25 7/3 7/3 7/5 7/6 7/8 7/15 7/20 11/22 25/1 25/1 34/20 34/21 35/23 36/15 36/16 36/16 36/17 36/19 37/20 37/21 42/19 44/22 44/25 44/25 45/2 45/3 48/2 48/3 48/4 49/11 49/18 50/7 50/17 51/2 51/3 65/15 65/17 65/19 66/17 66/17 68/6 68/6 68/10 68/12 70/5 70/12 70/13 74/6 74/6 74/13 74/15 74/15 74/23 82/15 83/18 83/22 85/23 85/24 86/18 88/4 88/5
**what [145]**
**what's [2]** 40/6 84/20
**whatever [3]** 45/4 95/2 95/15
**whatsoever [1]** 65/20
**when [58]** 7/6 7/20 13/1 15/25 16/6 17/17 19/2 19/11 19/12 19/21 21/21 23/25 25/1 25/21 29/25 32/5 37/3 37/9 38/3 38/16 39/6 40/23 41/1 41/1 41/12 42/15 44/4 44/8 44/25 45/15 45/24 47/6 47/12 48/17 49/10 49/12 49/16 50/3 52/16 53/25 54/5 61/8 62/10 63/7 63/20 66/8 72/13 79/23 82/9 84/24 85/13 85/20 87/18 88/3 88/8 90/16 92/3 95/17
**where [21]** 11/12

20/16 29/25 35/18 48/16 49/13 50/7 50/20 50/21 60/7 62/10 65/5 69/13 73/16 73/21 74/7 75/12 75/13 78/11 78/16 92/16
**whether [36]** 9/16 10/2 14/11 17/7 24/20 25/2 26/13 26/17 26/20 26/21 27/5 27/6 27/7 27/9 27/18 27/24 28/5 28/6 28/12 29/8 29/13 29/14 29/17 29/19 29/21 29/24 30/3 30/20 32/23 36/8 45/4 55/8 73/5 76/4 87/9 90/8
**which [37]** 6/1 7/23 10/2 12/7 12/23 13/25 15/13 19/4 20/14 22/21 23/10 24/3 25/16 26/10 26/18 26/22 27/8 27/17 30/13 31/3 33/24 52/9 53/4 58/18 58/21 58/22 58/22 58/23 58/23 62/20 62/24 64/2 71/15 72/21 87/23 93/15 94/15
**while [18]** 8/11 10/10 19/16 20/6 24/15 31/14 44/12 45/5 45/7 53/18 59/2 60/5 61/1 65/10 74/24 76/25 84/9 92/18
**white [1]** 39/10
**who [31]** 7/3 7/16 21/9 21/15 25/24 26/15 30/1 31/1 35/10 37/21 41/7 45/22 57/5 57/5 57/7 59/24 64/13 66/17 74/15 77/17 83/20 84/25 85/8 85/15 86/9 88/15 88/16 88/17 88/18 88/19 93/24
**Who's [1]** 9/25
**Whoa [5]** 69/1 69/23 69/23 69/23 69/23
**whole [4]** 19/18 20/2 66/10 66/11
**why [17]** 8/8 12/21 17/13 45/15 45/23 48/7 49/25 54/15 54/22 55/12 58/10 59/15 67/11 71/2 71/9 84/10 85/23
**will [87]** 4/21 4/25 5/17 8/13 8/17 8/20 10/21

13/7 13/9 15/9 15/12 15/13 15/25 16/2 17/14 17/15 17/16 17/20 17/21 18/2 18/10 19/10 19/11 19/13 33/24 33/24 34/2 34/3 34/3 34/4 34/4 34/8 35/6 39/7 39/17 40/10 40/10 40/10 41/21 42/7 42/19 42/21 50/1 53/21 58/13 62/7 72/13 73/7 73/21 76/13 79/13 80/14 81/17 87/5 87/17 88/1 88/5 88/15 88/17 88/18 88/19 89/7 89/24 91/15 91/18 91/24 92/6 92/14 92/16 92/25 92/25 93/3 93/3 93/11 93/14 93/15 94/7 94/8 94/8 94/23 95/3 95/12 95/13
**window [2]** 24/7 24/11
**wish [4]** 14/22 21/12 89/10 95/7
**within [4]** 33/1 42/9 44/20 60/24
**without [4]** 9/22 59/23 59/23 80/21
**witness [29]** 24/1 25/12 26/6 26/18 26/18 26/20 26/21 26/22 27/2 27/4 27/4 27/5 27/6 27/7 27/9 27/17 27/21 28/5 28/6 28/9 28/13 28/14 28/15 28/20 28/22 62/24 62/25 62/25 77/18
**witness's [8]** 24/2 26/19 27/4 27/13 27/19 27/20 27/23 52/22
**witnesses [12]** 5/10 5/22 20/9 25/9 25/14 25/17 25/18 25/19 26/15 26/17 26/25 44/22
**woke [1]** 24/13
**wool [1]** 70/23
**word [18]** 32/1 51/20 52/3 52/25 53/25 66/1 68/15 69/8 69/11 69/19 71/2 71/8 71/15 72/5 72/7 77/17 93/20 94/7
**words [23]** 38/7 38/20 43/23 49/25 60/22 67/18 68/3 68/6 68/10

68/13 69/4 70/3 70/5 71/5 71/10 71/14 72/4 72/13 72/14 73/8 79/2 79/3 87/15
**work [10]** 40/4 41/1 42/21 48/11 48/12 48/14 48/16 48/21 57/7 95/1
**worked [4]** 40/24 41/2 49/8 93/15
**working [7]** 40/24 43/19 45/22 49/7 49/8 84/9 93/4
**works [1]** 74/18
**world [1]** 59/17
**worries [2]** 74/13 74/13
**worry [1]** 66/16
**worthy [1]** 60/3
**would [51]** 5/2 5/13 5/23 6/4 6/5 6/15 6/17 6/20 8/3 8/5 9/4 9/5 9/9 12/17 14/4 15/16 17/3 17/4 17/11 17/17 17/25 18/4 23/15 24/9 24/14 25/3 29/2 43/11 55/22 56/19 57/1 57/1 64/4 67/5 68/25 69/9 70/12 70/16 76/17 80/8 80/19 81/5 81/15 83/4 86/19 86/24 88/21 91/21 92/17 93/20 93/21
**wouldn't [3]** 8/3 38/24 85/23
**wrapping [1]** 56/9
**write [1]** 91/6
**writing [2]** 89/25 90/6
**written [1]** 43/13
**wrong [5]** 60/8 61/4 68/18 69/7 74/13

**Y**

**Yeah [1]** 10/23
**year [1]** 63/21
**years [1]** 43/19
**yell [2]** 37/8 40/2
**yelling [13]** 36/24 37/12 38/2 40/2 40/23 44/6 48/10 48/11 49/5 71/4 71/11 72/1 82/6
**yes [19]** 4/13 9/1 14/3 14/7 14/12 14/13 14/16 14/21 14/24 15/11 15/19 17/23 18/18 54/10 66/23 69/6 86/7

# Y

**yes... [2]**  92/23 93/8
**yesterday [1]**  69/17
**yet [3]**  53/21 60/1
87/13
**York [1]**  2/7
**you [518]**
**You'll [1]**  79/9
**you've [4]**  40/13 46/3
77/7 77/12
**you-all [2]**  91/24 95/8
**your [126]**
**Your Honor [46]**  4/5
4/10 4/13 8/10 10/1
13/17 14/2 14/7 14/13
14/16 14/21 14/24 15/4
15/15 17/1 17/3 17/23
18/24 34/12 34/24 35/3
36/5 51/15 51/16 53/9
53/23 54/14 55/2 56/3
57/13 58/9 66/23 68/7
69/16 70/16 71/17 72/9
72/12 78/17 79/6 80/11
80/17 81/5 85/25 93/8
95/22
**yours [2]**  33/14 59/25
**yourself [4]**  41/23
56/19 56/19 63/20
**yourself -- ask [1]**
56/19

# Z

**zigzag [1]**  49/16
**zigzagged [1]**  43/5